RECORD NO. 24-1117

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

HAMILTON HALL SWART, III and RICHARD EARL DASILVA

Plaintiffs-Appellants,

v.

JASON S. MIYARES and HAROLD W. CLARKE,

Defendants-Appellees.

_____

On Appeal From The United States District Court
For The Eastern District Of Virginia
At Richmond
_____

_____

BRIEF FOR APPELLANTS
_____

Jeffrey E. Fogel
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300
(434) 220-4852 (Fax)
jeff.fogel@gmail.com
Attorney for Appellants

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1117          Caption: Swart v. Miyares

Pursuant to FRAP 26.1 and Local Rule 26.1,

Richard Earl DaSilva
(name of party/amicus)


who is          an appellant          , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.	Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?	☐YES ☑NO
	If yes, identify entity and nature of interest:

5.	Is party a trade association? (amici curiae do not complete this question)	☐YES ☑NO
	If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.	Does this case arise out of a bankruptcy proceeding?	☐YES ☑NO
	If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.	Is this a criminal case in which there was an organizational victim?	☐YES ☑NO
	If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Jeffrey E. Fogel	Date: 02/12/2024

Counsel for: Richard Earl DaSilva

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1117</u>      Caption: <u>Swart v. Miyares</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Hamilton Hall Swart, III</u>
(name of party/amicus)


who is <u>an appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:




5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:




6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.




7.      Is this a criminal case in which there was an organizational victim?         ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.




Signature: s/Jeffrey E. Fogel _____    Date: _____02/12/2024_____

Counsel for: Hamilton Hart swart, III _____

Print to PDF for Filing

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    The District Court Erred in Rejecting Plaintiffs' Eighth Amendment
        Claim Even Though the Plaintiffs Have Plausibly Alleged That the
        Defendants Were Deliberately Indifferent to the Serious Deprivation
        That They Suffered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.     The District Court Erred in Dismissing Plaintiffs' Substantive
        Due Process Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.      The District Court Erred in Concluding That Defendant Clarke
        Could Simply Rely on the Advice of Counsel When He Had a
        Choice of Which Advice to Follow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.     The District Court Erred in Rejecting Plaintiffs' Procedural Due Process
        Claim When No Opportunity Was Provided to Contest the Decision to
        Revoke Their Good Time Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Request for oral argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

i

## TABLE OF AUTHORITIES

<u>Cases</u> <u>page</u>

*Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Baker v. McCollan*, 443 U.S. 137 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bedroc Ltd. v. United States*, 541 U.S. 176 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Burlington Industries v. Milliken Co.*, 690 F.2d 380 (4th Cir. 1982) . . . . . . . . . . 21

*Campbell v. Florian*, 872 F.3d 385 (4th Cir. 2020) . . . . . . . . . . . . 10, 11, 15, 16, 17

*Campbell v. Johnson*, 586 F.3d 835 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 18

*Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cassady v. Tackett*, 938 F.2d 693 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Denny v. Schultz*, 708 F.3d 140 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) . . . . . . . . . . . . . . . . . 8

*English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir. 1987) . . . . . . . . . . . . . . . . 21

*Ewell v. Murray*, 11 F.3d 482 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Farmer v. Brennan*, 511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Foucha v. Louisiana*, 504 U.S. 71 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231 (1959) . . . . . . . . . . . . 21

*Golson v. Department of Corrections*, 914 F.2d 1491 (4th Cir. 1990) . . . . . . 7, 10

*Gregg v. Georgia* , 428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . 19, 25

*Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 9

*Hoglan v. Youngkin*, No. 7:22-cv-00460 (W.D. Va. Aug. 11, 2023) . . . . . . . . . 21

*Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . 7, 8, 18

*Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000) . . . . . 18

*In Re: Dept. of Corrections*, 222 Va. 454 (Va. 1981) . . . . . . . . . . . . . . . . . . . . . 23

*Kapordelis v. Myers*, 16 F.4th 1195 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . 25

*Kerr v. Marshall University Board of Governors*, 824 F.3d 62 (4th Cir. 2016) . . 21

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Masengale v. Streeval*, No. 7:19-cv-543 (W.D. Va. July 23, 2020) . . . . . . . . . . 25

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) . . . . . . . . . . . . . . . 8

*Parker v. LeBlanc*, 73 F.4th 400 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Parrish ex rel Lee v. Cleveland*, 372 F.3d 294 (4th Cir. 2004) . . . . . . . . . . . . . . 15

*Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*Prease v. Clarke*, 888 S.E. 2d 758 (Va. 2023) . . . . . . . . . . . . . . . 11, 12, 13, 14, 15

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 9, 18

*Terry v. Jones*, 259 F. App'x 85 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Trulock v. Freeh*, 275 F.3d 391(4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Fisher*, 2 Cranch 358 (1805) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hardy*, 299 F.2d 600 (4th Cir. 1962). . . . . . . . . . . . . . . . . . . . . 21

*West v. Prince George Cnty.*, No. TDC-21-0863 (D.Md. Jan. 13, 2022) . . . . . . . 26

*White ex rel. White v. Chambliss*, 112 F.3d 731 (4th Cir. 1997). . . . . . . . . . . . . 22

*Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) . . . . . . . . . . . . . . . . . 11, 16, 22

*Williams v. Com., Real Estate Board*, 57 Va. App. 108 (Va. Ct. App. 2010). . . . 14

*Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wolff v. McDonnell*, 418 U.S. 539 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001) . . . . . . . . . . . . . . . 22

*Zigler v. Skiles*, No. 2:23-cv-00318 *7 (S.D.W.V. Aug. 29, 2023). . . . . . . . . . 9, 19

## Statutes

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

HB 5148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Va. Code § 18.2-25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Va. Code § 18.2-31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Va. Code § 53.1-202.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the federal constitutional claims below pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (a)(4). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 from the final judgment below, which was entered on January 31, 2024 and which disposed of all issues in the case. The Notice of Appeal was filed on February 5, 2024.

## STATEMENT OF ISSUES

1. Whether the district court erred in rejecting Plaintiffs' Eighth Amendment claim even though the Plaintiffs have plausibly alleged that the Defendants were deliberately indifferent to the serious deprivation that they suffered.

2. Whether the district court erred in dismissing Plaintiffs' substantive due process claim.

3. Whether the district court erred in concluding that Defendant Clarke could simply rely on the advice of counsel when he had a choice of which advice to follow.

4. Whether the district court erred in rejecting Plaintiffs' procedural due process claim when no opportunity was provided to contest the decision to revoke their good time credits.

## STATEMENT OF THE CASE

In 2020, the Virginia General Assembly passed a bill, HB5148[1], amending

Code § 53.1-202.3, which expanded the statutory right of many prisoners,

including Plaintiffs, to enhanced good time credits, from 4.5 days per month to 15

days. *Id.* The statute excluded large classes of prisoners from receiving those

enhanced credits. Code § 53.1-202.3(A)(specifically listing many offenses *not*

entitled to enhanced credits). Attempt to commit aggravated murder was not

included among those offenses. *Id.* The statute's effective date was July 1, 2022.[2]

At the time of the passage of the bill, both Plaintiffs were serving time for

attempted aggravated murder. (JA005).

In an advisory opinion rendered in December 2021, then Attorney General

Herring advised the Department of Corrections ("DOC") regarding various aspects

of HB 5148, including his opinion, based on the plain language of the statute, that

those prisoners with *attempted* aggravated murder charges were not excluded from

receiving the enhanced good time credits. (JA021)("There is no direct reference to

---

[1]Plaintiffs' Amended Complaint incorrectly cites the bill as HR rather than HB. (JA004-006)).

[2]The delay was obviously necessary to give the Department of Corrections time to do all of the recalculations necessary and to provide time for affected prisoners to develop and submit release plans. It must also gather all of the staffing resources needed to perform those functions.

. . . attempted aggravated murder in § 53.1-202.3(A)(1) or (A)(2), and these aggravated murder modifiers do not fit within any offenses listed in those subsections. Therefore, an offender convicted of . . . attempted aggravated murder would be permitted to receive enhanced earned sentence credits.")  Accordingly, Plaintiffs were notified by DOC that, pursuant to the new law, they would be released in or about July, 2022, the effective date for implementation of the act. (JA005).

In 2022, Jason S. Miyares was elected attorney general. (JA006).  Mr. Miyares was a vehement opponent of expanded good time credits and voted against HB5148 when he was in the legislature. (JA006).  On April 13, 2022, he issued an advisory opinion asserting, *inter alia*, that contrary to Attorney General Herring's opinion four months earlier, prisoners convicted of attempted aggravated murder were excluded by HB5148 from receiving enhanced good time credits. (JA015-016).[3]  Deciding to follow this latter advice, Defendant Harold W. Clarke, then Director of DOC, refused to release Plaintiffs and others similarly

_____

[3]As the district court noted, "[i]t remains unclear whether Attorney General Miyares was in fact formally requested to issue another advisory opinion by then-Director Clarke" as is required by state law. (JA039). Virginia Code § 2.2-505(A)("The Attorney General shall give his advice and render official advisory opinions in writing only when requested in writing so to do by . . . the head of a state department.").

situated. (JA006). Neither Defendant provided any opportunity for Plaintiffs to contest the withdrawal of their good time credits. (JA006). Mr. Swart and Mr. DaSilva were finally released in July, 2023, about a year later than they should have been released had they been properly credited with the enhanced good time credits provided by HB5148. (JA006).

A unanimous Supreme Court of Virginia, in the case of *Prease v. Clarke*, 888 S.E.2d 758, 762 (Va. 2023), held that the plain language of HB5148 did not exclude the offense of attempted murder from the enhanced good time credits and concluded that "there is no basis in the governing statutes for denying Prease expanded good time credits on his attempted aggravated murder convictions."

The Plaintiffs allege that Defendants were aware that withdrawal of a mandatory release date causing extended incarceration was a serious deprivation. (JA008). It is also alleged that Defendants were personally aware of the impact on Plaintiffs of their decision to refuse to give enhanced earned sentence credits to those eligible for those credits. (JA008). Finally, Plaintiffs assert that Defendants were deliberately indifferent to the plight faced by Mr. Swart and Mr. DaSilva of further incarceration without penological justification. (JA008).

The district court rejected Plaintiffs' claims under the Eighth Amendment as failing to prove that Defendants were subjectively aware of the

4

inappropriateness of their response to the serious deprivation they created. (JA055). The court also rejected Plaintiffs' claims under the Fourteenth Amendment because, according to the court, notwithstanding the legislative mandate, Plaintiffs' right to release did not vest due to the actions of Defendants complained of herein. (JA056-058). In addition, the district court found that the Defendants' response to the harm of prolonged incarceration did not "shock the conscience." (JA058-059). Finally, the district court dismissed Plaintiff's procedural due process claim asserting that the right at issue was not clearly established. (JA060).

## SUMMARY OF ARGUMENT

In 2020, the Virginia General Assembly amended the law to provide enhanced good time credits to many prisoners, including Plaintiffs. Nonetheless, shortly after Defendant Miyares was elected attorney general, he wrote an advisory opinion that, despite the plain language of the statute, inmates like Plaintiffs were not entitled to those credits. Defendant Clarke followed this opinion and rejected the contrary opinion of Mr. Miyares' predecessor thereby prolonging Plaintiffs' incarceration. Plaintiffs maintain that they had a liberty interest in the credits set forth by statute and were entitled to mandatory release on the effective date of that statute. They assert that the conduct complained of demonstrates deliberate indifference and violated their rights under the Eighth and Fourteenth Amendments, both substantive and procedural.

## ARGUMENT

### I.    INTRODUCTION

Plaintiffs assert three constitutional claims regarding their continued incarceration after they should have been released pursuant to statutory mandate, namely the Eight Amendment and the Fourteenth Amendment, both procedural and substantive.

"[F]reedom from unlawful restraint is a right so core to our understanding of liberty that suffering even one day of unlawful detention is a harm recognized by

the Constitution." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1085 n.4 (2d Cir. 2021).

It is widely recognized that incarceration without penological justification violates

the Constitution. *King v. Rubenstein*, 825 F.3d 206, 219 (4th Cir. 2016)("Among

'unnecessary and wanton' inflictions of pain are those that are 'totally without

penological justification.'")(citing and quoting *Gregg v. Georgia* , 428 U.S. 153,

183, (1976)  *Cf. Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019)(analyzing

penological justification for conditions of death row).  Since Virginia, through its

legislature, has created a liberty interest in mandatory release from prison, it

logically follows that incarceration past that release date is without penological

justification.

After the Virginia legislature passed the law enhancing good time credits for

prisoners, the attorney general and the director, Department of Corrections,

wrongly and with deliberate indifference determined that certain prisoners were

ineligible for those credits and, as a result, Plaintiffs had their sentences extended

beyond the date the legislature mandated.  As this Court has said, "[i]ncarceration

beyond the termination of one's sentence may state a claim under the due process

clause and the eighth amendment." *Golson v.  Department of Corrections*, 914

F.2d 1491 at *1 (4th Cir. 1990) (per curiam) (unpublished table decision).

## II.     STANDARD OF REVIEW.

Review of the district court's ruling on a motion to dismiss is *de novo*. *See*

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307 (4th Cir. 2007). "Like the

district court, we must assume all [well-pleaded facts] to be true," *Trulock v.

Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quotations and emphasis omitted), and

draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of

Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**III.  THE DISTRICT COURT ERRED IN REJECTING PLAINTIFFS'
EIGHTH AMENDMENT CLAIM EVEN THOUGH THE
PLAINTIFFS HAVE PLAUSIBLY ALLEGED THAT THE
DEFENDANTS WERE DELIBERATELY INDIFFERENT TO THE
SERIOUS DEPRIVATION THAT THEY SUFFERED.**

The district court denied Plaintiffs' claim under the Eighth Amendment

because "they fail to show that defendants were 'deliberately indifferent.'"

(JA053).

Numerous courts have held that incarceration after a mandatory release date

violates the cruel and unusual proscription of the Eighth Amendment if due to

deliberate indifference. *See e.g. Hurd v. Fredenburgh*, 984 F.3d 1075, 1085 (2d

Cir. 2021)("unauthorized detention . . . past an inmate's mandatory release date

qualifies as a harm of constitutional magnitude under the first prong of the Eighth

Amendment analysis"); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)

(Campbell argued that "if through deliberate indifference to the requirements of

state law the correctional officials kept him imprisoned too long, his Eighth

Amendment rights were violated. . . . In that sense, we believe that he has

articulated a constitutional right); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989)(("We think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment."); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest"); *Zigler v. Skiles*, No. 2:23-cv-00318 *7 (S.D.W.V. Aug. 29, 2023)("It is clear, then, that the alleged deprivation of Plaintiff's liberty interest is 'sufficiently serious' to support a claim under the Eighth Amendment.").

The rationale for finding an Eight Amendment violation in this context is universal and long standing. The Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain" *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). One class of "unnecessary and wanton" wrongs, and the one most relevant here, is those wrongs "totally without penological justification." *Id.* at 183. Incarceration is a form of punishment and therefore if it is imposed "totally without penological justification" it may violate the Eighth Amendment. Finally, this Court has noted that "[w]here there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" *Porter v. Clarke*, *supra*. 923 F.3d at 362. "Put differently, if a prison official lacks a legitimate penological

9

justification for subjecting an inmate to a condition of confinement that poses a substantial risk of serious harm—like prolonged solitary confinement, . . . the official is presumptively acting with deliberate indifference to that risk." *Id.* Once the legislature has set the terms of punishment, including any earned sentence credits, there is no penological justification for continued confinement after those terms have been satisfied.

Twenty years after *Golson v. Dep't of Corrections*, *supra.*, this Court considered an Eighth Amendment claim against government attorneys whose opinion, as here, resulted in the failure of prison officials to properly apply work and good-conduct credits, thereby extending the plaintiff's incarceration. *Campbell v. Florian*, 972 F.3d at 385, 393-95 (4th Cir. 2020). The panel, while declining to decide whether the Eight Amendment or the Fourteenth Amendment was the better vehicle for that claim, held that "[t]o qualify as a cruel and unusual punishment implicating the Eighth Amendment, Campbell's claimed deprivations must satisfy 'objective' and 'subjective' requirements." *Id*. at 393. The "objective test" is simply whether the claimed deprivation was "sufficiently serious." *Id.* The Court assumed that detention past a prisoner's mandated release date was a sufficiently serious deprivation. *Id.* at 394. The district court in the present case agreed. (JA053).

The "subjective" test requires that a plaintiff demonstrate that the

government official was deliberately indifferent to the plaintiff's plight by showing that the official "must have both 'subjectively recognized a risk of substantial harm' and 'subjectively recognized that his actions were inappropriate in light of that risk.'" *Id.* at 395. "The subjective component requires proof of more than mere negligence but less than malice." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Plaintiffs' First Amended Complaint alleges that "Defendants were aware that withdrawal of a vested release date and that further incarceration without penological justification was a serious deprivation," and that "Defendants were also personally aware of the impact on inmates, such as Plaintiffs, of their decision to refuse [to] give enhanced earned sentence credits to those eligible for those credits." (JA008). Thus, Defendants are alleged to have "subjectively recognized a risk of substantial harm" and the district court found that Plaintiffs had adequately pled this element. (JA054).

The district court found that Plaintiffs failed to adequately allege that Defendants "subjectively" recognized that their actions were inappropriate in light of the risk of substantial harm and therefore they were not deliberately indifferent to the harm they created. (JA055). However, the relevant portion of Attorney General Miyares' opinion (and his opposition to the *habeas* claim in *Prease v. Clarke*, 888 S.E. 2d 758 (Va. 2023)) lacked any basis in law and simply ignored

the plain language of the statute and the correct opinion of the former attorney general of which he was aware. Defendant Clarke, without reason, sought a reconsideration of the latter opinion only four months after its receipt and then made the deliberate choice to follow Attorney General Miyares' opinion rather than that of Mr. Herring. Defendant Miyares' opinion (and his defense of that opinion) demonstrates that he was deliberately indifferent to the harm he created by preventing the release of Plaintiffs according to law.[1] [2]

The district court held that the opinion of Defendant Miyares was reasonable as it demonstrated that he "carefully considered the text of the statute itself," "applied canons of statutory interpretation, like the absurdity doctrine . . . . [a]nd he appropriately considered the intent of the legislature." (JA054). But a review of the opinion itself and of the Supreme Court decision in *Prease* point in the

---

[1]In response to Mr. Swart's habeas petition in the Virginia Supreme Court, Defendant also claimed that "[b]ecause Swart's current term of incarceration includes a sentence for attempted capital murder in violation of Code § 18.2-31(6)(a Class 1 Felony) which is encompassed within subsection (A) of Code § 53.1-202.3, he is not eligible to earn Enhanced Earned Sentence Credits under subsection (B) of Code § 53.1-202.3." (JA007). However, Mr. Swart (as well as Mr. DaSilva) was not convicted of murder, a Class 1 felony, but of attempted murder. An attempt to commit a Class 1 felony is a Class 2 felony (Va. Code § 18.2-25, which is not excluded from the enhanced sentence credits.

[2]Plaintiffs have never claimed that the Virginia Supreme Court's reversal of the Miyares' opinion was prima facie evidence of deliberate indifference as stated by the district court. (JA055). Rather it is the content of that opinion and the reasons why it was rejected that form the basis of Plaintiffs' argument.

opposite direction, that Miyares misused the canons of statutory construction and failed at the first step of any legislative analysis.

In his opinion, Defendant asserted that although attempted aggravated murder was not specifically excluded from the enhanced good time credits, the statute should be read to exclude that offense. (JA015, JA016). His analysis was that Code § 53.1-202.3(A)(2) excludes "[s]olicitation to commit murder under § 18.2-29 or any violation of § 18.2-32, 18.2-32.1, 18.2-32.2, or 18.2-33" and that to allow such credits "would lead to the irrational conclusion that the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits - yet leave convictions for conspiracies or *actual attempts* to commit murder eligible for enhanced sentence credits." (JA015)(emphasis in the original). Given that *Prease*, like Plaintiffs, was not convicted under any of the statutes listed in Code § 53.1-202.3(A)(2), but rather under Code § 18.2-31, "which is conspicuously absent from the list of enumerated offenses under Code § 53.1-202.3(A)," the *Prease* Court refused to even consider this argument. *Prease, supra.* at 762.

The Miyares' opinion further asserts that failing to exclude attempts to commit murder while excluding solicitation to murder would lead to an "irrational" (later characterized as an "absurd") result. The *Prease* Court rejected this claim, noting that "[w]e have repeatedly explained that '[a]n absurd result describes an

interpretation that results in the statute being internally inconsistent or otherwise incapable of operation.  Neither of those situations applies here." *Prease, supra*. at 762.

The fundamental failure of Defendant Miyares' opinion and defense of that opinion was his refusal to follow the first and primary rule of statutory interpretation, to read the words of the statute.  As the *Prease* court made clear, "we have consistently explained that "Virginia courts 'presume that the legislature chose with care the works it used when t enacted the relevant statute.' [citation omitted] We believe it to be 'our duty to interpret the statute as written and when this is done our responsibility ceases.' (citation omitted]. The one canon of construction that precedes all others is that '[w]e presume that the legislature says what it means and means what it says." *Prease* at 761[3].  Indeed, "[w]hen the wording of a statute is clear and unambiguous, its plain meaning is to be accepted without resorting to rules of statutory interpretation." *Williams v. Com., Real*

---

[3]This rule of legislative interpretation is long standing and universal. *See e.g. Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there' [citation omitted]. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *United States v. Fisher*, 2 Cranch 358, 399 (1805), ("Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.").

*Estate Board*, 57 Va. App. 108, 121-22 (Va. Ct. App. 2010)(citations omitted). Relying on the plain language of the statute that does not exclude those convicted of attempted aggravated murder,[4] the *Prease* Court held that "there is no basis in the governing statute for denying Prease expanded earned credits on his attempted aggravated murder convictions." *Prease, supra*. at 762.

Defendant Miyares utilized inapplicable and irrelevant concepts to support his argument that directly contradicted the plain words of the statute. Those arguments were not only unreasonable but demonstrate deliberate indifference. *See Parrish ex rel Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)("a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances."). Moreover, he was aware of the plain meaning interpretation of his predecessor.

A comparison with the actions of the attorneys in *Florian* is instructive. After careful study, the attorney general had properly recognized that the act he was interpreting was inconsistent and he "appropriately employed the normal tools of statutory construction to give his best interpretation of the new act." *Florian,*

---

[4]"By its plain language, Code § 53.1-202.3 establishes that all inmates are eligible for expanded earned sentence credits unless they were convicted of an offense that is enumerated under subsection A." *Prease, supra*. at 76.

15

*supra*. 972 F.3d 396. In addition, one administrative court had upheld his interpretation. *Id.* at 396-97. In this case, there was no inconsistency in HB5148. The language of the statute was plain and unambiguous. No court or other adjudicative body had ever sided with Mr. Miyares' interpretation and the only other opinion on the subject was that of Attorney General Herring, which was in direct contradiction to that of Defendant Miyares, and which he simply ignored. Finally, Defendant Miyares failed to follow the "first rule of statutory interpretation," "reading the act itself." *Id*. at 395.[5]

In light of these facts, it is a reasonable inference that Defendant Miyares was subjectively aware that his actions "were inappropriate in light of [the] risk" of "incarceration without penological justification." While "deliberate indifference entails something more than mere negligence [it] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, *supra*. 77 F.3d at 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").[6]

---

[5]The *Florian* court recalled Justice Frankfurter's three rules of statutory interpretation: "(1) [r]ead the statute; (2) read the statute; (3) read the statute!" *Florian, supra* at 395.

[6]"An Eighth Amendment claimant need not show that prison officials acted or failed to act believing that harm actually would befall an inmate: it is enough that the official acted or failed to act despite his knowledge of a substantial risk of

Even if not maliciously done, Defendants' conduct was considerably more than mere negligence. Mr. Miyares opinion and arguments in the Virginia Supreme Court border on the frivolous.

The Plaintiffs have suffered a "sufficiently serious" deprivation and have plausibly alleged the "subjective" state of mind necessary to prove deliberate indifference. As such, they have stated a plausible claim of an Eighth Amendment violation.

## IV. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIM.

As the district court noted, substantive due process may be the more appropriate vehicle for analyzing Plaintiffs' claims. (JA053). *See Florian, supra.* 972 F.3d at 394. However, the court erred in finding that Plaintiffs failed to allege sufficient facts to set forth a plausible claim under the Fourteenth Amendment.

The district court held that (1) Plaintiffs did not have a vested interest in enhanced good time credits because Defendant Miyares' opinion and the subsequent conduct of Defendant Clarke prevented the legislatively mandated credits from vesting; and (2) despite the erroneous opinion of Mr. Miyares, "neither the process in arriving at the conclusion nor the conclusion itself shocks

---

serious harm." *Farmer, supra.* at 842. In the present case there was no doubt that the harm of extended incarceration would befall inmates from the actions of Defendants.

the conscience." (JA056-059).

"Substantive due process ensures the state will not deprive a party of property [or liberty] for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). *See also Cassady v. Tackett*, 938 F.2d 693, 697 n.5 (6th Cir. 1991)("Certainly the Supreme Court continues to recognize that the Due Process Clause has a 'substantive component' [citation omitted] and a due process violation may be found when a plaintiff has been deprived of a recognized property or liberty interest.").

The cases are legion holding that the Fourteenth Amendment protects prisoners from "overdetention." *See e.g. Parker v. LeBlanc*, 73 F.4th 400, 407 (5th Cir. 2023)("'Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.'")*; Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 (2d Cir. 2021)(Inmates eligible for mandatory release "are entitled to substantive due process protection against egregious and arbitrary government interference."). There is no penological justification for incarceration beyond a mandatory release date because "any deterrent and retributive purposes served by [the inmate's] time in jail were fulfilled as of that date." *See Sample v. Diecks* , 885 F.2d 1099, 1108 (3d Cir. 1989); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)("[T]here

is a substantive due process right 'to be free from continued detention after it was or should have been known that the detainee was entitled to release'"); *Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008)*("*Wilson claims that he is entitled to monetary damages for unconstitutional imprisonment because Virginia improperly extended the length of his prison sentence. . . . Assuming, as we must, that Wilson's well-pleaded allegations are true, we agree that his claim is viable); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We have recognized a protected liberty interest in being free from wrongful, prolonged incarceration."); *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992)(Illinois state prisoners have a statutory right to receive good time credits . . . and such a state-created entitlement to good time credits is a liberty interest protected by the Fourteenth Amendment. "); *Cassady v. Tackett*, 938 F.2d 693, 697 n.5 (6th Cir. 1991)( "a due process violation may be found when a plaintiff has been deprived of a recognized property or liberty interest."). *See also Ziglar v. Skiles*, Civil Action 2:23-cv-00318, at *9 (S.D.W. Va. Aug. 29, 2023)("The Due Process Clause of the Fourteenth Amendment 'contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them,"' and '[f]reedom from bodily restraint has always been at the core of the liberty protected' by it. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))." In *Foucha*, the Court emphasized that "[i]t is clear that commitment for any purpose

constitutes a significant deprivation of liberty that requires due process protection." [citation omitted]. We have always been careful not to "minimize the importance and fundamental nature" of the individual's right to liberty." *Id. Cf. Baker v. McCollan*, 443 U.S. 137, 145 (1979)(noting that improper detention before trial "will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"). "While some of these cases discuss procedural, rather than substantive, due process, they are relevant to the question of when liberty interests arise for incarcerated prisoners." *Grinter v. Knight*, 532 F.3d 567, 573 n.3 (6th Cir. 2008).

There is no doubt that prisoners in Virginia have a liberty interest in good time credits and the district court so found. (JA057). *See e.g. Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993)("Virginia's system of awarding good conduct credit created a liberty interest protected by the Fourteenth Amendment" citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, the district court held that Plaintiffs had no vested liberty interest until the Supreme Court of Virginia rejected Attorney General Miyares' analysis in July of 2023. (JA057). The liberty interest at stake in this case derived from a legislative act. There is simply no authority and none cited by the district court, that an executive officer can, by

administrative fiat, extinguish a right provided by statute.[7]  This should be

obviously true as it is the legislature which sets (and can modify) both sentencing

parameters as well as mandatory earned sentence credits.  In essence, Defendant

Miyares relies on his own wrongful conduct to deprive Plaintiffs and others that

which the legislature mandated.  However, "no man may take advantage of his own

wrong." *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232-33

(1959)(cited with approval in *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049

(4th Cir. 1987). *See also Burlington Industries v. Milliken Co.*, 690 F.2d 380, 395

(4th Cir. 1982) (K.K. Hall, concurring in part and dissenting in part)("It is

axiomatic that a party may not profit from its own wrongdoing."); *United States v.*

*Hardy*, 299 F.2d 600, 609 (4th Cir. 1962)("It is well established that no man can

take advantage of his own wrong.").  Thus, Plaintiffs had a liberty interest in their

release as of July 1, 2022 unless and until the legislature decided otherwise.[8]

    To prove a violation of substantive due process, a plaintiff must show that

---

[7]The district court cited to *Kerr v. Marshall University Board of Governors*,
824 F.3d 62, 80 (4th Cir. 2016), where the plaintiff "did not satisfy the requirements
necessary to create those interests." (JA058). In the present case, Mr. Swart and
Mr. DaSilva satisfied all of the requirements necessary to receive the statutorily
mandated good time credits.

[8]For example, before July 1, 2022, the legislature further amended the law to
preclude prisoners who were serving either concurrent or consecutive sentences for
offenses that were precluded (by the General Assembly) from receiving enhanced
good time credits. *See* discussion in *Hoglan v. Youngkin*, 7:22-cv-00460, Slip Op.
at 3. (W.D. Va. Aug. 11, 2023)

the offending official acted with deliberate indifference, which, in the context of overdetention requires a showing that "(1) the defendant had subjective knowledge of a risk of serious harm, consisting of continued detention when the plaintiff was entitled to be released; (2) he disregarded that risk; and (3) he did so by conduct that is more than mere negligence." *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018). While the district court emphasized that the conduct at issue must "shock the conscience," that term simply means "more than mere negligence and less than maliciousness." *Williams v. Benjamin*, *supra.* 77 F.3d at 761. *See also Young v. City of Mount Ranier*, 238 F.3d 567, 574-75, 576 (4th Cir. 2001) (Deliberate indifference means "conduct that is more than negligent but less than intentional". . . . It requires a showing that the defendants actually knew of and disregarded a substantial risk of serious [harm] to the detainee"); *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.").

There is no doubt that Defendants were on notice of the harm that would befall Plaintiffs and others, they were aware of the plain language of the statute and of Mr. Herring's opinion relying on that plain language, but Attorney General Miyares misused inapplicable and irrelevant canons of statutory interpretation to deny Plaintiffs that which they were entitled to. The position of Defendant

Miyares borders on the frivolous and demonstrates that it was inappropriate to the risk of harm it created, something he must have known from his legal training as well as the opinion of Attorney General Herring. In fashioning his opinion, it appears that Mr. Miyares' followed his political beliefs rather than his legal training. Thus, it constitutes an arbitrary and capricious response to the constitutionally based harm that would necessarily befall Plaintiffs from his opinion.

In sum, Plaintiffs' Complaint satisfies this test for deliberate indifference. Defendants had (1) "subjective knowledge of a risk of serious harm, consisting of continued detention when the plaintiff[s were] entitled to be released"; (2) they "disregarded that risk" and (3) they "did so by conduct that is more than mere negligence."

## V. THE DISTRICT ERRED IN CONCLUDING THAT DEFENDANT CLARKE COULD SIMPLY RELY ON THE ADVICE OF COUNSEL WHEN HE HAD A CHOICE OF WHICH ADVICE TO FOLLOW.

Advisory opinions of the Virginia attorney general are only advisory, *see In Re: Dept. of Corrections*, 222 Va. 454, 463 (Va. 1981)("Opinions of the Attorney General are no more than guidelines for the benefit of public officials where our Court has made no definitive interpretation of the law."), and as with all clients, the decision whether or not to follow that advice rests squarely on the shoulders of the

client. Moreover, it is a fair inference that advice was not sought by Mr. Clarke, but rather initiated by Mr. Miyares. Defendant Clarke already had an opinion from Attorney General Herring to follow the plain language of the statute, that is not to exclude prisoners with *attempted* murder convictions from the enhanced good time credits mandated by the legislature. There is no apparent reason for seeking another opinion only four months later other than the partisan change in the attorney general's office. Thus, without explanation, Defendant Clarke chose to follow the advice of the new attorney general and reject that of the prior attorney general. In doing so, he also ignored the plain meaning of the statute. Thus, he cannot hide behind the advice of counsel to exonerate himself from liability. His choice to ignore the advice given by the attorney general in December, 2021 and to follow the contrary advice four months later of a newly elected attorney general who opposed the legislation, with "no basis in the governing statutes," was arbitrary and rose to the level of "deliberate indifference."

## VI. THE DISTRICT COURT ERRED IN REJECTING PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM WHEN NO OPPORTUNITY WAS PROVIDED TO CONTEST THE DECISION TO REVOKE THEIR GOOD TIME CREDITS.

It is beyond dispute that when a liberty interest in good time credits is at stake, procedural due process is required. *See e.g. Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits required a

due process hearing); *Kapordelis v. Myers*, 16 F.4th 1195, 1200 (5th Cir. 2021) ("Because Kapordelis has a liberty interest in his accumulated good time credits, revocation of the credits must comply with minimal requirements of due process."); *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) ("When such a statutorily created right [to good time] exists, "a prisoner has a constitutionally protected liberty interest in good time credit.");*Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007) (Prisoners possess a liberty interest in their statutorily provided good time credits. [citations omitted] The government may not deprive a prisoner of those credits without due process.); *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) ("A prisoner may not properly be deprived of a cognizable liberty interest without due process of law."); *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992)("state-created entitlement to good time credits is a liberty interest protected by the Fourteenth Amendment."); *Masengale v. Streeval*, No. 7:19-cv-543, at *8 (W.D. Va. July 23, 2020)("it is well-established that inmates have a liberty interest in the forfeiture of vested good conduct time."*).*

The district court held that the good time credits at issue had not vested before the effective date set by the legislature for implementation of the new regimen of good time credits and that Defendant Miyares effectively prevented that vesting by his opinion rejecting the good time credits mandated by the legislature for prisoners like Plaintiffs. (JA056-0057). However, as noted, Plaintiffs had a

25

liberty interest in the revised good time credits mandated by the legislature unless and until the legislature enacted new rules for such credit.

This Court "does not need to determine what exact process the [defendants] should have engaged in here because the record reflects that no process was provided at all." *West v. Prince George Cnty.*, Civil Action TDC-21-0863 *15 (D.Md. Jan. 13, 2022).

## CONCLUSION

For the foregoing reasons, the judgement of the district court should be reversed and the matter remanded for further proceedings.

Plaintiffs request oral argument due to the complex and important issues involved.

<div style="margin-left:40%">

Respectfully submitted,
Hamilton Hall Swart, III
Richard Earl DaSilva
By counsel

</div>

s/_____
Jeffrey E. Fogel
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300
(434) 220-4852 (fax)
jeff.fogel@gmail.com
Attorney for Appellants