RECORD NO. 24-1117

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

HAMILTON HALL SWART, III and RICHARD EARL DASILVA

Appellants,

v.

JASON S. MIYARES and HAROLD W. CLARKE,

Appellees.

_____

On Appeal From The United States District Court
For The Eastern District Of Virginia
At Richmond

_____

_____

JOINT APPENDIX

_____

| | |
|---|---|
| Jeffrey E. Fogel | Graham K. Bryant |
| 913 E. Jefferson Street | Erika L. Maley |
| Charlottesville, VA 22902 | Margaret A. O'Shea |
| (434) 984-0300 | Office of the Attorney General |
| Attorney for Appellants | 202 North 9th Street |
| | Richmond, VA 232198 |
| | (804) 786-2071 |
| | Attorneys for Appellees |

# TABLE OF CONTENTS

District Court docket report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Motion to Dismiss pursuant to R. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Exhibits:

       Miyares opinion (ECF 11-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       Herring opinion (ECF 12-1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       Swart sentencing orders (ECF 11-2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

       DaSilva sentence summary (ECF 11-3). . . . . . . . . . . . . . . . . . . . . . . . . 36

Final opinion and order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

# U.S. District Court
## Eastern District of Virginia - (Richmond)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00753-DJN

Swart v. Miyares, et al.
Assigned to: District Judge David J. Novak
Case in other court: USCA, 24-01117
Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 11/08/2023
Date Terminated: 01/31/2024
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**
**Hamilton Hall Swart, III**

represented by **Jeffrey E. Fogel**
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300
Fax: 434-220-4852
Email: jeff.fogel@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Richard Earl Dasilva**

represented by **Richard Earl Dasilva**
PRO SE

**Defendant**
**Jason S. Miyares**

represented by **Margaret Hoehl O'Shea**
Office of the Attorney General (Richmond)
202 North 9th Street
Richmond, VA 23219
(804) 225-2206
Fax: (804) 786-4239
Email: moshea@oag.state.va.us
*ATTORNEY TO BE NOTICED*

**Defendant**
**Harold W. Clarke**

represented by **Margaret Hoehl O'Shea**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/08/2023 | 1 | Complaint ( Filing fee $ 402, receipt number AVAEDC-9209466.), filed by Hamilton Hall Swart, III. (Attachments: # 1 Civil Cover Sheet)(Fogel, Jeffrey) (Main Document 1 replaced on 11/8/2023) (adun, ). (Entered: 11/08/2023) |
| 11/08/2023 | 2 | Proposed Summons re 1 Complaint by Hamilton Hall Swart, III. (Fogel, Jeffrey) (Main Document 2 replaced on 11/8/2023) (adun, ). (Entered: 11/08/2023) |

| Date | No. | Docket Entry |
|---|---|---|
| 11/08/2023 | 3 | Proposed Summons re 1 Complaint by Hamilton Hall Swart, III. (Fogel, Jeffrey) (Entered: 11/08/2023) |
| 11/08/2023 | | Initial Case Assignment to District Judge David J. Novak. (adun, ) (Entered: 11/08/2023) |
| 11/08/2023 | 4 | Summons Issued as to Jason S. Miyares. **NOTICE TO ATTORNEY** Please remove the headers and print two duplex copies of the Electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention. Electronically file the summons return using the filing events Summons Returned Executed or Summons Returned Unexecuted. Please ensure that the original summons page signed by the clerk is the first document to appear when filing the return of service. (adun, ) (Entered: 11/08/2023) |
| 11/29/2023 | | Notice of Correction re 3 - Summons not issued, no address was provided. Attorney reminded to re-file the proposed summons with an address for service as soon as possible. (adun, ) (Entered: 11/29/2023) |
| 12/01/2023 | 5 | AMENDED COMPLAINT against All Defendants, filed by Hamilton Hall Swart, III. (Fogel, Jeffrey) (Entered: 12/01/2023) |
| 12/04/2023 | 6 | SUMMONS Returned Executed by Hamilton Hall Swart; Jason S. Miyares served on 11/22/2023, answer due 12/13/2023 (Fogel, Jeffrey) Modified docket text on 12/6/2023 (adun, ). (Entered: 12/04/2023) |
| 12/06/2023 | 7 | ORDER (Ordering Proof of Service) The Court hereby ORDERS Plaintiff to file proof with the Court that Miyares has received the Amended Complaint, 5, either (1) through the formal service-of-process manner under Federal Rule of Civil Procedure 4; or (2) via the alternate forms of service under Federal Rule of Civil Procedure 5, if counsel for Miyares consents. Furthermore, the record does not indicate that Plaintiff has completed service of either the original Complaint, 1, or the Amended Complaint, 5, on Defendant Harold W. Clark. Plaintiff must therefore complete service of process of the Amended Complaint on Clarke, pursuant to Rule 4. SEE ORDER FOR DETAILS. Signed by District Judge David J. Novak on 12/6/2023. (adun, ) (Entered: 12/06/2023) |
| 12/11/2023 | 8 | NOTICE of Appearance by Margaret Hoehl O'Shea on behalf of Harold W. Clarke, Jason S. Miyares (O'Shea, Margaret) (Entered: 12/11/2023) |
| 12/11/2023 | 9 | ACKNOWLEDGEMENT OF SERVICE Executed as to 7 Order,, 5 Amended Complaint Acknowledgement filed by Hamilton Hall Swart, III. (Fogel, Jeffrey) (Entered: 12/11/2023) |
| 12/13/2023 | 10 | MOTION to Dismiss for Failure to State a Claim by Harold W. Clarke, Jason S. Miyares. (O'Shea, Margaret) (Entered: 12/13/2023) |
| 12/13/2023 | 11 | Memorandum in Support re 10 MOTION to Dismiss for Failure to State a Claim filed by Harold W. Clarke, Jason S. Miyares. (Attachments: # 1 Exhibit A - Official AG Opinion, # 2 Exhibit B - Plaintiff Swart Sentencing Orders, # 3 Exhibit C - Plaintiff Dasilva Sentence Summary)(O'Shea, Margaret) (Entered: 12/13/2023) |
| 12/27/2023 | 12 | Memorandum in Opposition re 10 MOTION to Dismiss for Failure to State a Claim filed by Hamilton Hall Swart, III. (Attachments: # 1 Exhibit Exhibit A)(Fogel, Jeffrey) (Entered: 12/27/2023) |
| 12/28/2023 | | Notice of Correction re 12 - Filing attorney reminded to use the nine element signature block format when filing documents. Please refer to Chapter 3 of the E-Filing Policies and Procedures Manual found on the Court's website for proper format. No further action needed at this time. (adun, ) (Entered: 12/28/2023) |

| 01/02/2024 | 13 | REPLY to Response to Motion re 10 MOTION to Dismiss for Failure to State a Claim filed by Harold W. Clarke, Jason S. Miyares. (O'Shea, Margaret) (Entered: 01/02/2024) |
| 01/31/2024 | 14 | MEMORANDUM ORDER granting 10 Motion to Dismiss and thus DISMISSES WITH PREJUDICE the matter as to the claims levied against both Defendants. Signed by District Judge David J. Novak on 1/31/2024. (cgar) (Entered: 01/31/2024) |
| 02/05/2024 | 15 | NOTICE OF APPEAL as to 14 Order on Motion to Dismiss for Failure to State a Claim by Hamilton Hall Swart, III. Filing fee $ 605, receipt number AVAEDC-9345275. (Fogel, Jeffrey) (Entered: 02/05/2024) |
| 02/06/2024 | 16 | Transmission of Notice of Appeal to US Court of Appeals re 15 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Lgar, ) (Entered: 02/06/2024) |
| 02/06/2024 | | USCA Case Number 24-1117, Case Manager, TFischer, 15 Notice of Appeal filed by Hamilton Hall Swart, III. (Lgar, ) (Entered: 02/06/2024) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| **HAMILTON HALL SWART, III and** | : | |
| **RICHARD EARL DASILVA** | : | |
| | : | **FIRST AMENDED COMPLAINT** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No.  3:23cv753** |
| | : | |
| **JASON S. MIYARES AND HAROLD W.** | : | |
| **CLARKE** | : | |
| | : | |
| **Defendants.** | : | |

**JURISDICTION**

1.      The jurisdiction of this Court is predicated on 28 U.S.C. § 1331 and 28 U.S.C.

§1343(a)(3), (4).

**PARTIES**

2.      Plaintiff, Hamilton Hall Swart, III is a citizen of the United States and a resident of the State

of Virginia.

3.      Plaintiff, Richard Earl DaSilva is a citizen of the United States and a resident of the State of

Virginia.

4.      Defendant Jason S. Miyares was, at all times relevant to this action, attorney general of the

Commonwealth of Virginia. Prior to that he was a delegate in the Virginia House of

Delegates.

5.      Defendant Harold W. Clarke was, at all time relevant to this action, the director of the

Department of Corrections for the Commonwealth of Virginia.

**FACTS**

6.      In 2020, the General Assembly passed a bill, HR5148, providing that Virginia Code § 53.1-

202.3 would be amended as it relates to the amount and rate of good time credits earned by prisoners in the Commonwealth.

7.    Specifically, HR5148 provided that for offenses enumerated in subsection (A), the maximum amount of sentence credits that may be earned for every 30 days is 4.5 days.  For all other offenses not excluded by subsection (A), the maximum was increased from 4.5 days to 15 days earned for every 30 days served. The bill also made the new credits retroactive. These amendments were to be effective July, 2022.

8.    At the time of the passage of HR5148, plaintiff Swart was a prisoner of the Commonwealth serving time, *inter alia*, for attempted aggravated murder.

9.    Although aggravated murder is one of the more than twenty five (25) offenses specifically excluded by subsection (A), *attempted* aggravated murder is not.

10.    Due to the expanded good time credits in HR5148, Mr. Swart was entitled to be released in or about July 2022.

11.    At the time of the passage of HR5148, plaintiff DaSilva was a prisoner of the Commonwealth serving time, *inter alia*, for attempted capital murder.

12.    Although capital murder is one of the more than twenty five (25) offenses specifically excluded by subsection (A), *attempted* capital murder is not.

13.    In December, 2021, at the request of the Virginia Department of Corrections, the then attorney general, Mark R. Herring, issued an advisory opinion, *inter alia* confirming that attempted murder was not among the offenses that were excluded by the legislature from receiving the newly expanded good time credits.

14.    Plaintiffs were duly notified by the Department of Corrections that, pursuant to the new law, they would be released in or about July, 2022.

15.    In 2022, defendant Miyares was elected attorney general.

16.    Defendant Miyares was a vehement opponent of expanded good time credits for prisoners
       and voted against HR5148 when he was in the legislature.

17.    On April 13, 2022, defendant Miyares issued an advisory opinion, contrary to that of his
       predecessor, that claimed that prisoners with convictions for attempted murder were
       excluded from the expanded good time credits in HR5148.  His argument was that since
       subsection (A)(2) includes solicitation to commit murder, the legislature (of which he was a
       member) must have intended to include attempted murder as well.

18.    Defendant Clarke, pursuant to this new advisory opinion, refused to release plaintiffs and
       others similarly situated calculating their good time credits at 4.5 per 30 days and not 15 per
       30 days as required by HR5148.

19.    Neither defendant provided any opportunity for plaintiffs to contest the withdrawal of their
       vested good time credits.

20.    Plaintiffs were finally released in July 2023, approximately one year after they were entitled
       to be released.

21.    A unanimous Supreme Court of Virginia, in the case of *Prease v. Clarke*, No. 220665 (Va.
       July 6, 2023), held that HR5148 did not exclude the offense of attempted aggravated murder
       from the expanded good time credits in the statute. The Court ordered the release of Mr.
       Prease who had been convicted of attempted aggravated murder as he was entitled to the
       expanded good time credits.

22.    As the Court posed the question, "the dispositive issue here is whether attempted aggravated
       murder is one of the enumerated offenses that is ineligible for expanded earned sentence
       credits under subsection (A)."  The Court held that the plain language of the statute provided

the answer, no.

23.   Defendant Miyares argued that among the exclusions in the statute was for a Class 1 felony. Subsection (A)(1).  However, the Court pointed out that an attempt to commit a Class 1 felony is a Class 2 felony and therefore Prease (as well as plaintiffs) was not excluded on those grounds from entitlement to the expanded good time credits

24.   Next, the Court noted that attempted aggravated murder was not among the enumerated offenses in subsection (A). "Thus it would appear that there is no basis in the governing statutes for denying Prease [or plaintiffs] expanded earned sentence credits on his attempted aggravated murder conviction."

25.   Next, the Office of the Attorney General argued, as noted above, that "the General Assembly clearly intended to exclude individuals convicted of attempted aggravated murder from receiving expanded earned sentence credits because it included solicitation to commit murder."

26.   In rejecting this argument, the Court noted that it could only apply the law as written, not based on the speculation that if the legislature had thought of it, it would have used different language, which should now be engrafted into the law.

27.   Even prior to the decision in the *Pease* case, plaintiff Swart filed a habeas corpus petition with the Supreme Court of Virginia.  That petition was dismissed in September, 2023 because Mr. Swart was no longer incarcerated.

28.   In the Supreme Court, the defendant Miyares's office argued that "[b]ecause Swart's current term of incarceration includes a sentence for attempted capital murder in violation of Code § 18.2-31(6)(a Class 1 Felony) which is encompassed within subsection (A) of Code § 53.1-202.3, he is not eligible to earn Enhanced Earned Sentence Credits under subsection (B) of

Code § 53.1-202.3." This statement was supported by a sworn statement by the Manager of

Court and Legal Services, the entity at the Department of Corrections responsible for

computing inmate sentences and good time release date.

29. The aforesaid claim is patently false. Mr. Swart (as well as Mr. DaSilva) was not convicted

of murder, a Class 1 felony, but of attempted murder. An attempt to commit a Class 1

felony is a Class 2 felony, which is not excluded from the enhanced earned sentence credits.

30. Mr. Miyares advisory opinion was unreasonable in its analysis and result. The arguments

made by his office in the *Prease* case and in response to Mr. Swart's *habeas* petition

demonstrate just how unreasonable those arguments were. Just as the Supreme Court of

Virginia said in the *Prease* case, there was no basis in the governing statutes for denying Mr.

Swart or Mr. DaSilva expanded earned sentence credits on their attempted murder

convictions.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(8th Amendment)

31. There is no penological justification for incarceration beyond a prisoner's release date.

32. Mr. Swart and Mr. DaSilva had a vested, enforceable, liberty interest in release as of July,

2022.

33. Defendants were deliberately indifferent to the plight faced by Mr. Swart and Mr. Da Silva,

and others similarly situated, of further incarceration without penological justification.

34. Defendants were aware that withdrawal of a vested release date and that further

incarceration without penological justification was a serious deprivation.

35. Defendants were also personally aware of the impact on inmates, such as plaintiffs, of their

decision to refuse give enhanced earned sentence credits to those eligible for those credits.

36.    Defendants' conduct as described herein violated plaintiffs' rights under the Eighth

       Amendment to the United States Constitution.

37.    As a direct and proximate result of the actions of defendants, plaintiffs suffered emotional

       distress, loss of income and the pains of involuntary confinement.

**SECOND CAUSE OF ACTION**
(Due process)

38.    Incarceration beyond the termination of one's sentence violates the due process clause of the

       Fourteenth Amendment to the United States Constitution.

39.    The conduct of defendants herein resulted in the intentional incarceration of plaintiffs

       beyond the date they were entitled to be released and violated the Fourteenth Amendment.

40.    As a direct and proximate result of the actions of defendants, plaintiffs suffered emotional

       distress, loss of income and the pains of involuntary confinement.

**THIRD CAUSE OF ACTION**
(Procedural Due Process)

41.    As plaintiffs had a vested, enforceable, liberty interest in release according to law, the

       extension of their release date entitled them to a due process hearing to challenge that

       decision.

42.    Neither defendant Miyares nor defendant Clarke provided plaintiffs with any due process

       prior to extending their release date in violation of the Fourteenth Amendment to the United

       States Constitution.

43.    As a direct and proximate result of the actions of defendants, plaintiffs suffered emotional

       distress, loss of income and the pains of involuntary confinement.

**REQUEST FOR RELIEF**

**WHEREFORE**, plaintiffs seek relief against the defendants severally and jointly as follows:

    A.      Compensatory damages pursuant to 42 U.S.C. § 1983;

    B.      Reasonable attorney's fees and costs against defendants pursuant to 42

           U.S.C. § 1988; and,

    C.      Such other and further relief as appears reasonable and just.

**JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all issue so triable.

Respectfully submitted,
HAMILTON HALL SWART, III
RICHARD DASILVA
By Counsel

s/_____
Jeffrey E. Fogel, VSB #76345
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300 (Tel)
E-mail: jeff.fogel@gmail.com

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

HAMILTON HALL SWART III, and
RICHARD EARL DASILVA,

      Plaintiffs,


v.                                    CASE NO.  3:23CV753

JASON S. MIYARES and HAROLD W.
CLARKE,

      Defendants.


## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

COME NOW Defendants Jason Miyares and Harold Clarke, by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss the claims against them for failure to state a claim upon which relief can be granted.  The reasons in support of this request are set forth in a separate supporting memorandum.


                        Respectfully submitted,

                        JASON S. MIYARES and HAROLD W. CLARKE,
                        Defendants.

By:                    /s/
                        Margaret Hoehl O'Shea, SAAG, VSB #66611
                        Attorney for named Defendants
                        Office of the Attorney General
                        Criminal Justice & Public Safety Division
                        202 North 9th Street
                        Richmond, Virginia 23219
                        (804) 225-2206
                        (804) 786-4239 (Fax)
                        Email:  moshea@oag.state.va.us

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 13th day of December, 2023, I electronically filed the

foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to all filing users, and I hereby certify that I have mailed by

United States Postal Service the documents to the following non-CM/ECF participants:  N/A

          /s/
_____
Margaret Hoehl O'Shea, SAAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us

2

JA012



# *COMMONWEALTH of VIRGINIA*

*Office of the Attorney General*

Jason S. Miyares
Attorney General

202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
Fax 804-786-1991
Virginia Relay Services
800-828-1120
7-1-1

April 13, 2022

Harold W. Clarke, Director
Virginia Department of Corrections
Post Office Box 26963
Richmond, Virginia 23261

Dear Director Clarke:

      I am responding to your request for an official opinion in accordance with § 2.2-505 of the Code of Virginia.

## Issues Presented

      You have asked that I reconsider an opinion of this office issued to you on December 21, 2021.[1] That opinion dealt with four questions regarding House Bill 5148,[2] which was passed by the General Assembly in its 2020 Special Session to provide for a new earned sentence credit rate schedule, effective July 1, 2022. This new earned sentence credit rate schedule provides for enhanced earned sentence credits for offenses that are not excluded under the language of the bill. Your questions relate to the offenses that are excluded from the new earned sentence credit rate schedule.

      Specifically, you have asked:

1. "When considering the language 'any felony violation,' does this include the completed act, as well as the other offense modifiers: Conspiracy, Attempts, Solicit, Solicit Juvenile to Commit, Accessory Before the Fact and Principal 2nd Degree?"

2. "If the above modifiers are also excluded from earning the enhanced earned sentence credits, is there language in the legislation excluding the modifiers for Aggravated Murder since § 53.1-202.3 does not specifically list § 18.2-31?"

3. "Does § 53.1-202.3(A)(10), by legal definition, include § 18.2-67.5 (Felony Attempted Rape, Forcible Sodomy, Object Sexual Penetration, Aggravated Sexual Battery)?"

---

[1] 2021 Op. Va. Att'y Gen. No. 21-068, available at https://www.oag.state.va.us/citizen-resources/opinions/official-opinions/30-resource/opinions/1917-2021-official-opinions#december.

[2] I note that as a member of the General Assembly, I voted against this legislation.

Exhibit A

Director Harold W. Clarke
April 13, 2022
Page 2

4.    "In § 53.1-202.3(A)(17), a second or subsequent violation of § 18.2-51 or § 18.2-51.1 while such person was at liberty, would be excluded from the enhanced earned sentence credits.  However, would such exclusion apply if the first violation of § 18.2-51 or § 18.2-51.1 was a malicious felonious assault?  In the same way, in § 53.1-202.3(A)(17)(g) would § 18.2-92 be excluded if the offender was previously convicted of violating § 18.2-90?"

I have reconsidered the prior opinion and now provide the following analysis, which in part amends the earlier opinion and addresses certain issues that were omitted.

**Applicable Law**

The bill in question, House Bill 5148, establishes a new earned sentence credit rate schedule but sets out certain offenses that will be excluded from the new schedule and therefore ineligible for enhanced earned sentence credits.  Under the language of the bill, the excluded offenses will be limited to "[a] maximum of 4.5 sentence credits . . . for each 30 days served."  The provisions of the bill pertaining to the excluded offenses will be codified in Virginia Code § 53.1-202.3(A).  Effective July 1, 2022, the subsection will read as follows, in relevant part:

A maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence for a conviction for any offense of:

1.    A Class 1 felony;

2.    Solicitation to commit murder under § 18.2-29 or any violation of § 18.2-32, 18.2- 32.1, 18.2-32.2, or 18.2-33;

    [. . .]

6.    Any malicious felonious assault or malicious bodily wounding under Article 4 (§ 18.2-51 et seq.) of Chapter 4 of Title 18.2, any violation of § 18.2-51.6 or 18.2-51.7, or any felony violation of § 18.2-57.2;

7.    Any felony violation of § 18.2-60.3;

8.    Any felony violation of § 16.1-253.2 or 18.2-60.4;

    [. . .]

10.    Criminal sexual assault punishable as a felony under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2;

    [. . .]

16.    Any violation of subsection F of § 3.2-6570, any felony violation of § 18.2-128, or any violation of § 18.2-481, 37.2-917, 37.2-918, 40.1-100.2, or 40.1-103; or

17.    A second or subsequent violation of the following offenses, in any combination, when such offenses were not part of a common act, transaction, or scheme and such person has been at liberty as defined in § 53.1-151 between each conviction:

    a. Any felony violation of § 3.2-6571;

Director Harold W. Clarke
April 13, 2022
Page 3

> [. . .]
>
> e.     Any violation of § 18.2-51 when done unlawfully but not
> maliciously,   § 18.2-51.1   when   done   unlawfully   but   not
> maliciously, or § 18.2-54.1 or 18.2-54.2;
>
> [. . .]
>
> g.     Any violation of § 18.2-89 or 18.2-92[.]

For the sake of simplicity, I will refer to this subsection as "§ 53.1-202.3(A)," as if it were currently codified.

## Discussion/Analysis

Question One

As I understand your first question, you ask: (1) whether the language "any felony violation" in § 53.1-202.3(A) includes convictions for conspiracy, attempt, or solicitation to commit the listed crimes; and (2) whether the language "any felony violation" in § 53.1-202.3(A) includes convictions for acting as an accessory before the fact or a principal in the second degree in the commission of the listed crimes.

Section 53.1-202.3(A) does not explicitly state whether convictions for conspiracy, attempt, or solicitation are included in the term "any felony violation." Nevertheless, the language of the subsection indicates that the term "any felony violation" is intended to include such convictions. Subdivision (A)(2) lists "[s]olicitation to commit murder under § 18.2-29 or any violation of § 18.2-32, 18.2-32.1, 18.2-32.2, or 18.2-33" as included within its scope. To read the term "any violation of" in this subdivision as referring to only the completed crime would lead to the irrational conclusion that the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits—yet leave convictions for conspiracies or *actual attempts* to commit murder eligible for enhanced sentence credits. Courts will give a statute a "reasonable . . . interpretation consistent with its apparent purpose and [legislative intent],"[3] and will avoid an interpretation that leads to irrational results.[4]  Accordingly, I conclude that convictions for conspiracy, attempt, or solicitation are included in the language "any felony violation" in § 53.1-202.3(A).[5]

Convictions for acting as an accessory before the fact or as a principal in the second degree are also included in the language "any felony violation." Section 18.2-18 of the Code provides generally that "[i]n the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree."[6]  Therefore, such accomplices bear the same liability as their principal.  It follows that convictions for acting as an accessory before the fact or as a principal in the second degree to crimes listed after the terms "any felony violation"

---

[3] Bustillos v. Murphy, 96 Cal. App. 4th 1277, 1280 (4th Dist. 2002).

[4] VEPCO v. Citizens for Safe Power, 222 Va. 866, 869 (1981) ("[W]e presume that the General Assembly does not intend the application of a statute to lead to irrational consequences.").

[5] I note that this analysis is based on current law, which makes any conviction for conspiracy, attempt, or solicitation to commit one of the relevant offenses a felony (see Virginia Code § 18.2-22(a), § 18.2-26, and § 18.2-29), and is not intended to address any potential future scenarios in which a conviction for conspiracy, attempt, or solicitation to commit one of the relevant offenses is not classified as a felony.

[6] VA. CODE ANN. § 18.2-18 (2021).

JA015

Director Harold W. Clarke
April 13, 2022
Page 4

in § 53.1-202.3(A) fall within the scope of that subsection and are therefore excluded from eligibility for enhanced sentence credits.

Question Two

I understand your second question to be whether § 53.1-202.3(A) applies to convictions for aggravated murder—and if so, whether it also applies to convictions for conspiracy, attempt, or solicitation to commit aggravated murder; or to convictions for commission of aggravated murder as an accessory before the fact or a principal in the second degree.

Aggravated murder is classified as a Class 1 Felony.[7] Because § 53.1-202.3(A) includes any "Class 1 Felony," aggravated murder is included in the scope of the subsection, even though it is not explicitly named as such.

As mentioned above, § 53.1-202.3(A) explicitly provides that "solicitation to commit murder" is included in the scope of the subsection. "Solicitation to commit murder" by definition includes "solicitation to commit aggravated murder." Therefore, solicitation to commit aggravated murder is included in the scope of § 53.1-202.3(A). Further, consistent with the analysis set forth in "Question One" above with respect to § 53.1-202.3(A)(2), any conviction for attempt or conspiracy to commit aggravated murder is likewise included in the scope of the subsection, making these offenses ineligible for enhanced earned sentence credits.

As discussed earlier, § 18.2-18 of the Code provides generally that in the case of every felony, an individual who is convicted of acting as an accessory before the fact or a principal in the second degree bears the same liability as their principal. Thus, an individual who is convicted of such accomplice liability in an aggravated murder is generally convicted of aggravated murder itself. While § 18.2-18 sets out certain exceptions whereby such an accomplice shall be convicted of first degree murder rather than aggravated murder, first degree murder is also included in the scope of § 53.1-202.3(A). Therefore, any conviction for acting as an accessory before the fact or a principal in the second degree to an aggravated murder falls within the scope of § 53.1-202.3(A).

Question Three

You next ask whether § 53.1-202.3(A)(10) includes, by legal definition, § 18.2-67.5, which establishes criminal penalties for attempted rape, forcible sodomy, object sexual penetration, or aggravated sexual battery. Section 53.1-202.3(A)(10) includes convictions for "[c]riminal sexual assault punishable as a felony under Article 7 . . . of Chapter 4 of Title 18.2," which includes § 18.2-67.5. In my opinion, based on the reasoning set forth in "Question One" above, and consistent with apparent legislative intent, § 53.1-202.3(A)(10) includes all felony convictions of § 18.2-67.5, making them ineligible for enhanced earned sentence credits.

Question Four

Your final question is whether § 53.1-202.3(A)(17)(e) would apply to a second offense conviction of § 18.2-51 or § 18.2-51.1, where the first offense was committed maliciously.[8] Relatedly, you ask whether a conviction for a violation of § 18.2-92 would fall within the scope of § 53.1-202.3(A)(17)(g) if the offender was previously convicted of violating § 18.2-90.

---

[7] VA. CODE ANN. § 18.2-31 (2021).

[8] I assume, under this hypothetical, that no convictions of § 18.2-54.1 or § 18.2-54.2 exist.

Director Harold W. Clarke
April 13, 2022
Page 5

Based on the plain language of the provision, a conviction for a second offense of § 18.2-51 or § 18.2-51.1 would not fall under the scope of § 53.1-202.3(A)(17)(e) where the first offense was committed maliciously. Likewise, a conviction for violating § 18.2-92, where the offender was only previously convicted of violating § 18.2-90, would not fall within the scope of § 53.1-202.3(A)(17)(g).

## Conclusion

For the foregoing reasons, it is my opinion that:

1. Convictions for conspiracy, attempt, or solicitation are included in the language "any felony violation" in § 53.1-202.3(A), making such convictions of the listed crimes ineligible for enhanced earned sentence credits. Convictions for acting as an accessory before the fact or as a principal in the second degree to these same crimes also fall within the scope of that subsection and are excluded from eligibility for enhanced earned sentence credits.

2. Section 53.1-202.3(A) includes convictions for aggravated murder, and also convictions for solicitation, conspiracy, or attempt to commit aggravated murder. Further, any conviction for acting as an accessory before the fact or a principal in the second degree to an aggravated murder falls within the scope of § 53.1-202.3(A), making such convictions ineligible for enhanced earned sentence credits;

3. Convictions for felony violations of § 18.2-67.5 are included in the scope of § 53.1-202.3(A)(10) and are therefore ineligible for enhanced earned sentence credits;

4. A conviction for a second offense of § 18.2-51 or § 18.2-51.1 would not fall under the scope of § 53.1-202.3(A)(17)(e) where the first offense was committed maliciously. Likewise, a conviction for violating § 18.2-92, where the offender was only previously convicted of violating § 18.2-90, would not fall within the scope of § 53.1-202.3(A)(17)(g). As such, those convictions would be eligible for enhanced earned sentence credits.[9]

To the extent the analysis in the prior opinion is inconsistent with this above analysis, the prior opinion is hereby superseded.

With kindest regards, I am,

Very truly yours,

Jason S. Miyares
Attorney General

---

[9] In my view, the conclusions with respect to Question 4 represent a poor policy outcome, and I would encourage further review by the General Assembly.

JA017



# COMMONWEALTH of VIRGINIA

### Office of the Attorney General

Mark R. Herring
Attorney General

202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
Fax 804-786-1991
Virginia Relay Services
800-828-1120
7-1-1

December 21, 2021

Harold W. Clarke, Director
Virginia Department of Corrections
Post Office Box 26963
Richmond, Virginia 23261

Dear Director Clarke:

I am responding to your request for an official advisory opinion in accordance with § 2.2-505 of the Code of Virginia.

### Issues Presented

You ask several questions regarding a provision of House Bill 5148, passed during the 2020 Special Session of the General Assembly, that amends § 53.1-202.3 of the Code of Virginia, effective July 1, 2022. The amendments provide for a new earned sentence credit rate schedule, but limit certain offenses to a maximum of 4.5 earned sentence credits for each 30 days served. Specifically, you ask the following:

1. When considering the language "any felony violation" does this include the completed act, as well as the other offense modifiers: Conspiracy, Attempts, Solicit, Solicit Juvenile to Commit, Accessory Before the Fact and Principal 2nd Degree?

2. If the above modifiers are also excluded from earning the enhanced earned sentence credits, is there language in the legislation excluding the modifiers for Aggravated Murder since § 53.1-202.3 does not specifically list § 18.2-31?

3. Does § 53.1-202.3(A)(10), by legal definition, include § 18.2-67.5 (Felony Attempted Rape, Forcible Sodomy, Object Sexual Penetration, Aggravated Sexual Battery)?

4. In § 53.1-202.3(17), a second or subsequent violation of § 18.2-51 or § 18.2-51.1 while such person was at liberty, would be excluded from the enhanced earned sentence credits. However, would such exclusion apply if the first violation of § 18.2-51 or § 18.2-51.1 was a malicious felonious assault?   In the same way, in § 53.1-202.3(17)(g) would § 18.2-92 be excluded if the offender was previously convicted of violating § 18.2-90?

Director Harold W. Clarke
December 21, 2021
Page 2

**Applicable Law and Discussion**

House Bill 5148 amends § 53.1-202.3, which prescribes the rate at which an inmate may earn sentence credits. As relevant to your inquiries, the amended version of § 53.1-202.3(A) provides for "[a] maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence for a conviction for any offense" enumerated in the statute.[1]

1. "Felony" Language and Offense Modifiers

You first ask whether the phrase "any felony violation," as it appears in several subsections of the revised statute, includes the substantive completed offense, as well as the following offense modifiers: conspiracy, attempt, solicit, solicit juvenile to commit, accessory before the fact, and principal in the second degree.

Statutory interpretation "begin[s] with the assumption 'that the legislature chose, with care, the words it used when it enacted the relevant statute'" and courts consider their primary objective to be ascertaining and giving effect to the legislature's intent, as expressed by the statute's language.[2] If the statute's language is unambiguous, courts consider themselves "bound by the plain meaning of that language."[3] "[U]nless a literal interpretation . . . would result in manifest absurdity," courts give effect to the intent of legislatures, as expressed by the chosen language.[4] The Supreme Court of Virginia uses the phrase "absurd result" "to describe situations in which the law would be internally inconsistent or otherwise incapable of operation."[5] When a statute is subject to multiple interpretations, courts "apply the interpretation that will carry out the legislative intent behind the statute."[6] Therefore, it is my opinion that the phrase "any felony violation" includes the substantive completed offense.

This analysis also guides my opinion as to offenses committed in the roles of principal in the second degree and accessory before the fact. By statute, "[i]n the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted *and punished* in all respects as if a principal in the first degree," except in limited circumstances.[7] Therefore, it is my opinion that the phrase "any felony violation" includes acting as a principal in the second degree or an accessory before the fact to one who violates any of the enumerated offenses in § 53.1-202.3(A).

---

[1] VA. CODE ANN. § 53.1-202.3(A) (effective July 1, 2022). This and other citations to the Code of Virginia herein are from the electronic version of the Code on LexisNexis and are current through the 2021 Regular Session and Special Session I and II of the General Assembly.

[2] Chapman v. Virginia, 68 Va. App. 131, 136 (2017).

[3] Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104 (2007). The context in which a word or phrase is used also guides courts in determining a statute's plain meaning. *Chapman*, 68 Va. App. at 136.

[4] *Conyers*, 273 Va. at 104; *see also* Jacobs v. Wilcoxson, 71 Va. App. 521, 526 (2020) ("[W]hile we look at the words of the statue to determine legislative intent, we will not interpret a statute in a way that leads to unreasonable or absurd results.").

[5] Boynton v. Kilgore, 271 Va. 220, 227 n.9 (2006) (citation omitted).

[6] *Conyers*, 273 Va. at 104.

[7] VA. CODE ANN. § 18.2-18 (emphasis added). This section exempts §§ 18.2-31(A)(2), (A)(10), and (A)(13) from this general rule, and principals in the second degree and accessories before the fact to these aggravated murder provisions are treated as though the offense is first degree murder, which is, itself, a Class 2 felony. *See* VA. CODE ANN. § 18.2-32 (2021).

Director Harold W. Clarke
December 21, 2021
Page 3

With respect to solicitation to commit any of the crimes listed in § 53.1-202.3(A), the legislature explicitly included solicitation to commit murder among the disqualifying offenses in § 53.1-202.3(A)(2). Solicitation is not referenced in any of the other subparagraphs. When the General Assembly includes specific language in one Code provision but omits that language from another, we must presume that the exclusion of the language was intentional.[8] Furthermore, interpreting § 53.1-202.3(A) to implicitly include solicitation to commit any of the listed crimes would render superfluous the explicit reference in § 53.1-202.3(A)(2) to solicitation to commit murder. It is a settled principle of statutory construction that no part of a statute "will be considered meaningless unless absolutely necessary."[9] It is my opinion that an offense for solicitation to commit murder is not eligible for sentence credits, however, other solicitations may be eligible if the solicitation is of an enumerated offense in § 53.1-202.3(A).

Regarding attempts to commit the disqualifying crimes listed in § 53.1-202.3(A), subparagraph 10 includes any "[c]riminal sexual assault punishable as a felony under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2."[10] Section 18.2-67.5 defines the disqualifying crimes, which include attempted rape, attempted forcible sodomy, attempted object sexual penetration, and attempted aggravated sexual battery. The General Assembly's incorporation of some, but not all, attempts as disqualifying crimes signifies that the legislature's exclusion of any language that would reference attempts to commit other crimes was intentional. Therefore, it is my opinion that the phrase "any felony violation" of the listed criminal statutes includes attempts to commit the felony sexual assaults prohibited by § 18.2-67.5 but does not include attempts to commit the other listed offenses.

2. Aggravated Murder and Offense Modifiers

Second, you ask if the modifiers addressed in the first question are excluded from the enhanced earned sentence credits, and, if so, whether the legislation includes language excluding the modifiers for aggravated murder, since § 53.1-202.3 does not specifically list § 18.2-31.

Section 18.2-31(A) lists the offenses constituting aggravated murder, which is punished as a Class 1 felony.[11] The amended version of § 53.1-202.3 provides for a maximum of 4.5 days of earned sentence credits, per 30 days served, for a Class 1 felony.[12] Thus, the completed act of aggravated murder is excluded from the enhanced earned sentence credits under § 53.1-202.3(A)(1).[13] Solicitation to commit aggravated murder is likewise excluded from the enhanced earned sentence credits.[14]

As discussed earlier, felony principals in the second degree and accessories before the fact are generally punished as if they are principals in the first degree.[15] However, these modifiers are excluded from the enhanced earned sentence credits because aggravated murder is excluded.[16] Accessories before the fact or principals in the second degree to those aggravated murder provisions "shall be indicted, tried,

---

[8] Brown v. Commonwealth, 284 Va. 538, 545 (2012).

[9] Id. at 544.

[10] VA. CODE ANN. § 53.1-202.3(A)(10) (effective July 1, 2022).

[11] Id. § 18.2-31(A).

[12] Id. § 53.1-202.3(A)(1) (effective July 1, 2022).

[13] Id.

[14] VA. CODE ANN. § 53.1-202.3(A)(2) (effective July 1, 2022).

[15] Id. § 18.2-18.

[16] Id.; see VA. CODE ANN. § 53.1-202.3(A)(1) (effective July 1, 2022) (excluding Class 1 felonies).

Director Harold W. Clarke
December 21, 2021
Page 4

convicted and punished as though the offense were murder in the first degree."[17]   First degree murder is excluded from the enhanced sentence credits.[18]   Therefore, even the aggravated murder provisions excluded from the general rule for principals in the second degree and accessories before the fact, are omitted from the new enhanced sentence credits, by way of the exclusion for first degree murder offenses.

This leaves the conspiracy and attempt modifiers for resolution.[19]   There is no direct reference to conspiracy to commit aggravated murder or attempted aggravated murder in § 53.1-202.3(A)(1) or -(A)(2),[20] and these aggravated murder modifiers do not fit within any offenses listed in those subsections.  Therefore, an offender convicted of conspiracy to commit aggravated murder or attempted aggravated murder would be permitted to receive enhanced earned sentence credits.

3.   Felony Attempted Rape, Forcible Sodomy, Object Sexual Penetration, and Aggravated Sexual Battery

Third, you ask whether § 53.1-202.3(A)(10) includes § 18.2-67.5 which governs felony attempted rape, forcible sodomy, object sexual penetration, and aggravated sexual battery.  Under § 18.2-67.5, each of these offenses are felonies.[21]   Section 53.1-202.3(A)(10) excludes "[c]riminal sexual assault punishable as a felony under Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2."[22]   Therefore, convictions for the offenses outlined in § 18.2-67.5 are excluded from the enhanced earned sentence credits.[23]

4.   Section 53.1-202.3(A)(17)

Your final question is whether the exclusion from earning certain credits in § 53.1-202.3(A)(17)(e) applies if an offender's first violation of § 18.2-51 or § 18.2-51.1 was a malicious felonious assault.  Similarly, you ask whether a violation of § 18.2-92 would fall under the exclusion from credits in § 53.1-202.3(A)(17)(g) if the offender was previously convicted of violating § 18.2-90.

Section 53.1-202.3(A)(17) allows offenders to earn a maximum of 4.5 sentence credits for each 30 days served on a sentence for a second or subsequent offense violation, but only applies to the offenses listed in that subdivision.[24]   Thus, the exclusion in § 53.1-202.3(A)(17)(e) would not apply when an offender's first violation of § 18.2-51 or § 18.2-51.1 was committed maliciously, as malicious violations are not included in § 53.1-202.3(A)(17)(e).[25]   Likewise, § 53.1-202.3(A)(17)(g) would not apply where an offender violated § 18.2-92, but only previously violated § 18.2-90, since § 18.2-90 is not an offense listed in § 53.1-202.3(A)(17)(g).[26]   Therefore, in the two scenarios that you ask about, the offender would be eligible for the enhanced earned sentence credits.

---

[17] *Id.*

[18] VA. CODE ANN. §§ 18.2-32, 53.1-202.3(A)(2) (excluding "any violation of § 18.2-32").

[19] For reference, conspiracy to commit a Class 1 felony constitutes a Class 3 felony and attempt to commit a Class 1 felony is a Class 2 felony.  VA. CODE ANN. §§ 18.2-22(a)(1), -25.

[20] VA. CODE ANN. § 53.1-202.3(A)(1)-(2).

[21] *Id.* § 18.2-67.5(A)-(B).

[22] *Id.* § 53.1-202.3(A)(10) (effective July 1, 2022).

[23] *Id.*  Subsection (A)(10) does not, however, cover attempted sexual battery, as it is a misdemeanor.

[24] *Id.* § 53.1-202.3(A)(17) (effective July 1, 2022) ("A second or subsequent violation *of the following offenses* . . . .") (emphasis added).

[25] *Id.* § 53.1-202.3(A)(17)(e) (effective July 1, 2022).

[26] *Id.* § 53.1-202.3(A)(17)(g) (effective July 1, 2022).

Director Harold W. Clarke
December 21, 2021
Page 5

### Conclusion

For the foregoing reasons, it is my opinion that the language "any felony violation," in the context of § 53.1-202.3(A), as amended, includes the completed act prohibited by the enumerated criminal statutes. It also includes acting as a principal in the second degree or accessory before the fact to the primary perpetrator of any listed offense. However, the statute only includes solicitation to commit murder and does not implicitly include solicitation to commit other listed crimes. The statute also includes attempts to commit certain felony sexual assaults listed in § 18.2-67.5, but does not implicitly include attempts to commit the other listed crimes.

The offense of aggravated murder and the aggravated murder modifiers of solicitation, principal in the second degree, and accessory before the fact, are excluded from the enhanced earned sentence credits, but conspiracy to commit and attempted aggravated murder are eligible for the enhanced earned sentence credits. As amended, § 53.1-202.3(A)(10) includes felony violations of § 18.2-67.5. Finally, as amended, the exclusion in § 53.1-202.3(A)(17)(e) does not apply to a second or subsequent violation of §§ 18.2-51 or 18.2-51.1 when the first violation was committed maliciously; and § 53.1-202.3(A)(17)(g) would not apply when an offender violates § 18.2-92, but only previously violated § 18.2-90.

With kindest regards, I am,

Very truly yours,

Mark R. Herring
Attorney General

# WARRANT OF ARREST—MISDEMEANOR (STATE)

COMMONWEALTH OF VIRGINIA    Va. Code § 19.2-71, -72

**M**

Stafford
_____
CITY OR COUNTY

[X] General District Court  [X] Criminal  [ ] Traffic
[ ] Juvenile and Domestic Relations District Court

CASE NO. **TC9-26188**

ACCUSED:
**Swart, Hamilton Hall; III**
LAST NAME, FIRST NAME, MIDDLE NAME

**Hearing Date/Time**

**1-8-10**
**1pm**

## TO ANY AUTHORIZED OFFICER:

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the charge that the Accused, within this city or county, on or about **12/04/2009**
DATE
did unlawfully in violation of Section

ADDRESS/LOCATION
Catlett, VA

To be completed upon service as Summons

Mailing address  [ ] Same as above
[ ]

**18.2-272**
_____, Code of Virginia:
drive or operate a motor vehicle in the Commonwealth during the time for which the accused was deprived of the right to do so upon conviction of a violation of §18.2-268.3 or of an offense set forth in subsection E of §18.2-270, or by §18.2-271 or §46.2-391.2.

| RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
|------|-----|------|---|---|-----|---|------|------|------|
| | | MO. | DAY | YR. | FT. | IN. | | | |
| W | M | | | 59 | 5' | 08" | 250 | GRN | BLD |

SSN

DL#
STATE
**VA**

**CLASS  1  MISDEMEANOR**

[ ] EXECUTED by arresting the Accused named above on this day:
[ ] EXECUTED by summoning the Accused named above on this day:
[ ] For legal entities other than individuals, service pursuant to Va. Code § 19.2-76.

I, the undersigned, have found probable cause to believe that the Accused committed the offense charged, based on the sworn statements of

**12-8-09 / 0328**
DATE AND TIME OF SERVICE

**TROOPER  SENTERS, D.J.   1917  VSP**
_____, Complainant.

Execution by summons [ ] permitted at officer's discretion.  [X] not permitted.

**T, Padgett**, ARRESTING OFFICER
**2719 TRKJ   089**
BADGE NO., AGENCY AND JURISDICTION

12/08/2009 02:41 AM
DATE AND TIME ISSUED

Jane E. Tomiko
[ ] CLERK  [X] MAGISTRATE  [ ] JUDGE

for **J, A, Higgs  Jr**
SHERIFF

Attorney for the Accused:

Stafford General District Court
I, the undersigned clerk or deputy clerk of the above-named court, authenticate pursuant to Va. Code § 8.01-391(C) on this date that the document to which this authentication is affixed is a true copy of a record in the above-named court, made in the performance of my official duties.

3/11/11
Date
Clerk/Deputy Clerk

RECEIVED
DEC 15 2009
STAFFORD GENERAL DISTRICT COURT

**CCRE May be Required**

Short Offense Description (not a legal definition):
**DRIVING AFTER FORFEITURE OF LICENSE**

Offense Tracking Number:
**179GM0850903653**

FOR ADMINISTRATIVE USE ONLY
Virginia Crime Code:

**DWI-5407-M1**

FORM DC-314 (MASTER, PAGE ONE OF TWO) 12/08

**STATE**
Exhibit B

JA023

A Copy Teste [signature] Clerk/Deputy Clerk

3/11/[...]

I, the undersigned clerk or deputy clerk of the above-named court, authenticate this authentication is affixed is a true copy of a record in the above-named court, made in the performance of my official duties.
pursuant to Va. Code § 8.01-391(C)
Stafford General District Court

Offense Tracking Number:                179GM0830P0[...]

**The Accused was this day:**

[ ] tried in absence   [ ✓ ] present

Custis

[ ] PROSECUTING ATTORNEY PRESENT (NAME)

Raymond P.D.

[ ] DEFENDANT'S ATTORNEY PRESENT (NAME)

[ ] NO ATTORNEY   [ ] ATTORNEY WAIVED

If convicted, no jail sentence will be imposed.

[ ] INTERPRETER PRESENT

**Plea of Accused:**

[ ] not guilty   [ ] Witnesses sworn

[ ] nolo contendere

[ ] guilty [ ✓ ] Plea voluntarily and intelligently entered
after the defendant was apprised of this right against
compulsory self-incrimination and his right to
confront the witnesses against him.

[ ✓ ] Plea and Recommendation

**And was TRIED and FOUND by me:**

[ ] not guilty   [ ✓ ] guilty as charged

[ ] guilty of

[ ] VCC

[ ] facts sufficient to find guilt but defer adjudication/
disposition to _____ DATE AND TIME
and place accused on probation, §§ 4.1-305, 18.2-57.3,
18.2-251 or 19.2-303.2.

[ ] A separate order for First Offender is attached and
incorporated in this order.

[ ] Costs imposed upon defendant.

_____ DATE                    _____ JUDGE

**And was FOUND by me to be:**

[ ] driving a commercial motor vehicle

[ ] carrying hazardous materials

[ ] I ORDER a nolle prosequi on prosecution's motion

[ ] I ORDER the charge dismissed [ ] with prejudice

[ ] conditioned upon payment of costs (accord and
satisfaction), § 19.2-151.

[ ] conditioned upon payment of costs and successful
completion of traffic school, § 16.1-69.48:1.

[ ] under §§ 4.1-305, 18.2-57.3, 18.2-251 or 19.2-303.2.

---

**I impose the following Disposition:**

[ ] FINE [ ] CIVIL PENALTY of $ _____

with $ _____ suspended

[ ] JAIL SENTENCE of _____

imposed, [ ] of which _____ suspended

mandatory minimum, with [ ] _____ continued

for a period of _____

upon being of good behavior, keeping the peace, obeying this
order and paying fines and costs.

Credit is allowed pursuant to § 53.1-187 for time spent in
confinement.

[ ] Serve jail sentence beginning _____

[ ] on weekends only

[ ] Work release [ ] authorized if eligible [ ] required

[ ] Public work force [ ] authorized [ ] not authorized

[ ] on PROBATION for _____

[ ] VASAP [ ] local community-based probation agency

[ ] DRIVER'S LICENSE suspended for _____

[ ] Restricted Driver's License per attached order

[ ] Ignition Interlock for _____

[ ] RESTITUTION of $ _____

due by _____

payable to _____

with interest thereon from _____ [ ] DATE OF LOSS OR DAMAGE [ ] TODAY'S DATE

[ ] as condition of suspended sentence

[ ] COMMUNITY SERVICE _____ hours to be completed by
_____ and supervised by _____

[ ] to be credited against fines and costs

[ ] Contact prohibited between defendant and victim/
victim's family or household members

[ ] Reimburse Commonwealth for investigatory medical fees

[ ] Pay $50 fee to the Court for Trauma Center Fund

[ ] Other: _____

[ ] Remanded for [ ] CCRE Report [ ]

[ ] Bail on Appeal $ _____

DRIVER'S LICENSE/PRIVILEGE TO DRIVE IN VIRGINIA
SUSPENDED EFFECTIVE IN 15 DAYS IF FINES, COSTS,
FORFEITURES, PENALTIES OR RESTITUTION ARE NOT
PAID.
Va. Code § 46.2-395.

1/16/10 [signature]
DATE                    JUDGE

---

| COURT/LEGAL SERVICES | | |
|---|---|---|
| **FINE** | | |
| **COSTS** | | |
| 461 FIXED MISD FEE | | |
| 462 FIXED DRUG MISD FEE | | |
| 113 WITNESS FEE | | |
| 113 IGNITION INTERLOCK | | 120 |
| 113 DUI FEE | | |
| 113 | | |
| 120 CT. APPT. ATTY | | |
| 121 TRIAL IN ABSENCE FEE | | |
| 125 WEIGHING FEE | | |
| 133 BLOOD TEST FEE | | 10 |
| 137 TIME TO PAY | | |
| 192 TRAUMA CENTER FEE | | 25 |
| 234 JAIL ADMISSION FEE | | |
| 243 LOCAL TRAINING ACADEMY FEE | | |
| 244 COURTHOUSE SECURITY FEE | | 10 |
| OTHER (SPECIFY) | | |
| **TOTAL** | $ | 165 |

[ ] Stay of the proceedings pursuant to § 16.1-131

_____ DATE                    _____ JUDGE

# WARRANT OF ARREST—MISDEMEANOR (STATE)

COMMONWEALTH OF VIRGINIA    Va. Code § 19.2-71, -72

CASE NO. ____709-24184____

ACCUSED:
Swart, Hamilton Hall, III
LAST NAME, FIRST NAME, MIDDLE NAME

_____
ADDRESS/LOCATION

CITY OR COUNTY
Stafford

☒ General District Court  ☒ Criminal  ☐ Traffic
☐ Juvenile and Domestic Relations District Court

**TO ANY AUTHORIZED OFFICER:**

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest
and bring the Accused before this Court to answer the charge that the Accused, within this city or
county, on or about __12/04/2009__    did unlawfully in violation of Section
DATE

**46.2-852**    Code of Virginia:
commit reckless driving by driving a motor vehicle on the highway recklessly or by driving at a speed or in a
manner so as to endanger the life, limb, or property of another.

Catlett, VA

To be completed upon service as Summons
Mailing address ☐ Same as above
☐

| RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
|------|-----|------|--|--|-----|--|------|------|------|
| W | M | MO | DAY | YR | FT | IN | | | |
| | | | | 59 | 5 | 08" | 250 | GRN | BLD |
| SSN | | | | | | | STATE | | |
| | | | | | | | VA | | |

**CLASS 1 MISDEMEANOR**

☐ EXECUTED by arresting the Accused named above on
this day: _____
above on this day: _____
☐ EXECUTED by summoning the Accused named
☐ For legal entities other than individuals, service
pursuant to Va. Code § 19.2-76.

12-8-09  0328
DATE AND TIME OF SERVICE

2714  ARRESTING OFFICER
BADGE NO., AGENCY AND JURISDICTION

for: _____
SHERIFF

Attorney for the Accused: _____

I, the undersigned, have found probable cause to believe that the Accused committed the offense
charged, based on the sworn statements of

**TROOPER   SENTERS, D.J.   1917 VSP**
, Complainant.

Execution by summons ☐ permitted at officer's discretion.  ☒ not permitted.

12/08/2009 02:38 AM
DATE AND TIME ISSUED

Jane E. Tomko
☐ CLERK  ☒ MAGISTRATE  ☐ JUDGE

_signature_

CCRE May be Required

I, the undersigned clerk
of the above-named court,
pursuant to Va. Code § & 01-391(C)
on this date ___ to Va. Code § & 01-391(C)
this authenticate that the document(s)
copy of a recitation is affixed to which
court, made on the above-named
of the performance of my
of responsibilities.

Stafford General District Court
_signature_ 3/11/11

Short Offense Description (not a legal definition):
RECK DR: GENERALLY, ENDANGER LIFE/LIMB/PROPERTY

Offense Tracking Number:
**179GM0850903652**

FOR ADMINISTRATIVE USE ONLY
Virginia Crime Code:

**REC-6625-M1**

Hearing Date/Time

**M**

**STATE**

FORM DC-314 MASTER, PAGE TWO OF TWO 07/08

The Accused was this day:

[ ] tried in absence    [ ] present

[ ] PROSECUTING ATTORNEY PRESENT (NAME) _____

[ ] DEFENDANT'S ATTORNEY PRESENT (NAME) _____

[ ] DEFENDANT'S ATTORNEY PRESENT (NAME) __P.D.__

[ ] NO ATTORNEY    [ ] ATTORNEY WAIVED
If convicted, no jail sentence will be imposed.

[ ] INTERPRETER PRESENT

Plea of Accused:

[ ] not guilty    [ ] Witnesses sworn
[ ] nolo contendere
[√] guilty [ ] Plea voluntarily and intelligently entered
after the defendant was apprised of his right against
compulsory self-incrimination and his right to
confront the witnesses against him.

Plea and Recommendation

Accused was TRIED and FOUND by me:
[ ] not guilty    [√] guilty as charged
[ ] guilty of
VCC _____

facts sufficient to find guilt but defer adjudication/
disposition to _____
DATE AND TIME
and place accused on probation, §§ 4.1-305, 18.2-57.3,
18.2-251 or 19.2-303.2.
[ ] A separate order for First Offender is attached and
incorporated in this order.

Costs imposed on defendant.

DATE _____    JUDGE _____

A _____ was FOUND by me to be:
[ ] driving a commercial motor vehicle
[ ] carrying hazardous materials

[ ] ORDER a nolle prosequi on prosecution's motion
[ ] ORDER the charge dismissed [ ] with prejudice
[ ] conditioned upon payment of costs (accord and
satisfaction), § 19.2-151.
[ ] conditioned upon payment of costs and successful
completion of traffic school, § 16.1-69.48:3.
[ ] under §§ 4.1-305, 18.2-57.3, 18.2-251 or 19.2-303.2.

I impose the following Disposition:

[ ] FINE [ ] CIVIL PENALTY of $ _____
with $ _____

[ ] JAIL SENTENCE of _____ suspended
imposed, [ ] of which _____ days
mandatory minimum, with __3 C/15__ suspended
for a period of __6 months__, conditioned
upon being of good behavior, keeping the peace, obeying this
order and paying fines and costs.
Credit is allowed pursuant to § 53.1-187 for time spent in
confinement.
[ ] Serve jail sentence beginning _____
[ ] on weekends only
[ ] Work release [ ] authorized if eligible [ ] required
[ ] not authorized
[ ] Public work force [ ] authorized [ ] not authorized
[ ] on PROBATION for _____
[ ] VASAP [ ] local community-based probation agency
[ ] DRIVER'S LICENSE suspended for _____
[ ] Restricted Driver's License per attached order
[ ] Ignition Interlock for _____
[ ] RESTITUTION of $ _____
due by _____
payable to _____
with interest thereon from _____
[ ] DATE OF LOSS OR DAMAGE [ ] TODAY'S DATE
[ ] COMMUNITY SERVICE _____ hours to be completed by
_____ as condition of suspended sentence
_____ and supervised by _____
[ ] to be credited against fines and costs
[ ] Contact prohibited between defendant and victim/
victim's family or household members
[ ] Reimburse Commonwealth for investigatory medical fees
[ ] Pay $50 fee to the Court for Trauma Center Fund
[ ] Other: _____

[ ] Remanded for [ ] CCRE Report [ ] _____
[ ] Bail on Appeal $ _____
DRIVER'S LICENSE/PRIVILEGE TO DRIVE IN VIRGINIA
SUSPENDED EFFECTIVE IN 15 DAYS IF FINES, COSTS,
FORFEITURES, PENALTIES OR RESTITUTION ARE NOT PAID
Va. Code § 46.2-395.

Offense Tracking Number: _____

| FINE | LOCALITY | $ |
|---|---|---|

**COSTS**

| | |
|---|---|
| 461 FIXED MISD FEE | 61 |
| 462 FIXED DRUG MISD FEE | |
| 113 WITNESS FEE | |
| 113 IGNITION INTERLOCK | |
| 113 DUI FEE | |
| 113 | |
| 113 | |
| 113 | |
| 120 CT. APPT. ATTY | 120 |
| 121 TRIAL IN ABSENCE FEE | |
| 125 WEIGHING FEE | |
| 133 BLOOD TEST FEE | |
| 137 TIME TO PAY | |
| 192 TRAUMA CENTER FEE | |
| 234 JAIL ADMISSION FEE | |
| 243 LOCAL TRAINING ACADEMY FEE | |
| 244 COURTHOUSE SECURITY FEE | 10 |
| **OTHER** (SPECIFY) | |
| **TOTAL** | $ 191 |

[ ] Stay of the proceedings pursuant to § 16.1-131.1

DATE _____    JUDGE _____

Stafford General District Court
I, the undersigned clerk or deputy clerk
of the above-named court, authenticate
pursuant to Va. Code § 8.01-391(C)
on this date that the document to which
this authentication is affixed is a true
copy of a record in the above-named
court, made in the performance of my
official duties.

3/11/11
Date

Julie Cole
Clerk/Deputy Clerk

JA026

JUN - 8 2010

VIRGINIA:
CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
A COPY OF TESTE SHARRON S. MITCHELL, CLERK
BY: _____ DC
                                    DEPUTY CLERK
DATE: _____ 6/11/10

Doc#1113667

# CONVICTION AND SENTENCING ORDER

VIRGINIA: IN THE CIRCUIT COURT OF CITY OF FREDERICKSBURG

FEDERAL INFORMATION PROCESSING
STANDARDS CODE: 630C

**Hearing Date:** April 26, 2010
**Judge:** GORDON F. WILLIS

Criminal Case No(s). CR010-24 thru 10-40
ENDED: 00005607

COMMONWEALTH OF VIRGINIA  v.  HAMILTON HALL SWART, III, Defendant

THIS DAY came the defendant, who was led before the bar of this Court in the custody of a deputy
sheriff, and appeared together with defense counsel, Shama Farooq, heretofore appointed from the Office
of the Public Defender. The Commonwealth was represented by Travis D. Bird.

The defendant stands indicted of the following offenses:

| Offense Tracking Number | Virginia Crime Code (For Administrative Use Only) | Code Section | Case Number | |
|---|---|---|---|---|
| 630GM4680904501 | DWI-5449-F6 | C.18.2-266 | CR10000024-00 | |
| Offense Date: 12/04/2009 | Description: DUI-3RD W/I 10YRS | | | Felony |
| 630GM4680904502 | REC-6624-F6 | B.46.2-817 | CR10000025-00 | |
| Offense Date: 12/04/2009 | Description: ELUDING POLICE | | | Felony |
| 630GM4680904505 | HIT-6604-F5 | C.46.2-894 | CR10000026-00 | |
| Offense Date: 12/04/2009 | Description: HIT & RUN /LAW ENF | | | Felony |
| 630GM4680904520 | MUR-0923-A1 | 18.2-31 | CR10000027-00 | |
| Offense Date: 12/04/2009 | Description: ATTPT MURDER LAW ENF | | | Felony |
| 630GM4680904516 | JUS-4832-F5 | 18.2-460 | CR10000028-00 | |
| Offense Date: 12/04/2009 | Description: OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904507 | HIT-6604-F5 | C.46.2-894 | CR10000029-00 | |
| Offense Date: 12/04/2009 | Description: HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904521 | MUR-0923-A1 | 18.2-31 | CR10000030-00 | |
| Offense Date: 12/04/2009 | Description: ATT/CAP. MURDER | | | Felony |
| 630GM4680904531 | JUS-4832-F5 | 18.2-460 | CR10000031-00 | |
| Offense Date: 12/04/2009 | Description: OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904508 | HIT-6604-F5 | C.46.2-894 | CR10000032-00 | |
| Offense Date: 12/04/2009 | Description: HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904522 | MUR-0923-A1 | 18.2-31 | CR10000033-00 | |
| Offense Date: 12/04/2009 | Description: ATTPT MURDER LAW ENF | | | Felony |
| 630GM4680904518 | JUS-4832-F5 | 18.2-460 | CR10000034-00 | |
| Offense Date: 12/04/2009 | Description: OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904527 | HIT-6604-F5 | C.46.2-894 | CR10000035-00 | |
| Offense Date: 12/04/2009 | Description: HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904519 | MUR-0923-A1 | 18.2-31 | CR10000036-00 | |
| Offense Date: 12/04/2009 | Description: ATTPT MURDER LAW ENF | | | Felony |
| 630GM4680904515 | JUS-4832-F5 | 18.2-460 | CR10000037-00 | |
| Offense Date: 12/04/2009 | Description: OBSTRUCT JUSTICE | | | Felony |

6/11/10

C. Sean
CA
RRJ
DOC~
P+P

( No guidelines)

This sentence was entered
from unaudited entry.

JA027

COMMONWEALTH OF VIRGINIA   v.   HAMILTON HALL SWART, III, Defendant

| 630GM4680904512 | DWI-5407-M1 | A.18.2-272 | CR10000039-00 | |
|---|---|---|---|---|
| **Offense Date: 12/04/2009** | Description: DRIVE AFTER SUSPENDED | | | Misdemeanor |
| 630GM4680904523 | REC-6646-M1 | C.46.2-862 | CR10000040-00 | |
| **Offense Date: 12/04/2009** | Description: RECKLESS DRIV +20MPH | | | Misdemeanor |

Thereupon the motion of the Commonwealth, the Court was moved to amend the original charges (3 counts-Attempted Murder of Law Enforcement), as contained in the indictments in Criminal Case Numbers **CR10-27**, **CR10-33**, and **CR10-36**, to the reduced class 6 felonies, **Assault and Battery of Law Enforcement** in violation of Virginia Code **§18.2-57**; which motion the Court granted without objection.

Whereupon, the defendant, was previously arraigned on **February 12, 2010**, and at that time pleaded not guilty to the indictments. Thereupon, the defendant this day, informed the Court of his desire to change his pleas in regard to Criminal Case Numbers **CR10-24**, **CR10-30**, **CR10-27**, **CR10-33** and **CR10-36** (as amended). The Court having been advised by the defendant, his counsel, and the Attorney for the Commonwealth that there is a plea agreement in regard to theses cases, which written agreement, subject to the Court's approval was presented and filed herein; upon the evidence of the Attorney for the Commonwealth, the Court accepts said agreement and the pleas of guilty of the defendant tendered in person and finds the defendant guilty of the following offense(s):

| Offense Tracking Number | Virginia Crime Code (For Administrative Use Only) | Code Section | Case Number | |
|---|---|---|---|---|
| 630GM4680904501 | DWI-5449-F6 | C.18.2-266 | CR10000024-00 | |
| **Offense Date: 12/04/2009** | Description: DUI-3RD W/I 10YRS | | | Felony |
| 630GM4680904520 | | 18.2-57 | CR10000027-00 | |
| **Offense Date: 12/04/2009** | Description: ASSAULT & BATTERY / LAW ENF | | | Felony |
| 630GM4680904521 | MUR-0923-A1 | 18.2-31 | CR10000030-00 | |
| **Offense Date: 12/04/2009** | Description: ATT/CAP. MURDER | | | Felony |
| 630GM4680904522 | | 18.2-57 | CR10000033-00 | |
| **Offense Date: 12/04/2009** | Description: ASSAULT & BATTERY / LAW ENF | | | Felony |
| 630GM4680904519 | | 18.2-57 | CR10000036-00 | |
| **Offense Date: 12/04/2009** | Description: ASSAULT & BATTERY / LAW ENF | | | Felony |

**[X]**  No presentence report was ordered.

Before pronouncing the sentence, the Court inquired if the defendant desired to make a statement and if the defendant desired to advance any reason why judgment should not be pronounced.

COMMONWEALTH OF VIRGINIA    v.   HAMILTON HALL SWART, III, Defendant

The court **SENTENCES** the defendant to:

Case No. CR10000024-00       Description: DUI-3RD W/I 10YRS

[X] Incarceration with the Virginia Department of Corrections for the term of: 5 years

[X] The court **SUSPENDS** 4 years 6 months of incarceration upon the condition(s) specified in Suspended Sentence Conditions.

The court **SENTENCES** the defendant to:

Case No. CR10000027-00       Description: ASSAULT AND BATTERY /LAW ENF

[X] Incarceration with the Virginia Department of Corrections for the term of: 5 years

[X] The court **SUSPENDS** 4 years 6 months of incarceration upon the condition(s) specified in Suspended Sentence Conditions.

The court **SENTENCES** the defendant to:

Case No. CR10000030-00       Description: ATT/CAP. MURDER

[X] Incarceration with the Virginia Department of Corrections for the term of: 50 years

[X] The court **SUSPENDS** 44 years of incarceration upon the condition(s) specified in Suspended Sentence Conditions.

The court **SENTENCES** the defendant to:

Case No. CR10000033-00       Description: ASSAULT AND BATTERY /LAW ENF

[X] Incarceration with the Virginia Department of Corrections for the term of: 5 years

[X] The court **SUSPENDS** 4 years 6 months of incarceration upon the condition(s) specified in Suspended Sentence Conditions.

The court **SENTENCES** the defendant to:

Case No. CR10000036-00       Description: ASSAULT AND BATTERY / LAW ENF

[X] Incarceration with the Virginia Department of Corrections for the term of: 5 years

[X] The court **SUSPENDS** 4 years 6 months of incarceration upon the condition(s) specified in Suspended Sentence Conditions.

**Consecutive/concurrent:**

[X] These sentences shall run consecutively with all other sentences.

**Suspended Sentence Conditions:**

    [X] **Good Behavior:**  The defendant shall be of good behavior for 20 years from the defendant's release from confinement.

JA029

COMMONWEALTH OF VIRGINIA   v.   HAMILTON HALL SWART, III, Defendant

[X] **Supervised Probation:**  The defendant is placed on probation under the supervision of a
Probation Officer to commence upon release from incarceration for an indefinite or unless sooner
released by the court or by the Probation Officer.  The defendant shall comply with all the rules
and requirements set by the Probation Officer.  Probation shall include substance abuse
counseling and/or testing as prescribed by the Probation Officer.

[X] **Restitution:**  The defendant shall pay restitution in accordance with the plans (2) submitted.

[X] **FINE:**   The defendant is ordered to pay fine(s) in the amount of $ 1,000.00

[X] **Costs:**  The defendant shall pay costs of these proceedings, including any court
appointed attorney fees if a timesheet is submitted. The court costs are due and payable
within six (6) months, unless an application for a payment schedule is transmitted to the
Clerk before October 26, 2010.

[X] The defendant shall provide a DNA sample and legible fingerprints as directed.

[X] DRIVER'S LICENSE SUSPENSION:  The defendant's license has been suspended indefinitely.

Consistent with the aforesaid plea agreement, the Court was moved to Nolle Prosequi the charges in

Criminal Case Numbers **CR10-25, CR10-26, CR10-28, CR10-29, CR10-31, CR10-32, CR10-34,**

**CR10-35, CR10-37, CR10-38, CR10-39 & CR10-40**, which motion was granted without objection.

The following charges are hereby **Nolle Prossed**:

| Offense Tracking Number | Virginia Crime Code (For Administrative Use Only) | Code Section | Case Number | |
|---|---|---|---|---|
| 630GM4680904502 | REC-6624-F6 | B.46.2-817 | CR10000025-00 | |
| Offense Date: 12/04/2009 | Description:  ELUDING POLICE | | | Felony |
| 630GM4680904505 | HIT-6604-F5 | C.46.2-894 | CR10000026-00 | |
| Offense Date: 12/04/2009 | Description:  HIT & RUN /LAW ENF | | | Felony |
| 630GM4680904516 | JUS-4832-F5 | 18.2-460 | CR10000028-00 | |
| Offense Date: 12/04/2009 | Description:  OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904507 | HIT-6604-F5 | C.46.2-894 | CR10000029-00 | |
| Offense Date: 12/04/2009 | Description:  HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904517 | JUS-4832-F5 | 18.2-460 | CR10000031-00 | |
| Offense Date: 12/04/2009 | Description:  OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904508 | HIT-6604-F5 | C.46.2-894 | CR10000032-00 | |
| Offense Date: 12/04/2009 | Description:  HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904518 | JUS-4832-F5 | 18.2-460 | CR10000034-00 | |
| Offense Date: 12/04/2009 | Description:  OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904527 | HIT-6604-F5 | C.46.2-894 | CR10000035-00 | |
| Offense Date: 12/04/2009 | Description:  HIT & RUN/LAW ENF | | | Felony |
| 630GM4680904515 | JUS-4832-F5 | 18.2-460 | CR10000037-00 | |
| Offense Date: 12/04/2009 | Description:  OBSTRUCT JUSTICE | | | Felony |
| 630GM4680904503 | HIT-6610-M1 | C.46.2-896 | CR10000038-00 | |
| Offense Date: 12/04/2009 | Description:  HIT & RUN | | | Misdemeanor |
| 630GM4680904512 | DWI-5407-M1 | A.18.2-272 | CR10000039-00 | |
| Offense Date: 12/04/2009 | Description:  DRIVE AFTER SUSPENDED | | | Misdemeanor |
| 630GM4680904523 | REC-6646-M1 | C.46.2-862 | CR10000040-00 | |
| Offense Date: 12/04/2009 | Description:  RECKLESS DRIV +20MPH | | | Misdemeanor |

JUN - 8 2010

COMMONWEALTH OF VIRGINIA    v.    HAMILTON HALL SWART, III, Defendant

[**X**] The defendant was remanded to the custody of the sheriff.

The defendant shall be given credit for time spent in confinement while awaiting trial pursuant to Virginia Code § 53.1-187.

**DEFENDANT IDENTIFICATION:**

Name: HAMILTON HALL SWART, III

SSN : █████    DOB: █████59    Sex: M

**SENTENCE SUMMARY:**

CR10-24 Five (5) years, <u>with</u> Four (4) years and Six (6) months <u>suspended</u>
CR10-30 Fifty (50) years, <u>with</u> Forty-four (44) years <u>suspended</u>
CR10-27 Five (5) years, <u>with</u> Four (4) years and Six (6) months <u>suspended</u>
CR10-33 Five (5) years, <u>with</u> Four (4) years and Six (6) months <u>suspended</u>
CR10-36 Five (5) years, <u>with</u> Four (4) years and Six (6) months <u>suspended</u>

**TOTAL ACTIVE SENTENCE IMPOSED:**

**CR10-24 Six (6) months**
**CR10-30 Six (6) years**
**CR10-27 Six (6) months**
**CR10-33 Six (6) months**
**CR10-36 Six (6) months**

**TOTAL SENTENCE SUSPENDED:**

CR10-24 Four (4) years and Six (6) months
CR10-30 Forty-four (44) years
CR10-27 Four (4) years and Six (6) months
CR10-33 Four (4) years and Six (6) months
CR10-36 Four (4) years and Six (6) months

ENTERED this ____8____ day of June, 2010.

_____, JUDGE
GORDON F. WILLIS

JA031

VIRGINIA:  IN THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY

FEDERAL INFORMATION PROCESSING
STANDARDS CODE: 153

Hearing Date:  September 10, 2010
Judge:  Craig D. Johnston

Commonwealth of Virginia

v.

HAMILTON HALL SWART, III,
Defendant

## REVOCATION OF PROBATION ORDER

The cases came on for a hearing to show cause why the
defendant's probation and suspended sentence should not be revoked.
After due notice to the defendant, the defendant appeared before the
Court together with counsel, Robert Faust. The Attorney for the
Commonwealth was present.

The defendant stands charged with the following offenses:

| CASE NUMBER | OFFENSE DESCRIPTION AND INDICATOR (F/M) | OFFENSE DATE | CODE SECTION |
|---|---|---|---|
| CR05058753-01 | VIOLATION OF PROBATION- HIT AND RUN (F) | 05/13/2010 | 19.2-306 |
| CR05058754-01 | VIOLATION OF PROBATION- ATTEMPTED GRAND LARCENY (F) | 05/13/2010 | 19.2-306 |
| CR05058755-01 | VIOLATION OF PROBATION- ASSAULT AND BATTERY (M) | 05/13/2010 | 19.2-306 |
| CR05058756-01 | VIOLATION OF PROBATION-ASSAULT A POLICE OFFICER (F) | 05/13/2010 | 19.2-306 |

**Previous Sentence.**  In CR05058753-00, the Court previously
sentenced the defendant to incarceration with the Department of
Corrections for a term of five (5) years, the execution of five (5)
years of the sentence was suspended, and upon the defendant's release
from incarceration, the defendant was placed on probation under the
supervision of a Probation Officer for a term of five (5) years,
subject to certain conditions of probation as stated in the
sentencing order.

In CR05058754-00, the Court previously sentenced the defendant
to incarceration with the Department of Corrections for a term of
five (5) years, the execution of five (5) years of the sentence was
suspended, and upon the defendant's release from incarceration, the
defendant was placed on probation under the supervision of a
Probation Officer for a term of five (5) years, subject to certain
conditions of probation as stated in the sentencing order.

HAMILTON HALL SWART, III
September 10, 2010
CR05058753-01: CR05058754-01:
CR05058755-01: CR05058756-01
PAGE 2

In CR05058755-00, the Court previously sentenced the defendant to incarceration with the Department of Corrections for a term of twelve (12) months, the execution of twelve (12) months of the sentence was suspended, and upon the defendant's release from incarceration, the defendant was placed on probation under the supervision of a Probation Officer for a term of five (5) years, subject to certain conditions of probation as stated in the sentencing order.

In CR05058756-00, the Court previously sentenced the defendant to incarceration with the Department of Corrections for a term of five (5) years, the execution of three (3) years, nine (9) months of the sentence was suspended, and upon the defendant's release from incarceration, the defendant was placed on probation under the supervision of a Probation Officer for a term of five (5) years, subject to certain conditions of probation as stated in the sentencing order.

**Evidence By Probation Officer.**  The defendant was given the right to cross-examine the Probation Officer and to present any additional facts bearing on the matter.

**Stipulation By Defendant.**  The defendant stipulated and conceded to the violation(s) of the terms and conditions of supervised probation.

**Sentencing Revocation Report.**  The sentencing revocation report and final disposition worksheet was considered and is ordered filed as a part of the record in accordance with the provisions of Sections 19.2-298.01 and 19.2-299 of the Code of Virginia.

**Finding Of Violation.**  Having taken into consideration the evidence and the argument of counsel, the Court finds the defendant is in violation of the terms and conditions of probation.

**Revocation Of Suspended Sentence - Incarceration.**  The Court hereby orders the following:

**CR05058753-01 – five (5) years imposed of the previously suspended sentence of five (5) years**
**CR05058754-01 – two (2) years imposed of the previously suspended sentence of five (5) years**
**CR05058755-01 – no action taken of the previously suspended sentence of twelve (12) months**

HAMILTON HALL SWART, III
September 10, 2010
CR05058753-01: CR05058754-01:
CR05058755-01: CR05058756-01
PAGE 3

**CR05058756-01 - no action taken of the previously suspended sentence of three (3) years, nine (9) months**

**for a total sentence of seven (7) years.**

The sentences shall run consecutively with each other and all sentences run consecutively to all other sentences.

**Court Costs.**  It is further ordered as special condition of the defendant's supervised probation that the defendant pay the court costs in accordance with a payment plan to be established by the Probation Office which plan must result in any fines and/or court costs being fully paid during the probationary period.

**Judgment For Court Costs.**  The Court orders the Clerk of this Court to docket a judgment against the defendant for the court costs.

**Attorney Certification.**  The Court certifies that at all times during the trial of the cases the defendant was personally present as was defense counsel who capably represented the defendant.

**Credit for Time Served.**  The defendant shall be given credit for time spent in confinement pursuant to Section 53.1-187 of the Code of Virginia.

And the defendant is remanded to jail.

ENTERED:  9/27/10

CRAIG D. JOHNSTON, JUDGE

**DEFENDANT IDENTIFICATION:**
SSN: ████████    DOB: ████/1959    Sex: M

**SENTENCING SUMMARY:**
TOTAL SENTENCE IMPOSED: SEVEN (7) YEARS
TOTAL SENTENCE REMAINING SUSPENDED: THREE (3) YEARS, TWELVE (12) MONTHS

**FOR ADMINISTRATIVE USE ONLY:**
Virginia Crime Code: PRB-4850-F9

A COPY TESTE:
CLERK CIRCUIT COURT
BY: E R Nolen
DEPUTY CLERK

**Virginia Department of Corrections**

**OSC-106**                                              **Sentence Summary**

| | | | | | |
|---|---|---|---|---|---|
| **DOC #:** 1199638 | **Offender:** | Dasilva, Richard Earl | | **Print Date:** | 12/12/2023 |
| **Status:** Active | **Location:** | Greensville Correctional Center | | **Page:** | 1 of 1 |

| | | | | |
|---|---|---|---|---|
| **Current Class Level:** 1 | | | **CRD:** 09/21/2007 | |
| | | | **Parole Rev. Date:** | |
| **Total Sentence:** | 20 **Years** | 0 **Months** | 0 **Days** | **Parole Violations:** 0 |

**Date of Judgment**          **Sentence Description**

06/28/2007          Prince William Circuit - Docket: CR66080
Offense: (Attempted)Agg Murder: Law Enforcement Officer{MUR-0923-A1}{18.2-31(6)}
Offense Date: 09/14/2006
Good Time System: Earned Sentence Credit-2
Consecutive; Partially Suspended
Imposed: 30 Years 0 Months 0 Days
Suspended: 10 Years 0 Months 0 Days
Net: 20 Years 0 Months 0 Days
Memo: Attempted Capital Murder

Exhibit C

JA035

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

HAMILTON HALL SWART, III,
RICHARD EARL DASILVA,
     Plaintiffs,

        v.                                          Civil No. 3:23cv753 (DJN)

JASON MIYARES,
HAROLD W. CLARKE,
     Defendants.

## MEMORANDUM ORDER
### (Granting Defendants' Motion to Dismiss)

      This matter comes before the Court on Attorney General Jason Miyares ("Attorney General Miyares") and Harold Clarke's ("Director Clarke") (collectively, "Defendants") Motion to Dismiss, (ECF No. 10).  Defendant Miyares serves as the Attorney General for the Commonwealth of Virginia, having been elected in 2022, after serving as a delegate in the Virginia House of Delegates.  Director Clarke served as the Director of the Department of Corrections for the Commonwealth of Virginia during the events at issue in this litigation. Hamilton Hall Swart, III, and Richard Earl DaSilva ("Plaintiffs") are suing Defendants under 42 U.S.C. § 1983, because Defendants allegedly infringed upon Plaintiffs' constitutional rights by impermissibly imprisoning them when they should have been released after the Virginia legislature passed a law expanding sentence reduction credits for good behavior.  For the reasons stated herein, the Court hereby GRANTS Defendants' Motion to Dismiss, (ECF No. 10).

## I.   BACKGROUND

The foundation for this case was laid when the legislature for the Virginia Commonwealth passed House Bill 5148 in 2020.  This bill increased the amount of credit that eligible inmates receive when they maintain good behavior while imprisoned.  When House Bill 5148 was passed, Attorney General Miyares served as delegate in the Virginia House of Delegates, where he voted against the bill.  (Compl. ¶ 16.)  The bill increased the rate at which inmates received credit for good behavior from 4.5 days for every 30 days of good behavior to 15 days for every 30 days day of good behavior.  (*Id.* ¶ 7.)  However, certain inmates were excluded from being able to take advantage of this change in law.  Inmates serving time for more serious crimes, like aggravated murder or capital murder,[1] would continue to receive only 4.5 days of reduction for every 30 days of good behavior.  (*Id.* ¶ 7–9.)  This increase in credit for good behavior would become effective on July 1, 2022, and would also be applied retroactively.  (*Id.* ¶ 7.)  The retroactive effect meant that Plaintiffs, provided that they were not excluded from House Bill 5148's class of eligible inmates, would be entitled to release on July 1, 2022.  (*Id.* ¶ 7.)

Whether Plaintiffs, who were serving sentences for attempted murder, were within the scope of House Bill 5148 forms the crux of this suit.  The plain text of House Bill 5148 exempts inmates convicted for *solicitation* to commit murder and *completed* murder from being able to benefit from the increase in sentence reduction credits, but the text makes no mention of inmates convicted of *attempted* murder.  Va. Code § 53.1–202.3(A).  In December of 2021, Director Clarke, who was then-head of the Virginia Department of Corrections, requested that then-Attorney General Herring issue an advisory opinion on whether only those crimes specifically

---

[1]      House Bill 5148 lists 25 offenses that are excluded from the increase in sentence reductions for good behavior.

2

excluded from House Bill 5148 constituted the class of inmates ineligible to benefit from the bill's increase in sentence reduction credits. (ECF No. 12–1.) The Attorney General for the Commonwealth of Virginia is required by statute to issue advisory opinions on legal questions when asked to by certain officials, like then-Director Clarke. Va. Code § 2.2-505. Then-Attorney General Herring's interpretation of House Bill 5148 confirmed that those convicted of *attempted* murder, like Plaintiffs, indeed benefited from the increase in sentence reduction credits, and only those convicted of crimes specifically enumerated were ineligible to benefit from the bill. (*Id.*)

Consequently, Plaintiffs were notified that, because they were eligible to benefit from House Bill 5148 and given its retroactive effect, that they would be released around July of 2022, the date that the bill would go into effect. (Compl. ¶ 14.) However, Attorney General Miyares assumed office in early 2022 and, on April 13, 2022, issued his own advisory opinion of House Bill 5148, which directly contradicted the one set forth by then-Attorney General Herring. (*Id.* ¶ 17.) It remains unclear whether Attorney General Miyares was in fact formally requested to issue another advisory opinion by then-Director Clarke. Plaintiffs note that Defendants have not supplied or otherwise referenced a request from then-Director Clarke, or another state official that could trigger Attorney General Miyares' duty to issue an advisory opinion, and Defendants do not rebut this allegation. (ECF No. 12 at 17 n.12.)

Attorney General Miyares' advisory opinion, which set forth a new interpretation of which inmates stood to benefit from House Bill 5148, concluded that those convicted of *attempted* murder, like Plaintiffs, were excluded from the class of inmates able to benefit from the sentence reduction credits. (ECF No. 11-1 at 3.) Attorney General Miyares, interpreting House Bill 5148, remarked that if the "subdivision [excluding certain inmates from the bill's

3

benefits referred] to only the completed crime [it would] lead to the irrational conclusion that the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits — yet leave convictions for conspiracies or *actual attempts* to commit murder eligible for enhanced sentence credits." (*Id.*) Accordingly, Attorney General Miyares advised then-Director Clarke that inmates convicted of attempted murder, like Plaintiffs, were unable to benefit from House Bill 5148's expansion of sentence reduction credits. Attorney General Miyares' opinion made no mention of then-Attorney General Herring's contradictory opinion issued four months earlier.

Because this new interpretation was issued before House Bill 5148 went into effect in July of 2022, it constituted the interpretation followed by then-Director Clarke. (Compl. ¶ 18.) Thus, all inmates were beholden to this new interpretation and could not benefit from the interpretation of then-Attorney General Herring. Under this new interpretation, inmates like Plaintiffs — convicted of attempted murder — would be ineligible to benefit from House Bill 5148. Ultimately, the statute's interpretation reached the Virginia Supreme Court through habeas proceedings brought by an inmate not party to this litigation.

The Virginia Supreme Court unanimously rejected Attorney General Miyares' interpretation in July of 2023. *Prease v. Clarke*, 888 S.E.2d 758 (Va. 2023). There, the Virginia Supreme Court held that "there is no basis in the governing statutes for denying [a prisoner] expanded good time credits on his attempted aggravated murder convictions." *Id.* at 762. Accordingly, the Virginia Supreme Court's opinion triggered Plaintiffs' release from prison, as they would have been released a year prior under the Virginia Supreme Court's interpretation of House Bill 5148. Thus, Plaintiffs experienced an excess amount of imprisonment of one year.

4

(Compl. ¶ 18.) This period of excess imprisonment and the sequence of events leading to it form the heart of the damages claims brought by Plaintiffs in their case.

Plaintiffs sued Defendants in only their individual capacity on November 8, 2023, bringing three claims under 42 U.S.C. § 1983.[2] Plaintiffs assert their first cause of action under the Eighth Amendment, contending that Defendants were deliberately indifferent to the plight faced by Plaintiffs and that the excess year of incarceration was penologically unjustifiable, because Plaintiffs had a vested, enforceable liberty interest in a July of 2022 release. (*Id.* ¶ 31–37.) Second, Plaintiffs bring a substantive due process claim under the Fourteenth Amendment, asserting that Defendants' conduct amounts to intentional incarceration beyond the date which they were to be released, in violation of their constitutional rights. (*Id.* ¶ 38–40.) Third, Plaintiffs put forward a procedural due process claim. (*Id.* ¶ 41–43.) There, Plaintiffs contend that Defendants violated their procedural due process rights, because Plaintiffs possessed a vested, enforceable liberty interest and Defendants deprived them of that interest in a manner that fails to comport with the strictures of the Fourteenth Amendment's guarantee of procedural due process. For these constitutional violations, Plaintiffs request compensatory damages, attorneys' fees and any other relief deemed just and reasonable. (*Id.* at 7.)

On December 12, 2023, Defendants filed a Motion to Dismiss, (ECF No. 10), asserting three defenses. First, Defendants argue that Attorney General Miyares stands protected by absolute immunity for any damages experienced by Plaintiffs that stem from issuing his advisory opinion. (*Id.* at 7.) In the alternative, Defendants argue that each of Plaintiffs' claims lack legal merit. (*Id.* at 7–20.) And lastly, even if Defendants violated Plaintiffs' constitutional rights, Defendants argue that the case should be dismissed, as both Defendants are protected by

---

[2]    Plaintiffs note in their Brief in Opposition that their Amendment Complaint is against Defendants in only their individual capacity. (ECF No. 12 at 3 n.4.)

qualified immunity. (*Id.* at 20.) Defendants do not argue that Director Clarke is entitled to absolute immunity. Plaintiffs filed their response on December 27, 2023, (ECF No. 12), and Defendants filed their reply on January 2, 2024, (ECF No. 13). The Court now addresses these arguments, which stand ripe for review, in *seriatim*.

## II.   STANDARD OF REVIEW

At this stage, the Court accepts as true the facts set forth in the Complaint, (ECF No. 1). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the Court views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Although the law does not require "detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the claim "plausible on its face" rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this juncture, Fed. R. Civ. P. 8 requires only that plaintiffs proffer a short and plain statement showing that they are entitled to relief.

## III.   DISCUSSION

The Court first addresses whether Attorney General Miyares is protected from monetary damages by absolute immunity. The Court will then analyze the merits of the constitutional claims proffered by Plaintiffs — the Eighth Amendment claim, the procedural due process claim and the substantive due process claim — and whether qualified immunity insulates Defendants from damages under 42 U.S.C § 1983. (ECF No. 12 at 3.) The claims are brought against Defendants in their individual capacity only. (*Id.* at 3 n.4.)

### A. Absolute Immunity

Attorney General Miyares argues that his rendering of an advisory opinion of House Bill 5148, which led to the harms suffered by Plaintiffs, constitutes a quasi-judicial act that renders

6

him protected by absolute immunity. (ECF No. 11 at 7.) Here, Attorney General Miyares bears the burden of establishing his entitlement to absolute immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432–33 (1993); *Malley v. Briggs*, 475 U.S. 335, 340 (1986). The presumption, especially for state executive officials, is that only qualified immunity applies. *Hafer v. Melo*, 502 U.S. 21, 29 (1991); *see also Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980) (stating that "officials in the judicial and legislative branches have personal absolute immunity while individuals acting as executives are entitled to only qualified immunity"). To show that he is entitled to absolute immunity, Attorney General Miyares must demonstrate that the instant conduct — that is, rendering an advisory opinion on the interpretation of a statute — qualifies as the type of conduct that Congress intended to immunize when it passed the 1871 Civil Rights Act, as the codification of the right to sue state officials under 42 U.S.C. § 1983 for constitutional rights violations also implicitly codified the common law defenses to those actions that existed at the statute's passage. *Forrester v. White*, 484 U.S. 219, 229 (1988). This is why some activities undertaken by actors not traditionally protected by absolute immunity, like Attorney General Miyares, may nevertheless be protected by absolute immunity, as "it [is] the nature of the function performed, not the identity of the actor who performed it, that inform[s] [the] immunity analysis." *Id.*

In assessing the absolute immunity issue presented here, the Court must determine whether Attorney General Miyares, who is not a judge, performed a function analogous to those for which judges would be absolutely immune. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (describing the functional analysis). Alternatively, Attorney General Miyares may prove that he is absolutely immune by providing historical or common law support for extending absolute immunity when an Attorney General engages in conduct sufficiently analogous to the

7

conduct underlying Plaintiffs' claims. *Burns v. Reed*, 500 U.S. 478, 479 (1991) (noting that historical or common law support could support extending absolute immunity).

The Court begins by reviewing the functional analysis, which was detailed by the Supreme Court in *Butz v. Economou*, 438 U.S. 478, 512 (1978). There, the Supreme Court found that federal administrative judges were entitled to absolute immunity, because they shared many characteristics with ordinary judges. *Id.* at 512. For example, federal administrative law judges render their opinions only after a hearing "every bit as fractious as those which come to court." *Id.* at 513. "Moreover, federal administrative law . . . contain[s] many of the same safeguards as are available in the judicial process." *Id.* Such safeguards, for instance, include being heard before an arbiter free from political influence, being permitted to present one's case by oral or documentary evidence, the ability to directly appeal the quasi-judicial officer's decision, and that the quasi-judicial officer's decisions are cabined by precedent. *Id.* at 512–513.

The Fourth Circuit has likewise articulated the rationale underlying extending absolute immunity to quasi-judicial acts. In *McCray*, the Fourth Circuit outlined two such rationales, but only one is relevant to Attorney General Miyares.[3] *McCray v. State of Md.*, 456 F.2d 1, 3 (4th Cir. 1972). The relevant rationale holds that absolute immunity for quasi-judicial officers stems from the fact "that they exercise a discretion similar to that exercised by state judges." *Id.*; *see Harbeck v. Smith*, 814 F. Supp.2d 608, 629 (E.D. Va. 2011) (relying on *McCray*). More recent opinions by the Fourth Circuit have relied on opinions from the First and Fifth Circuits to determine when an official's acts are sufficiently similar to those exercised by judges, and therefore entitled to absolute immunity. *See Ostrzenski v. Siegel*, 177 F.3d 245, 249 (4th Cir. 1999) (citing to *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1997) and

---

[3]     The second rationale applies when public officers act in obedience to a judicial order or under the court's direction. *McCray*, 456 F.2d at 5.

8

*Bettencourt v. Bd. of Registration In Med. of Com. of Mass.*, 904 F.2d 772 (1st Cir. 1990) as examples of the analysis required by *Butz*). In *O'Neal*, the Fifth Circuit spelled out six factors to inform when an act was quasi-judicial and therefore protected by absolute immunity. It considered (1) the need to perform the official function without harassment or intimidation, (2) "the presence of safeguards that reduce the need for private damages, (3) insulation from political influence, (4) the importance of precedence, (5) the adversary nature of the process and (6) the correctability of error on appeal." 113 F.3d at 65; *accord Bettencourt*, 904 F.2d at 782. These factors resemble those set forth by the Supreme Court in *Butz* and thus form the heart of the inquiry into determining whether Attorney General Miyares' rendition of an advisory opinion constitutes the type of quasi-judicial function protected by absolute immunity.

Attorney General Miyares does not fulsomely engage with any relevant Fourth Circuit or Supreme Court precedent on the issue, instead relying solely on one Sixth Circuit opinion from 1983, *Campbell v. Patterson*, 724 F.2d 41 (6th Cir. 1983). There, the Sixth Circuit reviewed a Michigan statute that constitutes a near twin to the Virginia statute at issue here. The Michigan statute obligated the Attorney General "to render opinions interpreting law at the request of state agencies or officials." *Campbell*, 724 F.2d at 43. Such opinions bound the requesting agency to the Attorney General's interpretation. *Id.* Here, the statute is substantially identical, as Va. Code § 2.2-505 obligates that Virginia's Attorney General "shall give his advice and render official advisor opinions in writing" when requested to do so by certain enumerated officials, although the Attorney General's advisory opinions are nonbinding. Attorney General Miyares contends that this Court should follow the Sixth Circuit and find that such obligatory actions are quasi-judicial and are therefore protected by absolute immunity. (ECF No. 11 at 7–8.)

9

However, competing case law that is both more recent and more engaged with the question of extending absolute immunity to mandatory actions taken by attorneys general exists. Attorney General Miyares, who has the burden of proving that he is absolutely immune, fails to engage with this case law. In *Freeman v. Florida Deptartment of Corrections*, 1999 WL 447093 (N.D. Fl. June 18, 1999), the Northern District of Florida addressed a Florida statute that, like the Virginia and Michigan statutes, obligated Florida's Attorney General to render an official opinion when certain enumerated officials requested one. *Id.* at *4. After analyzing the factors set forth in *Butz*, the court recognized that the Attorney General had not "demonstrated that the rendition of such opinions is quasi-judicial as understood by Supreme Court precedent." *Id.* at *6. Accordingly, the Northern District of Florida declined to extend absolute immunity to Florida's Attorney General.

These cases, however, are merely persuasive — not binding — upon this Court. As such, the Court now considers the factors set forth by the Supreme Court in *Butz*, which detail the circumstances when quasi-judicial absolute immunity applies. *Ostrzenski*, 177 F.3d at 249. Attorney General Miyares' position falls short, as he does not analyze those factors. Even if he did, the Court — taking the facts set forth in the complaint as true and in the light most favorable to the non-moving party — would find that the *Butz* factors favor Plaintiffs.

Some factors weigh in favor of extending absolute immunity to Attorney General Miyares' obligation to render advisory opinions. The Court finds that the need to protect Virginia's Attorney General from harassment in undertaking the office's statutory obligations to be significant. A second factor that weighs in favor of granting absolute immunity includes circumstances where errors made by the Attorney General in rendering these opinions may

10

JA045

ultimately be correctable on appeal.[4]  Even that factor, though, does not receive much weight, because the only reason that Attorney General Miyares' opinion was correctible on appeal is because it implicated prisoners, for whom habeas relief is available.  Va. Code. § 2.2-505's text provides no avenue to appeal the Attorney General's opinion.  Given the advisory opinion's nonbinding nature, habeas constitutes the only vehicle by which such opinions could be subject to judicial review, which means that the advisory opinions are similar to opinions issued by ordinary judges in only a narrow set of circumstances.

Every other *Butz* factor weighs against extending absolute immunity.  First, there exist no safeguards to cabin the Attorney General's discretion or to protect those to whom an advisory opinion is adverse, cutting strongly against absolute immunity.  *See Goldstein v. Moatz*, 364 F.3d 205, 217 (4th Cir. 2004) ("The importance of denying absolute immunity to the Defendants in this proceeding is underscored by the utter lack of procedural safeguards protecting [the injured party's] rights.").  Moreover, Attorney General Miyares — a political officer — is functionally different in kind from judges, who are either completely or partially insulated from political influence, constituting another mark against applying absolute immunity here.  *See O'Neal*, 113 F.3d at 66 (noting that being subject to political influence weighs against applying absolute immunity); *Bettencourt*, 904 F.2d at 783 (same).  Neither is the Virginia Attorney General bound by precedent when issuing advisory opinions, evinced by Attorney General Miyares' reversal of then-Attorney General Herring's opinion issued only four months prior without so much as

---

[4]     The Virginia Supreme Court eventually rejected Attorney General Miyares' interpretation and adopted the previous interpretation adopted by then-Attorney General Herring in *Prease v. Clarke*, 888 S.E.2d 758 (Va. 2023).

11

JA046

recognizing the inconsistencies between the dueling interpretations.[5]  Nor does an adversary

process exist with respect to the advisory opinions:  there is no briefing or argumentation, only

the proclamation of the Attorney General, cutting further against applying absolute immunity.

*Cf. Butz*, 438 U.S. at 512 (extending absolute immunity, in part, because the hearings were

"every bit as fractious as those which come to court"); *Roe v. Doe*, 295 F. Supp. 3d 664, 674

(E.D. Va. 2018) (finding that it was "inappropriate to extend absolute immunity" when a

proceeding in "no way provided due process or approximated a judicial proceeding").

Accordingly, pursuant to the analysis set forth in *Butz* and adopted by the Fourth Circuit

in *Ostrzenski*, the Court finds that Attorney General Miyares' rendering of an advisory opinion is

not protected by absolute immunity, as it does not constitute a functionally judicial act typically

afforded absolute immunity. *Burns*, 500 U.S. at 479.  At this juncture, the Court also notes that

Attorney General Miyares' position would be strengthened if evidence existed that his co-

Defendant and then-head of the Virginia Department of Corrections, Harold Clarke, in fact

requested an advisory opinion.  Defendant does not argue that a request existed, despite Plaintiffs

noting the lack of documentation in their briefing.  (ECF No. 12 at 17 n.12.)  Thus, taking the

facts in the light most favorable to Plaintiffs and accepting the facts set forth in the complaint as

true, it is conceivable that Attorney General Miyares' statutory obligation to issue an advisory

opinion was never triggered, further justifying the Court's finding that Attorney General Miyares

was not functioning in a quasi-judicial capacity when he rendered his interpretation of House Bill

5148 and therefore stands unprotected by absolute immunity.

The Court now moves to reviewing whether attorneys general were absolutely immune at

common law from damages stemming from conduct sufficiently analogous to the rendition of an

---

[5]      Attorney General Miyares' advisory opinion did not acknowledge or analyze the
contradictory opinion issued by then-Attorney General Herring four months earlier.

advisory opinion. Here, Attorney General Miyares offers three cases in support of absolute immunity. (ECF No. 13 at 3.) All three, however, are inapposite. While the Attorney General's first case, *Messina v. Burden*,[6] does note that "high level governmental officials have generally been accorded absolute immunity," *id.* at 309, that point addresses sovereign rather than absolute immunity, which is not at issue here given that Plaintiffs are bringing only personal capacity suits. The secondary source that the court in *Messina* relies on for this claim, too, further describes that such executive officials are only afforded absolute immunity when their acts are sufficiently judicial in nature. W. Prosser, Handbook of the Law of Torts § 132 at 1057 (5th ed. 1984). That source, one of unrivaled scholarly prowess, notes further that "judicial immunity is not granted wholesale to officials of the executive departments, who normally enjoy only a qualified immunity if any at all." *Id.* The second case, *James v. Jane*,[7] also relates to the breadth of sovereign rather than absolute immunity and "the only issue" decided by that court was whether a physician employed by an agency of the Virginia Commonwealth should be immune from negligence. *Id.* at 55. Suffice to say, that holding provides no common law support for extending absolute immunity to this case's facts. The third case, *In re Scott*,[8] provides no additional analysis, as it merely relies on the other two cases cited above. In sum, these three cases do not satisfy Attorney General Miyares' burden to prove that Virginia's Attorney General qualified as immune from suit at common law for damages stemming from issuing advisory opinions or for damages stemming from analogous conduct.

---

[6]    *Messina v. Burden*, 228 Va. 301, 309 (1984).

[7]    *James v. Jane*, 221 Va. 43, 55 (1980).

[8]    *In re Scott*, 79 Va. Cir. 299, 299 (Norfolk Cnty. Cir. Ct. Sept. 18, 2009).

13

The Court thus concludes that Defendant Miyares has failed to carry his burden in establishing that absolute immunity insulates him from damages stemming from issuing advisory opinions. First, competing case law that is both more recent and more engaged with the question presented here exists and Attorney General Miyares has provided the Court with no argument as to why other persuasive case law should not be adopted. Second, Attorney General Miyares does not analyze the functional factors set forth in *Butz* and its progeny, which dictate when an act is sufficiently judicial in nature to be protected by absolute immunity. Notwithstanding that lack of analysis, the Court does not find that the factors militate in favor of extending absolute immunity. Lastly, the common law support offered by Attorney General Miyares falls short, as it is inapposite to the question here — whether the rendition of an advisory opinion or similar conduct was protected by absolute immunity at common law. *See Burns*, 500 U.S. at 479 (refusing to apply absolute immunity, because neither the party requesting immunity "nor the court below has identified any historical or common-law support for such an extension").

**B. Qualified Immunity**

The Court now turns to addressing whether the constitutional claims forwarded by Plaintiffs overcome the defense of qualified immunity, which applies to both Defendants. Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021). In doing so, it "'gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 429 (4th Cir. 2020) (quoting *Stanton v. Sims*, 571

14

JA049

U.S. 3, 5 (2013)). As with absolute immunity, "[t]he burden of establishing a qualified immunity defense rests on the official asserting the defense." *Wingate*, 987 F.3d at 311.

The Supreme Court has determined that state actors are protected by qualified immunity "unless (1) [the government actor] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Determining which prong of the qualified immunity analysis to first review rests within the Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To determine whether a right is clearly established, a court must:

> first look to cases from the Supreme Court, this Court, or the highest court of the state in which the action arose. In the absence of directly on-point, binding authority, courts may also consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. The Supreme Court has ruled against defining a right at too high a level of generality and held that doing so fails to provide fair warning to officers that their conduct is unlawful outside an obvious case.

*Ray v. Roane*, 948 F.2d 222, 229 (4th Cir. 2020). Thus, there must be a high degree of specificity between the on-point sources that show a right is clearly established and the conduct under review. *Marshall v. Marshall*, 523 F.Supp.3d 802, 821 (E.D. Va. 2021). "If the law did not put the officer on notice that his conduct would be clearly unlawful . . . qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

### 1. The Eighth Amendment Claim

The Court begins with Plaintiffs' Eighth Amendment claim. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" and guards against punishment "totally without penological justification."[9] *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Here, Plaintiffs argue that the 12-month period of incarceration between when they would have been

---

[9]     In full, the Eighth Amendment reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

15

JA050

released absent Attorney General Miyares' advisory opinion, and when they were in fact released, constitutes a punishment totally without penological justification in violation of the Eighth Amendment, especially given that the Virginia Supreme Court determined that the Attorney General's interpretation of the statute was erroneous. (ECF No. 12 at 8.) The Court finds, however, that Attorney General Miyares' opinion did not inflict a harm of constitutional magnitude cognizable under the Eighth Amendment and therefore stands protected by qualified immunity, as does Director Clarke.

For a punishment to be so cruel and unusual as to violate the Eighth Amendment, Plaintiffs' claimed deprivation must satisfy both "objective" and "subjective" requirements. *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Here, the freedom lost by Plaintiffs between July 2022 and July 2023 constitutes the claimed deprivation. As a preliminary matter, as Defendants note, (ECF No. 11 at 21), it remains unclear whether periods of prolonged detention represent harms cognizable under the Eighth Amendment; other circuits — and the Supreme Court — have recognized the right to be free from continued detention flow instead from the Fourteenth Amendment. *Campbell v. Florian*, 972 F.3d 385, 394 (4th Cir. 2020). However, given that the Fourth Circuit recently fully considered whether excess detention violated the Eighth Amendment in circumstances like those here, this Court too considers whether Plaintiffs make a valid claim under the Eighth Amendment. *See Florian*, 972 F.3d at 394–97 (conducting fulsome Eighth Amendment analysis on similar facts).

The Court assumes, as the Fourth Circuit did in *Florian*, that substantial periods of prolonged incarceration satisfy the Eighth Amendment's objective component. *Florian*, 972 F.3d at 394. However, the Court determines that Plaintiffs' Eighth Amendment claim fails on the subjective prong, as they fail to show that Defendants were "deliberately indifferent."

16

JA051

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In the Fourth Circuit, deliberate indifference is a standard of liability that requires showing that an individual both (1) "subjectively recognized a risk of substantial harm" and (2) "subjectively recognized that his actions were inappropriate in light of that risk." *Anderson*, 877 F.3d at 545.  "Deliberate indifference is a very high standard," and "a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Plaintiffs adequately show that Defendants "subjectively recognized a risk of substantial harm," as the Complaint articulates that Defendants were aware of the risk of harm that would flow from impermissible incarceration. (Compl. ¶¶ 34–35.)  The Fourth Circuit's opinion in *Florian* guides this Court's analysis of the second factor of this prong — whether Defendants "subjectively recognized" that their actions were inappropriate in light of that risk.  In *Florian*, the Fourth Circuit reviewed whether an erroneous legal interpretation that resulted in prolonged incarceration amounted to deliberate indifference. *Florian*, 972 F.3d at 395–96.  In answering that question negatively, the Fourth Circuit noted that when an interpretation is rendered after reading the statute itself, applying canons of statutory interpretation and considering legislative intent, the interpretation cannot be considered to have been made with deliberate indifference. *Id.*

So too here.  Attorney General Miyares' opinion demonstrates that he carefully considered the text of the statute itself, one that he was familiar with given that he was an Assembly Member when the bill was passed. (ECF No. 11-1.)  He applied canons of statutory interpretation, like the absurdity doctrine, which commands that statutes should be interpreted in ways that avoid irrational outcomes. (*Id.*)  And he appropriately considered the intent of the legislature, a common practice in statutory interpretation. (*Id.*)  This analysis leads the Court to

17

conclude that Attorney General Miyares acted reasonably in the face of a statute that was subject to varying interpretations.

Plaintiffs argue, as did the plaintiff in *Florian*, that a state supreme court's reversal of the Attorney General's opinion is *prima facie* evidence of deliberate indifference. (ECF No. 12 at 10.) To be sure, the Virginia Supreme Court stated that there was "no basis" in the governing statute that supported Attorney General Miyares' opinion and noted that his application of the absurdity doctrine was incorrect. *Prease*, 888 S.E.2d at 762. However, the Fourth Circuit has plainly held that reaching a different conclusion on the issue of statutory interpretation "does not make out a violation of the Eighth Amendment." *Florian*, 972 F.3d at 397. Accordingly, the Court cannot apply an adverse inference against the Attorney General on account of the Virginia Supreme Court's opinion. As such, the Court finds that Plaintiffs' Eighth Amendment claim fails, because it does not demonstrate that Attorney General Miyares "subjectively recognized that his actions were inappropriate in light of [the risk of incarceration lacking penological justification]." *Anderson*, 877 F.3d at 545.

For the same reasons, the Eighth Amendment claims fails as to Director Clarke, who was head of the Virginia Department of Corrections at the time that Attorney General Miyares issued his advisory opinion. Director Clarke merely followed the legal advice of an executive branch official trained in legal analysis and enforced Attorney General Miyares' advisory opinion. Following that advice, as a non-lawyer, does not constitute an action that violates Plaintiffs' Eighth Amendment rights. As a result, Plaintiffs fail to establish a violation of the Eighth Amendment and both Defendants are therefore entitled to qualified immunity on this claim.

18

## 2. The Fourteenth Amendment Due Process Claims

The Court now turns to Plaintiffs' claims brought under the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause contains both a substantive and a procedural component. The "substantive component [] bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). This protects against egregious government conduct and, relevant here, the issue of over-incarceration falls squarely within the ambit of substantive due process. *Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008). At the same time, procedural due process provides safeguards to ensure that proper procedures are followed before the Government takes away an entitlement, whether that be life, liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). The parties agree that overincarceration implicates the due process clause but disagree as to whether the facts of this matter make out a cognizable claim for relief. (ECF No. 11 at 15; ECF No. 12 at 12.)

### a. Fourteenth Amendment Entitlement

To establish either a substantive or procedural due process claim, Plaintiffs must first demonstrate "that [they] possessed a cognizable [] interest, rooted in state law." *Siena Corp. v. Mayor & City Council of Rockville*, 873 F.3d 456, 461 (4th Cir. 2017) (requiring a cognizable interest for substantive due process); *Kerr*, 824 F.3d at 80 (requiring "a legitimate claim of entitlement" for a procedural due process claim to be viable). Thus, the Court first considers the threshold question — whether Plaintiffs possessed a cognizable liberty interest in the mandatory credits afforded to them under House Bill 5148. The Court finds that Plaintiffs fail to demonstrate that they possessed a cognizable interest in the enhanced sentence credits during the

19

JA054

relevant period, thereby ending their ability to carry either a substantive or procedural due process claim.

To be sure, given that the credits set forth in House Bill 5148 apply mandatorily to all inmates within its purview, the deprivation of such credits once vested would amount to over-detention that could violate the Fourteenth Amendment's due process clause. *See Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008) (finding viable a claim for "monetary damages for unconstitutional imprisonment because Virginia improperly extended the length of his prison sentence"); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We have recognized a protected liberty interest in being free from wrongful, prolonged incarceration."); *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992) ("Illinois state prisoners have a statutory right to receive good time credits . . . and such a state-created entitlement to good time credits is a liberty interest protected by the Fourteenth Amendment.")

However, Attorney General Miyares' advisory opinion was issued before House Bill 5148 went into effect on July 1, 2022. As such, the mandatory sentencing credits in the bill did not vest with Plaintiffs until July of 2023, the date that the Virginia Supreme Court ultimately overturned Attorney General Miyares' opinion in Plaintiffs' favor. "A cognizable property interest requires 'a legitimate claim of entitlement . . . from an independent source such as state law.'" *Siena Corp.*, 873 F.3d at 461 (quotations omitted). And until the Virginia Supreme Court conclusively determined that Plaintiffs fell within the scope of the state law creating the entitlement — House Bill 5148 — no cognizable interest had yet accrued, as there was no state law origin from which Plaintiffs could be deprived. Simply, Plaintiffs had not satisfied the condition precedent of being able to benefit from the bill — that is, being a part of the eligible group of prisoners to whom the bill applies — and therefore cannot now claim that they were

20

JA055

deprived of its benefits. *See Kerr v. Marhsall University Board of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (finding that student had no interest in "graduation, certification, and prospective employment," because she did not satisfy the requirements necessary to create those interests).

Absent eligibility, there is no entitlement, and therefore no viable claim under the Fourteenth Amendment's due process clause. As the Virginia Supreme Court has stated in this exact context, "[b]efore a person may be deprived of an interest, whether in property or in a [enhanced sentence credits] program, in violation of the due process clause, the person must actually possess such an interest." *Anderson v. Clarke*, 893 S.E.2d 379, 387 (Va. 2023). Without being eligible for the enhanced sentence credit, no such interest exists, thus defeating Plaintiffs' due process claims.

### b.  The Substantive Due Process Claim

Even if the Virginia Supreme Court's rejection of Attorney General Miyares' interpretation means that Plaintiffs had vested, cognizable interests protected by the Fourteenth Amendment on July 1, 2022, Defendants' conduct does not constitute the type that violates substantive due process. For Defendants' action — rendering an advisory opinion as required by state law— to violate substantive due process, it must shock the conscious, falling "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995). Defining the substantive due process clause's boundaries escapes precise definition, but the totality of the circumstances should be considered when determining whether an action rises to the level of conscious-shocking. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 ("While the measure of what is conscience-shocking is no calibrated yard stick, it does . . . point the way.").

21

Here, Attorney General Miyares' conduct in interpreting a statute and delivering his advisory opinion was based on analysis of legislative intent and canons of statutory interpretation. Although his conclusion has been determined to be erroneous, neither the process in arriving at that conclusion nor the conclusion itself shocks the conscience. *See Kerr*, 824 F.3d at 81 (finding that when there are multiple rational reasons for a given action, it does not "shock the conscience"). Indeed, the process undertaken by Attorney General Miyares was the process prescribed by the Virginia legislature itself. The Court cannot say that following that process, even if the interpretation ultimately fails, shocks the conscience. Accordingly, neither Attorney General Miyares' conduct in rendering an advisory opinion nor Director Clarke's conduct in following that opinion violated Plaintiffs' Fourteenth Amendment substantive due process rights, even when viewing the facts in the light most favorable to Plaintiffs. Thus, even if Plaintiffs have been deprived of a liberty interest, qualified immunity protects both Defendants from damages stemming from the substantive due process claim.

### c. The Procedural Due Process Claim

The final claim brought by Plaintiffs seeks to vindicate their Fourteenth Amendment procedural due process rights. Here too, as explained above, the Court finds that Plaintiffs had no interest in the expanded sentence enhancement credits found in House Bill 5148 during the relevant period of overincarceration. That alone defeats their procedural due process claim and consequently confers upon Plaintiffs qualified immunity. Even if there were a viable procedural due process claim, as there were no processes to protect the rights of any affected person when the Attorney General rendered his advisory opinion, such a right is not clearly established, thus constituting a second reason to provide qualified immunity to both Defendants.

22

JA057

For a right to be clearly established, the right first "must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official," requiring a high degree of specificity as to the circumstances at issue. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). Here, the right — properly framed — constitutes a procedural due process right to basic procedural guardrails for state officials rendering advisory opinions that deprive affected persons of an entitlement.  However, there exists no case law from the Fourth Circuit or Supreme Court suggesting that a state executive's rendition of an advisory opinion in accordance with the processes set forth by a state legislature violates the procedural due process rights of the affected class, nor does a consensus of persuasive authority contend otherwise.  *See Ray*, 948 F.3d at 229 (noting that binding precedent or a consensus of persuasive authority render a right clearly established).  As such, Attorney General Miyares is protected by qualified immunity.  Moreover, no precedent exists suggesting that reliance on the opinion of a state executive in this context triggers liability, thus providing Defendant Clarke — who relied on Attorney General Miyares' opinion — with qualified immunity for damages stemming from the procedural due process claim.  *See Buonocore v. Harris*, 134 F.3d 245, 253 (4th Cir. 1998) (explaining that reliance on the advice of counsel is a factor to be considered when determining qualified immunity's scope).  As such, Plaintiffs — even if they had an entitlement to the enhanced sentencing credits — lack a clearly established procedural due process right in this context and therefore are unable to pierce Defendants' qualified immunity from suit.

## IV.    CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' Motion to Dismiss, (ECF No. 10), and thus DISMISSES WITH PREJUDICE the matter as to the claims levied against both Defendants.  Neither Attorney General Miyares nor Defendant Clarke are liable

23

JA058

under 42 U.S.C. § 1983 for damages stemming from Attorney General Miyares' rendition of an advisory opinion that narrowed the class of prisoners eligible to benefit from House Bill 5148's enhanced sentence reduction credits.  While Attorney General Miyares is not protected by absolute immunity, his conduct remains protected by qualified immunity, as does Defendant Clarke's, even when assuming the facts set forth in the complaint as true and drawing all inferences in Plaintiffs' favor.

This case is now CLOSED.

Let the Clerk file a copy of this Memorandum Order and electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  January 31, 2024

24

JA059

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| **HAMILTON HALL SWART, III and RICHARD EARL DASILVA** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action No.  3:23cv753** |
| | : | |
| **JASON S. MIYARES AND HAROLD W. CLARKE** | : | |
| | : | |
| **Defendants.** | : | |

**NOTICE OF APPEAL**

Notice is hereby given that Hamilton Hall Swart, III and Richard Earl DaSilva, Plaintiffs

in the above captioned case, hereby appeal to the United States Court of Appeals for the Fourth

Circuit from an Order, entered on January 31, 2024, granting Defendants' motion to dismiss

based on qualified immunity and dismissing all of Plaintiffs' claims.

Respectfully submitted,
Hamilton Hall Swart, III
Richard Earl DaSilva
By Counsel

s/_____
Jeffrey E. Fogel
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
Tel 434-984-0300
Fax 434-220-4852
Email: jeff.fogel@gmail.com

JA060

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2024, I served the within Notice of Appeal on the defendants by filing the same with the Court's ECF system which will give notice of the filing to:

Margaret O'Shea
Assistant Attorney General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219

s/_____
Jeffrey E. Fogel

2