No. 24-1117

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

HAMILTON H. SWART, III, *et al.*,

*Plaintiffs-Appellants*,

v.

JASON S. MIYARES, Attorney General of Virginia, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Virginia

## RESPONSE BRIEF OF APPELLEES

JASON S. MIYARES
  *Attorney General*

MARGARET A. O'SHEA
  *Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

June 3, 2024

ERIKA L. MALEY
  *Solicitor General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

RICK W. EBERSTADT
  *Deputy Solicitor General*

MICHAEL DINGMAN
  *Assistant Solicitor General*

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

ISSUES PRESENTED ......................................................................... 2

STATEMENT ..................................................................................... 3

    I.    Factual Background .................................................................. 3

        A.    Swart and DaSilva's convictions ....................................... 3

        B.    Statutory changes to Virginia's earned sentence credit system ................................................................................ 5

        C.    Defendants' interpretation of the new law ....................... 6

    II.    Procedural History ................................................................ 12

STANDARD OF REVIEW .................................................................. 14

SUMMARY OF ARGUMENT ............................................................. 15

ARGUMENT ..................................................................................... 17

    I.    This Court's precedent forecloses the Eighth Amendment claim ...................................................................................... 17

        A.    Swart and DaSilva's claim does not fit within the Eighth Amendment ........................................................ 19

        B.    Swart and DaSilva's claim fails to satisfy the Eighth Amendment's subjective prong ....................................... 21

    II.    Defendants did not violate substantive due process ............. 31

    III.    Defendants are entitled to qualified immunity on the procedural due process claim ................................................ 37

A.   Swart and DaSilva have not adequately alleged a procedural due process claim .........................................37

B.   No alleged procedural due process right was clearly established .......................................................................44

CONCLUSION .........................................................................47

CERTIFICATE OF COMPLIANCE........................................48

CERTIFICATE OF SERVICE.................................................49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Ferguson,*
884 F.3d 219 (4th Cir. 2018) ............................................................... 18

*Anderson v. Kingsley,*
877 F.3d 539 (4th Cir. 2017) ............................................................... 22

*Arangure v. Whitaker,*
911 F.3d 333 (6th Cir. 2018) ............................................................... 25

*Arizonans for Off. Eng. v. Arizona,*
520 U.S. 43 (1997) ............................................................................... 29

*Armato v. Grounds,*
766 F.3d 713 (7th Cir. 2014) ............................................................... 30

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................. 15

*Barrett v. Pae Gov't Servs., Inc.,*
975 F.3d 416 (4th Cir. 2020) ............................................................... 17

*Bolin v. South Carolina Dep't of Corr.,*
781 S.E.2d 914 (S.C. Ct. App. 2016) ............................................ 27, 28

*Bustillos v. Murphy,*
96 Cal. App. 4th 1277 (4th Dist. 2002) ......................................... 9, 26

*Campbell v. Florian,*
972 F.3d 385 (4th Cir. 2020) ..................................................... *passim*

*Campbell v. Peters,*
256 F.3d 695 (7th Cir. 2001) ............................................................... 30

*City of Tahlequah, Oklahoma v. Bond,*
595 U.S. 9 (2021) ................................................................................. 18

*Codd v. Velger*,
429 U.S. 624 (1977) ................................................................ 43

*In re Commonwealth, Dep't of Corr.*,
222 Va. 454 (1981) .......................................................... 7, 29, 40

*Connecticut Dep't of Pub. Safety v. Doe*,
538 U.S. 1 (2003) ............................................................... 41, 43

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .............................................. 31, 32, 34, 35

*Daniels v. Williams*,
474 U.S. 327 (1986) ................................................................ 32

*Danser v. Stansberry*,
772 F.3d 340 (4th Cir. 2014) ................................................. 22

*Denny v. Schultz*,
708 F.3d 140 (3d Cir. 2013) .................................................. 41

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ................................................................ 17

*Doe by Fein v. District of Columbia*,
93 F.3d 861 (D.C. Cir. 1996) (per curiam) ............................. 39

*Eastern Shore Markets, Inc. v. J.D. Associates Ltd.*,
213 F.3d 175 (4th Cir. 2000) ................................................. 15

*Farmer v. Brennan*,
511 U.S. 825 (1994) ................................................................ 19

*Fowler v. Benson*,
924 F.3d 247 (6th Cir. 2019) ................................................. 41

*Garrett v. Clarke*,
74 F.4th 579 (4th Cir. 2023) ............................................ 36, 44

*Grayson O Co. v. Agadir Int'l LLC*,
856 F.3d 307 (4th Cir. 2017) ........................................... 35, 45

*Greenhouse v. MCG Capital Corp.*,
  392 F.3d 650 (4th Cir. 2004) ................................. 15

*Dean ex rel. Harkness v. McKinney*,
  976 F.3d 407 (4th Cir. 2020) ...................... 2, 31, 33

*Henderson v. Simms*,
  223 F.3d 267 (4th Cir. 2000) ............................... 46

*Holloway v. Maryland*,
  32 F.4th 293 (4th Cir. 2022) ............................... 14

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*,
  542 F.3d 529 (6th Cir. 2008) ............................... 38

*Iko v. Shreve*,
  535 F.3d 225 (4th Cir. 2008) ............................... 22

*Jones v. City of Jackson*,
  203 F.3d 875 (5th Cir. 2000) ............................... 21

*Kapordelis v. Myers*,
  16 F.4th 1195 (5th Cir. 2021) ............................. 41

*Kerr v. Marshall Univ. Bd. of Govs.*,
  824 F.3d 62 (4th Cir. 2016) ................................ 36

*Lowrance v. Achtyl*,
  20 F.3d 529 (2d Cir. 1994) ................................. 32

*Marston's Inc. v. Roman Cath. Church of Phoenix*,
  644 P.2d 244 (Az. 1982) .................................... 29

*Martin v. Ziherl*,
  269 Va. 35 (2005) .......................................... 46

*McNeil v. Director*,
  407 U.S. 245 (1972) ........................................ 20

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ........................................ 46

*Pearson v. Callahan,*
555 U.S. 223 (2009) .............................................................. 18, 21, 31

*Pharm. Research & Mfrs. of Am. v. Thompson,*
251 F.3d 219 (D.C. Cir. 2001) ........................................... 25

*Porter v. Clarke,*
923 F.3d 348 (4th Cir. 2019) ............................................ 19

*Prease v. Clarke,*
302 Va. 376 (2023) .................................................... *passim*

*Prieto v. Clarke,*
780 F.3d 245 (4th Cir. 2015) ............................................ 20

*Pullins v. West,*
33 F.3d 56 (7th Cir. 1994) (unpublished) ......................... 41

*Rector v. City and Cnty. of Denver,*
348 F.3d 935 (10th Cir. 2003) ........................................... 40

*Reno v. Flores,*
507 U.S. 292 (1993) ........................................................ 44

*Rivas-Villegas v. Cortesluna,*
595 U.S. 1 (2021) ...................................................... 18, 36

*Shepherd on behalf of Estate of Shepherd v. City of
Shreveport,*
920 F.3d 278 (5th Cir. 2019) ............................................ 30

*Shirvinski v. United States Coast Guard,*
673 F.3d 308 (4th Cir. 2012) ............................................ 38

*Shorts v. Bartholomew,*
255 Fed. Appx. 46 (6th Cir. 2007) ................................... 20

*Smith v. McLaughlin,*
289 Va. 241 (2015) ........................................................ 34

*Stanton v. Sims,*
571 U.S. 3 (2013) ........................................................... 17

*Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.,*
980 F.3d 109 (D.C. Cir. 2020) ............................. 39

*Sylvia Dev. Corp. v. Calvert Cnty.,*
48 F.3d 810 (4th Cir. 1995) ............................. 31

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ............................. 46

*Virginia Elec. and Power Co. v. Citizens for Safe Power,*
222 Va. 866 (1981) ............................. 9, 26

*West v. Prince George's Cnty., Md.,*
2022 WL 125936 (D. Md. Jan. 13, 2022) ............................. 39

*Wilson v. Seiter,*
501 U.S. 294 (1991) ............................. 22, 27

*Wingate v. Fulford,*
987 F.3d 299 (4th Cir. 2021) ............................. 17

**Statutes**

28 U.S.C. § 2254 ............................. 43

Va. Code § 2.2-500 ............................. 2, 30

Va. Code § 2.2-505 ............................. 7, 47

Va. Code § 8.01-654 ............................. 43

Va. Code § 18.2-10 ............................. 26

Va. Code § 18.2-25 ............................. 26

Va. Code § 18.2-29 ............................. 26

Va. Code § 18.2-31 ............................. 4, 25

Va. Code § 53.1-202.2 *et seq.* ............................. 5

Va. Code § 53.1-202.3 ............................. 5, 6, 28, 42

## Other Authorities

2020 Acts ch. 50 (Spec. Sess. I) ................................................................ 5

2020 Acts ch. 52 (Spec. Sess. I) ................................................................ 5

3 Ronald D. Rotunda & John E. Nowak, Treatise on
  Constitutional Law-Substance & Procedure § 17.8(b) (5th
  ed. 2023) ............................................................................................... 41

Earned Sentence Credit Legislation-House Bill 5148 Report,
  H. Doc. No. 7, 2023, https://tinyurl.com/3ffa798x ........................ 6, 42

H.B. 5148, 2020 Gen. Assemb., 1st Spec. Sess. (Va. 2020) ................... 28

U.S. Const. amend. VIII ........................................................................ 19

U.S. Const. amend. XIV ........................................................................ 38

Va. Const. Art. V .................................................................................... 7

## INTRODUCTION

Hamilton H. Swart, III and Richard DaSilva, both convicted of attempted aggravated murder, claim that the Virginia Attorney General violated their constitutional rights when he issued an advisory opinion concluding that attempted aggravated murderers did not fall within the scope of a new Virginia statute that enhanced the sentence credits available for certain offenders. But this Court has already rejected highly similar claims in *Campbell v. Florian*, 972 F.3d 385 (4th Cir. 2020). While the Virginia Supreme Court ultimately disagreed with the Attorney General's interpretation of the new Virginia statute, that is very far from demonstrating that he acted with the deliberate indifference necessary for Swart and DaSilva's federal constitutional claims.

This Court "has plainly held that reaching a different conclusion on the issue of statutory interpretation 'does not make out a violation of the Eighth Amendment.'" JA53 (quoting *Florian*, 972 F.3d at 397). Indeed, "[i]n our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion." *Florian*, 972 F.3d at 396. "Competent administrative agencies and lower courts are often overturned," and "even at the highest levels of the law, four colleagues at

times share an 'incorrect' or 'unreasonable' opinion." *Id.* at 396–97. Such "[l]egal error alone is not deliberate indifference"—otherwise, multitudes of routine legal disputes over the proper interpretation of state statutes would turn into federal constitutional matters. *Id.* at 399. Likewise, the Director of the Department of Corrections was not deliberately indifferent in requesting, and following, the opinion of "the chief executive officer of the Department of Law" on the interpretation of the new statute. Va. Code § 2.2-500; JA13.

For similar reasons, Swart and DaSilva cannot establish a substantive due process claim, which requires conduct that "shocks the conscience." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020). Finally, none of the asserted constitutional rights were clearly established—indeed, Swart and DaSilva make no argument to the contrary. The district court correctly granted qualified immunity on Swart and DaSilva's claims. This Court should affirm.

## ISSUES PRESENTED

1.    Are Defendants entitled to qualified immunity on an Eighth Amendment claim challenging an advisory opinion interpreting a new

state statute, where the state court later disagrees with the opinion's interpretation of state law?

2.     Are Defendants entitled to qualified immunity on a substantive due process claim challenging an advisory opinion interpreting a new state statute, where the state court later disagrees with the opinion's interpretation of state law?

3.     Are Defendants entitled to qualified immunity on a procedural due process claim when plaintiffs fail to properly allege what additional process they contend was required, or provide any clearly established law that Defendants' conduct would violate?

## STATEMENT

### I.   Factual Background

#### A.     Swart and DaSilva's convictions

In 2009, Swart was driving his car with a blood alcohol level of 0.12. CR10000024–40, Fredericksburg Cir. Ct., April 26, 2010 Tr. at 17–18. After a police officer attempted to pull him over, Swart began an hours-long car chase. *Id.* at 14–18. During the chase, Swart intentionally and repeatedly rammed his vehicle into police cars, forcing one into a ditch. *Id.* at 14–17. After Swart rammed another police car head-on, officers took him into custody. *Id.* at 16–17.

Swart pleaded guilty to several offenses, including attempted aggravated murder of a law enforcement officer in violation of Va. Code § 18.2-31, three counts of assault and battery of a law enforcement officer, and driving while intoxicated. JA28–29. Attempted aggravated murder requires an attempt to commit a "willful, deliberate, and premeditated killing." Va. Code § 18.2-31. For these crimes, Swart was sentenced to eight years of incarceration, and his probation on other offenses was revoked. JA31–34.

DaSilva also attempted to kill a police officer. In 2006, DaSilva ran a red light in his car, and Officer Terry Ralph pulled him over. Cr. No. 66080, Prince William Cir. Ct., April 12, 2007 Tr. at 12–13. After Officer Ralph asked DaSilva for his driver's license, DaSilva pulled out a large caliber handgun, pointed it at Officer Ralph through the open window, and shot at him. *Id.* at 14–15. DaSilva then fled the scene in his car. *Id.* at 15, 30. DaSilva was convicted of attempted aggravated murder of a law enforcement officer in violation of Va. Code § 18.2-31 in June 2007, and sentenced to 20 years of incarceration. JA35.

### B. Statutory changes to Virginia's earned sentence credit system

Virginia has long allowed inmates serving certain sentences to earn credit for good behavior during their incarceration, and thereby reduce the length of their sentences. Va. Code § 53.1-202.2 *et seq.* This system is known as the earned sentence credit system. Inmates receive "credit days" that reduce the time they must serve to satisfy their term of incarceration. *Ibid.* Until 2022, inmates who had committed felony offenses on or after January 1, 1995—including Swart and DaSilva— were eligible for a maximum of 4.5 credit days for every 30 days served. Va. Code § 53.1-202.3 (2020).

In 2020, the Virginia General Assembly passed amendments to the earned sentence credit system statutes to change the maximum rate at which certain inmates could receive sentence credits. 2020 Acts chs. 50, 52 (Spec. Sess. I). The legislation, known as H.B. 5148, increased the maximum number of credit days available to certain eligible inmates from 4.5 days to 15 days for every 30 days served. *Ibid.* It also listed numerous offenses—primarily serious violent felonies such as murder, robbery, kidnapping, and rape—for which the maximum rate of sentence credits would not increase and would remain 4.5 days per 30-day period.

Va. Code § 53.1-202.3(A). Although the General Assembly passed H.B. 5148 in 2020, the law did not take effect until July 1, 2022, at which point it applied retroactively. JA5.

This new law required numerous changes for the Virginia Department of Corrections ("VDOC") when it became effective, and also presented several statutory interpretation questions.[1] In particular, it was unclear whether Va. Code § 53.1-202.3(A) made the enhanced sentence credits inapplicable to accessory and inchoate versions of the listed offenses, such as conspiracy, attempt, and solicitation.

## C.    Defendants' interpretation of the new law

In December 2021, VDOC Director Harold W. Clarke asked then-Attorney General Mark Herring for an official advisory opinion on several statutory interpretation questions regarding H.B. 5148. JA18. Virginia law requires its Attorney General to provide a written advisory opinion when certain public officials, including the Director of VDOC,

---

[1] Indeed, recognizing the magnitude and complexity of the changes that the new law represented, the General Assembly ordered VDOC to "convene a work group to study the impact of the sentence credit amendments set forth in this act" and "report its findings and conclusions to the Governor and the General Assembly." VDOC submitted this report on June 1, 2023 as required. Earned Sentence Credit Legislation—House Bill 5148 Report, H. Doc. No. 7, 2023, https://tinyurl.com/3ffa798x.

pose legal questions. Va. Code § 2.2-505; see Va. Const. Art. V, § 15. Virginia courts have observed that these mandatory advisory opinions are "for the benefit of public officials where [Virginia] Court[s] ha[ve] made no definitive interpretation of the law." *In re Commonwealth, Dep't of Corr.*, 222 Va. 454, 463 (1981).

Attorney General Herring concluded that Va. Code § 53.1-202.3(A) covered both the substantive completed offense and offenses committed in the role of principal in the second degree and accessory before the fact, despite the latter offenses not being explicitly enumerated. See JA18–22 (Herring Opinion). He concluded, however, that Va. Code § 53.1-202.3(A) did not cover most solicitations or attempts, because "the legislature explicitly included" certain solicitations and attempts "among the disqualifying offenses," including solicitation to commit murder. JA20. Thus, while he concluded that the completed act of aggravated murder was excluded from enhanced sentence credits, he opined that "an offender convicted of conspiracy to commit aggravated murder or attempted aggravated murder would be permitted to receive enhanced earned sentence credits." JA21.

In 2022, before H.B. 5148 became effective, Attorney General Jason Miyares took office. Director Clarke asked the new Attorney General for his interpretation of H.B. 5148, including whether those convicted of certain inchoate offenses, such as attempted aggravated murder, were eligible for the enhanced sentence credits. JA13.[2] Attorney General Miyares responded to that request by issuing an advisory opinion that analyzed the statute's text, "legislative intent[,] and canons of statutory interpretation." JA57; see JA13–17 (Miyares Opinion).

The Miyares Opinion agreed with the Herring Opinion that Va. Code § 53.1-202.3(A) covered accessories before the fact and principals in the second degree for the listed offenses, thus excluding those categories of offenders from enhanced sentence credits. See JA15. The Miyares Opinion concluded, however, that Va. Code § 53.1-202.3(A) also covered

---

[2] While they contended before the district court that it was unclear whether Attorney General Miyares was responding to Director Clarke's request, Swart and DaSilva do not contest on appeal that he was. See Swart Br. 12 ("Defendant Clarke, without reason, sought a reconsideration of the latter opinion"). The record reflects that Director Clarke requested the opinion. See JA13 (expressly referencing this request); see also *Prease v. Clarke*, 302 Va. 376, 381 (2023) ("Shortly [after Attorney General Miyares took office], VDOC asked Attorney General Miyares to reconsider Attorney General Herring's conclusions with regard to Code § 53.1-202.3.").

conspiracy, attempt, and solicitation for the listed offenses. It reasoned that to read the section "as referring to only the completed crime would lead to the irrational conclusion that the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits—yet leave convictions for conspiracies or *actual attempts* to commit murder eligible for enhanced sentence credits." JA15–16. "Courts will give a statute a 'reasonable . . . interpretation consistent with its apparent purpose and [legislative intent],'" the Miyares Opinion explained, "and will avoid an interpretation that leads to irrational results." JA15 (citing *Bustillos v. Murphy*, 96 Cal. App. 4th 1277, 1280 (4th Dist. 2002), and *Virginia Elec. and Power Co. v. Citizens for Safe Power*, 222 Va. 866, 869 (1981)).

The Miyares Opinion also agreed with the Herring Opinion that Va. Code § 53.1-202.3(A) covered the completed act of aggravated murder and aggravated murder offenses committed by individuals acting as an accessory before the fact or a principal in the second degree. JA16. The Miyares Opinion, however, concluded that attempts or conspiracy to commit aggravated murder were also ineligible for enhanced sentence credits, "consistent with the analysis set forth" as to attempts and

conspiracies for other offenses. See *ibid.* Attorney General Miyares thus advised Director Clarke that, in his opinion, attempts to commit aggravated murder were ineligible for enhanced sentence credits, and individuals convicted of those offenses could only earn sentence-reducing credit at the rate of up to 4.5 days for every 30 days served, rather than the new, enhanced rate of up to 15 days for every 30 days served. JA17.

Attorney General Miyares issued this opinion in April 2022, before the new statute went into effect. Compare JA13 with JA5. Director Clarke applied Attorney General Miyares's interpretation of the statute when it became effective in July 2022, and thus did not retroactively apply enhanced sentence credits to inmates convicted of attempted aggravated murder. Some inmates, including Swart and DaSilva, would have been eligible for release on or around the law's effective date if the new statute had been retroactively applied to their sentences. JA5, 6.

Another inmate convicted of attempted aggravated murder filed an original habeas petition in the Virginia Supreme Court, arguing that he was eligible for release under the new statute because Va. Code § 53.1-202.3(A) did not exclude attempted aggravated murder from the enhanced sentence credits. The Commonwealth of Virginia argued "that

the General Assembly clearly did not intend for an individual convicted of attempted aggravated murder to receive expanded earned sentence credits." *Prease*, 302 Va. at 383.

In July 2023, the Supreme Court of Virginia held that the enhanced sentence credits applied to the petitioner. The opinion applied a textualist approach to statutory interpretation, stating that it "presume[s] that the legislature says what it means and means what it says," *ibid.* (quotation marks omitted), and that it "can only administer the law as it is written," *id.* at 385 (quotation marks omitted). It concluded that "it would appear that there is no basis in the governing statutes for denying [the petitioner] expanded earned sentence credits on his attempted aggravated murder convictions," because, although "a person convicted of aggravated murder is ineligible to receive expanded earned sentence credits," the petitioner "was not convicted of aggravated murder, he was convicted of *attempted* aggravated murder." *Id.* at 384.

The court disagreed with the Commonwealth's argument that "if a person convicted of solicitation to commit murder was ineligible to receive expanded earned sentence credits, while a person convicted of attempted aggravated murder remained eligible, such a result would be absurd," on

the ground that it would not render the statute "internally inconsistent or otherwise incapable of operation." *Ibid.* The court further noted that "the public policy implications associated with the General Assembly's inclusion of less serious offenses do not factor into [the court's] interpretation," because the court "may not extend the meaning of a statute" on the ground "that a similar policy applies." *Id.* at 385 (citation omitted).

Following the Virginia Supreme Court's decision in *Prease*, Director Clarke promptly applied the enhanced sentence credits to Swart and DaSilva, resulting in their release from prison. JA6.

## II.  Procedural History

A few months later, Swart and DaSilva filed suit against Attorney General Miyares and Director Clarke (collectively, Defendants), asserting three causes of action under 42 U.S.C. § 1983, and seeking damages against Defendants in their individual capacities. JA8–10. The operative Amended Complaint alleged that the Miyares Opinion caused their over-detention in violation of the Eighth Amendment as well as both the substantive and procedural aspects of the Fourteenth Amendment's

Due Process Clause. JA8–9. Defendants moved to dismiss the Amended Complaint shortly thereafter. JA11.

The district court granted the motion, dismissing all three claims on qualified immunity grounds. As to the Eighth Amendment claim, the court held that Swart and DaSilva had failed to show that Defendants were deliberately indifferent under *Campbell v. Florian*, 972 F.3d 385 (4th Cir. 2020). JA51–53. The court explained that Swart and DaSilva argued, "as did the plaintiff in *Florian*, that a state supreme court's reversal of the Attorney General's opinion is *prima facie* evidence of deliberate indifference"; however, "the Fourth Circuit has plainly held that reaching a different conclusion on the issue of statutory interpretation 'does not make out a violation of the Eighth Amendment.'" JA53 (quoting *Florian*, 972 F.3d at 397).

The court held that "Attorney General Miyares' opinion demonstrates that he carefully considered the text of the statute itself," that he then "applied canons of statutory interpretation, like the absurdity doctrine," and that he "appropriately considered the intent of the legislature, a common practice in statutory interpretation." JA52–53. Accordingly, "Attorney General Miyares acted reasonably in the face of a

statute that was subject to varying interpretations." *Ibid*. As for Director Clarke, he "merely followed the legal advice of an executive branch official trained in legal analysis," which "does not constitute an action that violates Plaintiffs' Eighth Amendment rights." JA53.

The court also dismissed the Fourteenth Amendment claims. The court held that Swart and DaSilva's substantive due process claim failed because Attorney General Miyares had acted "based on analysis of legislative intent and canons of statutory interpretation," and "neither the process in arriving at that conclusion nor the conclusion itself shocks the conscience." JA57. The court also held that the procedural due process claim failed because there is "no case law from the Fourth Circuit or Supreme Court suggesting that a state executive's rendition of an advisory opinion in accordance with the process set forth by a state legislature violates the procedural due process rights of the affected class." JA58. This appeal followed.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). This Court "may affirm the dismissal by the

district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court." *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660 (4th Cir. 2004) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). And although this Court "must take the facts in the light most favorable to the plaintiff," it "need not accept [plaintiff's] legal conclusions," and also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

## SUMMARY OF ARGUMENT

The district court correctly held that Attorney General Miyares and Director Clarke are entitled to qualified immunity on all three claims.

Swart and DaSilva's Eighth Amendment claim fails because the Eighth Amendment is not the proper vehicle for an over-detention claim. In addition, Swart and DaSilva did not adequately allege facts showing that Defendants were deliberately indifferent in their interpretation of the new state statute. This Court recently denied a highly similar claim,

holding that issuing a legal interpretation of a new state statute does not violate the Eighth Amendment where a state court later determines that the officials' interpretation was incorrect, and it results in over-detention for certain inmates. *Florian*, 972 F.3d 385.

For similar reasons, Defendants are entitled to qualified immunity on the substantive due process claim. Swart and DaSilva cannot clear the even higher bar of showing that Defendants engaged in conduct that shocks the conscience. Attorney General Miyares employed typical tools of statutory construction, while Director Clarke followed the legal advice of the sitting Attorney General; under this Court's precedent, neither action shocks the conscience and thus neither violates the substantive component of the Fourteenth Amendment's Due Process Clause.

Finally, Defendants are entitled to qualified immunity on the procedural due process claim. Swart and DaSilva fail sufficiently to explain what process was constitutionally required or what that process would have gone to show. And Swart and DaSilva did not—and cannot— cite any case law that would clearly establish either official violated the Constitution, as the district court correctly held. This Court should affirm.

## ARGUMENT

## I.   This Court's precedent forecloses the Eighth Amendment claim

The district court correctly held that qualified immunity bars Swart and DaSilva's Eighth Amendment claim.

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021) (citation omitted). In doing so, it "'gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 429 (4th Cir. 2020) (quoting *Stanton v. Sims*, 571 U.S. 3, 5 (2013)).

Public officials are entitled to qualified immunity unless both "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotation marks and citation omitted). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of

generality." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). It has emphasized that courts must "consider whether a right is clearly established in light of the specific context of the case, not as a broad general proposition." *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018). Thus, absent an "obvious" case, "to show a violation of clearly established law, [the plaintiff] must identify a case that put [the officials] on notice that [their] specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). Determining which prong of the qualified immunity analysis "will best facilitate the fair and efficient disposition of each case" lies within this Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

Here, Swart and DaSilva's claim fails under both prongs of the analysis. The Eighth Amendment is not the proper vehicle for over-detention claims. Moreover, Swart and DaSilva's allegations are insufficient to show "that state officials were deliberately indifferent." *Florian*, 972 F.3d at 394 (cleaned up) (citation omitted). And even if they were, such a right was not clearly established under the circumstances of this case.

## A.  Swart and DaSilva's claim does not fit within the Eighth Amendment

The Eighth Amendment prevents the government from requiring "excessive bail," imposing "excessive fines," or inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. An Eighth Amendment claim must satisfy both "objective" and "subjective" requirements. *Florian*, 972 F.3d at 393; see also *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the "objective" prong, the alleged deprivation must be "objectively, sufficiently serious," which in turn requires that it be "extreme," posing "a serious or significant physical or emotional injury" or "a substantial risk of serious harm resulting from exposure to the challenged conditions." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (cleaned up). And to satisfy the "subjective" prong, the plaintiff also must show that the defendant "possessed a sufficiently culpable state of mind," which requires that the state officials were "deliberately indifferent" to the harm. *Florian*, 972 F.3d at 394 (citing *Farmer*, 511 U.S. at 834) (cleaned up).

The Fourteenth Amendment, rather than the Eighth Amendment, governs Swart and DaSilva's over-detention claim. This Court has stated that over-detention claims "do[] not fit neatly within the ambit of the

Eighth Amendment," and has never held that such an Eighth Amendment claim is viable. *Florian*, 972 F.3d at 394 (declining to decide whether the Eighth Amendment supports such a claim). Rather, both the Supreme Court and other Courts of Appeals have "generally [] assessed" such claims "under the Fourteenth Amendment, not the Eighth." *Ibid.* (gathering cases); see also *id.* at 394 n.7.

The "critical distinction" is that the Eighth Amendment directs courts to determine "whether prison *conditions* impose cruel and unusual punishment," while the Fourteenth Amendment directs courts "to determine whether a state has provided prisoners with adequate *process* in applying prison regulations and policies." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015) (emphasis added) (cautioning against "elid[ing] that critical distinction"). When a State has "lost its power to hold" a prisoner, a claim based on the prisoner's "continued detention" is properly brought "under the Fourteenth Amendment." *McNeil v. Director*, 407 U.S. 245, 246 (1972); see *Shorts v. Bartholomew*, 255 Fed. Appx. 46, 51 (6th Cir. 2007) (observing that the "liberty interest" in timely release "is most often attributed to the Due Process Clause of the Fourteenth Amendment"). Thus, if a plaintiff "complain[s] about the *fact*

of his incarceration rather than its *conditions*," there is no "cause of action under the Eighth Amendment." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (emphasis added). Because Swart and DaSilva's claim stems from the fact of their detention after June 2022, not its conditions, the Eighth Amendment does not apply.

At any rate, even if an over-detention claim could fall within the Eighth Amendment, Swart and DaSilva could not show that such a right was "clearly established" at the time of the alleged violation. See *Pearson*, 555 U.S. at 232. To the contrary, *Florian* expressly states that "the Fourth Circuit has never squarely addressed" whether the Eighth Amendment allows such a claim. *Florian*, 972 F.3d at 394. Defendants are therefore entitled to qualified immunity on the Eighth Amendment claim.

### B. Swart and DaSilva's claim fails to satisfy the Eighth Amendment's subjective prong

Swart and DaSilva's claim also fails to satisfy the Eighth Amendment's "subjective prong," because they cannot show that either Attorney General Miyares or Director Clarke acted with the required "deliberate indifference." *Florian*, 972 F.3d at 394–95 (cleaned up).

"Importantly, deliberate indifference is a very high standard," *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citation and quotation marks omitted), and "sets a particularly high bar to recovery," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); see also *Florian*, 972 F.3d at 395 (deliberate indifference is "equivalent to criminal-law recklessness"). To prevail, Swart and DaSilva must show that Defendants "subjectively recognized" a "substantial risk of harm," and also recognized that their "actions were inappropriate in light of that risk." *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (cleaned up). In other words, they must show that Attorney General Miyares and Director Clarke acted with "*obduracy and wantonness, not inadvertence or error in good faith.*" *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (emphasis in original) (citation omitted). "Importantly, a prison official who actually knows of a substantial risk may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Florian*, 972 F.3d at 395 (cleaned up).

In *Florian*, this Court held that a government official "acted reasonably to confront the interpretive problem before him" when he "approached the relevant statutory-interpretation questions as a careful

attorney would." 972 F.3d at 395. There, as here, the state legislature had enacted "significant revisions" to criminal laws that affected inmates' "good-time credits," and a state lawyer had reviewed the new law and drafted a "memorandum describing how he believed the [new law] should be interpreted." *Id.* at 389–90. The lawyer analyzed "caselaw on statutory interpretation and legislative intent," "summarized the changes" that the new law had made, observed that "nothing in the text of these sections directly addresses the issue," and then applied the interpretation that he "believed" harmonized the law's uncertainties. *Id.* at 390.

A state court later ruled that the attorney's interpretation of that law had been incorrect, and that as a result certain prisoners "should have [been] freed . . . earlier than [they were] actually released based on the application of work and good-conduct credits." *Florian*, 972 F.3d at 388. This Court rejected a former inmate's claim that the state attorney's "erroneous" interpretation of state law had "violated the Eighth Amendment's prohibition on 'cruel and unusual punishments' by prolonging his detention." *Ibid.* It ruled that a court "cannot" uphold an Eighth Amendment claim based on "a legal conclusion later deemed

unreasonable," *id.* at 397, because "legal error alone is not deliberate indifference." *Id.* at 399.

*Florian* explained that "[a]n incorrect legal opinion often occurs without some negligent (much less reckless) act or omission." 972 F.3d at 396. "In our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion." *Ibid.* Accordingly, "[c]ompetent administrative agencies and lower courts are often overturned despite careful and thoughtful legal interpretations." *Ibid.* Indeed, "even at the highest levels of the law, four colleagues at times share an 'incorrect' or 'unreasonable' opinion," dissenting from the statutory interpretation the majority adopts. *Id.* at 397. "An unreasonable outcome in that context cannot support an inference" that defendants "were negligent or criminally reckless in their analysis." *Ibid.*

*Florian* controls here. Swart and DaSilva's allegations against Attorney General Miyares focus on his advisory opinion. But the fact that the Virginia Supreme Court ultimately disagreed with his interpretation of the new state statute "cannot support an inference" that he was "negligent," much less "criminally reckless in [his] analysis." *Florian*, 972 F.3d at 396. To the contrary, Attorney General Miyares "approached the

relevant statutory-interpretation questions as a careful attorney would." *Id.* at 395.

The Miyares Opinion starts with the text of the act, explaining that the statute does not expressly address "whether convictions for conspiracy, attempt, or solicitation are included" in Va. Code § 53.1-202.3(A). JA15. The Opinion then looks to the legislative purpose and canons of construction to answer the question, both traditional tools of statutory interpretation. JA15–17; see *Arangure v. Whitaker*, 911 F.3d 333, 338–39 (6th Cir. 2018) (discussing interpretive canons as "traditional tools of statutory construction") (citation omitted); see also *Pharm. Research & Mfrs. of Am. v. Thompson*, 251 F.3d 219, 224 (D.C. Cir. 2001) ("traditional tools of statutory interpretation" include "purpose" and "legislative history"). The Opinion notes that H.B. 5148 made sentences involving "solicitation to commit murder under § 18.2-29" ineligible for earned enhanced credits, JA15, and that attempted aggravated murder is a similar yet more serious violent felony. Compare Va. Code § 18.2-31(A) (defining aggravated murder as a Class 1 felony), Va. Code §§ 18.2-10(b), 18.2-25 (defining attempts to commit a Class 1 felony as a Class 2 felony, with a minimum sentence of 20 years'

imprisonment), with Va. Code § 18.2-29 (providing a minimum sentence of 5 years' imprisonment for murder solicitation).

Particularly in light of the "apparent purpose and legislative intent" to grant enhanced sentence credits to those convicted of less serious felonies, while not shortening the incarceration of dangerous violent felons, the Opinion concludes that it would be "irrational" to "conclud[e] that the General Assembly intended to make solicitation to commit murder ineligible for enhanced sentence credits—yet leave convictions for . . . actual attempts to commit murder eligible." JA15 (citing *VEPCO*, 222 Va. at 869, and *Bustillos*, 96 Cal. App. 4th at 1280); see JA16 (incorporating that analysis into discussion of attempted aggravated murder). As the district court summarized, the Miyares Opinion demonstrates that the Attorney General "carefully considered the text of the statute," "applied canons of statutory interpretation" such as the absurdity canon, and "appropriately considered the intent of the legislature," which refutes any suggestion of deliberate indifference. JA52. The Virginia Supreme Court's ultimate rejection of the interpretation shows no more than an "error in good faith," precluding an Eighth Amendment claim. *Wilson*, 501 U.S. at 299 (citation omitted).

*Florian* demonstrates that the Attorney General's actions here were not unreasonable, much less deliberately indifferent. In that case, unlike here, the state court described the lawyer's memorandum as an "unreasonable" interpretation that "ignore[d]" the "expressly stated" legislative intent and "the plain language" of the statute. Compare *Bolin v. South Carolina Dep't of Corr.*, 781 S.E.2d 914, 918–919 (S.C. Ct. App. 2016), with *Prease*, 302 Va. 376. But this Court rejected the plaintiff's argument that the state court's "decision itself support[ed] an inference of deliberate indifference." *Florian*, 972 F.3d at 396. Indeed, this Court referred to that argument—ultimately the same one that Swart and DaSilva make—as an unsupported "logical leap" born of misapplying "*[r]es ipsa loquitur.*" *Ibid.*

Swart and DaSilva's efforts to distinguish *Florian* are unavailing. They argue that the "attorney general" there had "properly recognized that the act he was interpreting was inconsistent" and had then "'appropriately employed the normal tools of statutory construction to give his best interpretation of the new act.'" Swart Br. 15 (quoting in part *Florian*, 972 F.3d 396). But that fact does not distinguish the case, because it similarly describes what Attorney General Miyares did. See 8–

10, *supra*. Swart and DaSilva's belief that the statute does not contain any inconsistencies does not address why legislators would have intended to grant more sentence credits to those who actually attempted aggravated murder than to those guilty of solicitation of murder, nor the host of other statutory interpretation issues that both Attorney General Herring and Attorney General Miyares considered. See 7–10, *supra*.

Further, unlike the statute in *Florian*, H.B. 5148 does not contain an express statement of legislative intent that the interpretation arguably contradicted. Compare *Bolin*, 781 S.E.2d at 918 (quoting that statement and noting contradiction), with Va. Code § 53.1-202.3 (containing no such statement); H.B. 5148, 2020 Gen. Assemb., 1st Spec. Sess. (Va. 2020) (same). And that "one administrative court" had gone the other way in *Florian* also fails to distinguish the ruling. Swart Br. 16. This Court did not rely on that fact as a prerequisite for its conclusion that "legal error alone is not deliberate indifference," and that courts should not infer deliberate indifference "from a legal conclusion later deemed unreasonable." *Florian*, 972 F.3d at 396–97, 399.[3] *Florian*

---

[3] At the time the Miyares Opinion was issued, no court had yet interpreted the statute. And because the *Prease* case was an original action filed in the Virginia Supreme Court, it was both the first and the

squarely applies here and forecloses Swart and DaSilva's claim against Attorney General Miyares.

The claim against Director Clarke likewise fails. Swart and DaSilva assert that Director Clarke's decision to follow the Attorney General's legal opinion evinced deliberate indifference. Swart Br. 12. But they cite no authority that an executive official should be held personally liable for following the sitting Attorney General's interpretation of a new statute. See, *e.g.*, *Marston's Inc. v. Roman Cath. Church of Phoenix*, 644 P.2d 244, 248 (Az. 1982) (explaining that the advisory nature of Attorney General opinions "does not mean, however, that citizens may not rely in good faith on Attorney General opinions until the courts have spoken") (quoted by *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). Indeed, the central purpose of attorney general opinions is to guide "public officials where [Virginia] Court[s] ha[ve] made no definitive interpretation of the law." *In re Commonwealth*, 222 Va. at 463.

And contrary to Swart and DaSilva's assertion, the existence of the prior Herring Opinion does not show that Director Clarke acted with

---

definitive ruling as to the statutory interpretation question. *Prease*, 302 Va. at 378.

deliberate indifference. Swart Br. 24. Director Clarke consistently obeyed the operative opinion of the sitting Attorney General, first following the Herring Opinion and later following the Miyares Opinion when it "superseded" the Herring Opinion. JA17. As a non-lawyer faced with a new statute that applied directly to his duties, Director Clarke reasonably sought and followed the opinion of "the chief executive officer of the Department of Law" at the time. Va. Code § 2.2-500. Far from showing "deliberate indifference," Director Clarke's actions were reasonable. See *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) ("In making determinations about a prisoner's release, prison officials are permitted to rely upon 'a reasonable interpretation of a state statute.'") (quoting *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001)).

At the very least, it was not clearly established that Defendants violated the Eighth Amendment by putting forth—or following—a good-faith legal interpretation of a state statute that the state court eventually rejected. "Indeed, caselaw"—such as *Florian*—"supports the opposite conclusion." *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 285 (5th Cir. 2019). Swart and DaSilva do not even attempt to argue otherwise. Thus, even if Swart and DaSilva could

"make out a violation of a constitutional right," they could not show that such an Eighth Amendment right was "clearly established" at the time of the alleged violation. See *Pearson*, 555 U.S. at 232. Defendants are entitled to qualified immunity on this ground as well.

## II.  Defendants did not violate substantive due process

Defendants are also entitled to qualified immunity on the substantive due process claim because an erroneous interpretation of a state statute does not violate the Fourteenth Amendment's Due Process Clause. To prevail on their claim, Swart and DaSilva must show that Attorney General Miyares and Director Clarke acted "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995). Only conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" qualifies. *Dean*, 976 F.3d at 413 (quotation marks omitted). To be conscience-shocking, a defendant's behavior must lack "any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Courts determine whether conduct shocks the conscience by employing a "culpability spectrum," under

which plaintiffs must show that the conduct was "intended to injure in some way unjustifiable by any government interest," or at least was "deliberate[ly] indifferen[t]." *Id.* at 849. Negligence is "categorically" insufficient for a substantive due process claim. *Id.* at 834; see *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Swart and DaSilva fail to show that Attorney General Miyares was either deliberately indifferent or that he willfully intended to injure them, and thus they fail adequately to allege a violation. Again, this Court's decision in *Florian* forecloses their efforts to show deliberate indifference, see 21–31, *supra*—much less the higher burden that the Attorney General was *intentionally* causing unjustifiable harm in a conscience-shocking manner. *Sacramento*, 523 U.S. at 849; see also *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (explaining that even "government action that is incorrect or ill-advised" does not violate substantive due process (quotation marks omitted)); *Florian*, 972 F.3d at 399 ("Legal error alone is not deliberate indifference."). Their substantive due process claim therefore fails.

Their arguments otherwise are unavailing. Although they suggest that Attorney General Miyares "must have known" that his opinion "was

inappropriate" based on "his legal training as well as the opinion of Attorney General Herring," they provide no authority supporting that assertion. Swart Br. 22–23. The Herring Opinion is a similar length and employs similar tools of statutory analysis as the Miyares Opinion. See JA13–22. Swart and DaSilva fail to show why the legal disagreement between the two "may fairly be said to shock the contemporary conscience." *McKinney*, 976 F.3d at 413. Indeed, the Herring Opinion, like the Miyares Opinion, recognized that the language of Va. Code § 53.1-202.3(A) did not explicitly cover certain categories of offenders, but concluded that some categories, such as certain types of accessories, were nonetheless excluded from the enhanced sentence credits. See 7, *supra*. The Miyares Opinion's decision to draw the line in a different place as to inchoate versions of offenses, based on an interpretation placing more weight on apparent legislative purpose, is not conscience shocking.

Nor do Swart and DaSilva explain their vague assertion that "legal training" would demonstrate to the Attorney General that his opinion was "inappropriate." Swart Br. 23. This Court already has held that "[a]n incorrect legal opinion often occurs without some negligent (much less reckless) act or omission." *Florian*, 972 F.3d at 396 (quotation marks

omitted). And even "[a]n unreasonable" position "in th[is] context cannot support an inference" of "negligen[ce]," much less "criminal[] reckless[ness]." *Id.* at 397. Swart and DaSilva have failed to meet the required showing that Attorney General Miyares' interpretation of the new state statute as not intending to grant enhanced sentence credits to attempted aggravated murderers would shock the conscience for constitutional purposes.

Indeed, Swart and DaSilva fail to show even negligence. *Sacramento*, 523 U.S. at 849. Although the Miyares Opinion was later held to be erroneous, error and negligence are not the same. Where an attorney "exercises a 'reasonable degree of care, skill, and dispatch' while acting in an unsettled area of the law," that attorney does not act negligently "as a matter of law." *Smith v. McLaughlin*, 289 Va. 241, 255 (2015) (gathering cases). Swart and DaSilva fail to establish that the Attorney General was unreasonable in his interpretation, particularly given that "roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion." *Florian*, 972 F.3d at 396. Even where a court determines that an interpretation of a statute is "unreasonable"—which no court here has done—that fact still does not permit "an inference of

negligence" without more. *Ibid*. Swart and DaSilva thus fail to show even negligence, which itself would "categorically" be insufficient for their substantive due process claim. *Sacramento*, 523 U.S. at 834.

Swart and DaSilva also provide no argument for why Director Clarke is liable under this claim, so this Court also should affirm dismissal of the substantive due process claim against Director Clarke. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up). They cannot show that Director Clarke's decision to seek and to follow the sitting Attorney General's legal opinion on a new statute was even negligent, much less deliberately indifferent or intentionally malicious. Director Clarke was a "non-lawyer" who "merely followed the legal advice of an executive branch official trained in legal analysis." JA53.

Swart and DaSilva thus have failed to allege facts that, if true, would establish that either Attorney General Miyares's erroneous interpretation of a new state statute shocks the conscience, or that Director Clarke's reliance upon the Miyares Opinion does the same. The

district court thus correctly held that although the Miyares Opinion was ultimately "determined to be erroneous, neither the process in arriving at that conclusion nor the conclusion itself shocks the conscience." JA57; see also *Kerr v. Marshall Univ. Bd. of Govs.*, 824 F.3d 62, 81 (4th Cir. 2016) (finding that when there are multiple rational reasons for a given action, it does not "shock[] the conscience"). This Court should affirm the dismissal of this claim.

In addition, Defendants are entitled to qualified immunity because any constitutional violation would not have been clearly established at the time. To overcome qualified immunity, "existing precedent" must have "placed the statutory or constitutional question beyond debate." *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (citation omitted). Absent an "obvious" case, "to show a violation of clearly established law, [the plaintiff] must identify a case that put [the public officials] on notice that [their] specific conduct was unlawful." *Rivas-Villegas*, 595 U.S. at 6. Swart and DaSilva do not identify any case—much less an "obvious" one—that would have put Defendants on notice that their conduct would have violated substantive due process rights. In fact, they make no

argument about "clearly established" law at all. For this further reason, Defendants are entitled to qualified immunity.

## III. Defendants are entitled to qualified immunity on the procedural due process claim

Finally, Defendants are entitled to qualified immunity on the procedural due process claim. Swart and DaSilva failed adequately to allege that Defendants violated their procedural due process rights. Neither their Amended Complaint nor their Opening Brief sufficiently alleges what additional process was due, or what that process would go towards showing. And, as the district court correctly held, "[e]ven if there were a viable procedural due process claim . . . such a right is not clearly established, thus constituting a second reason to provide qualified immunity to both Defendants." JA57. For each of these reasons, dismissal of this claim was appropriate.

### A. Swart and DaSilva have not adequately alleged a procedural due process claim

The first reason that Swart and DaSilva's procedural due process claim fails is that they do not sufficiently allege what process the Constitution guarantees that was denied to them. Their pleading thus is insufficient to allege a valid procedural due process claim.

The Fourteenth Amendment prohibits States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To make a procedural due process claim, Swart and DaSilva must show, among other things, "that the procedures employed were constitutionally inadequate." *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (citation omitted).

Swart and DaSilva failed adequately to allege facts to satisfy this requirement.[4] Specifically, they have alleged neither what process the Constitution required, nor what that process would have gone to show. Instead, they allege vaguely that they should have had "a due process hearing to challenge" the legal opinion that they were ineligible for enhanced sentence credits under the new statute. JA9. On appeal, they make no effort to elaborate; indeed, they simply cite an unpublished district court opinion for the assertion that they do not need to explain

---

[4] The district court also held that Swart and DaSilva failed adequately to allege that Defendants deprived them of a cognizable liberty or property interest. JA54–56. Defendants agree, but focus on the failure to allege a constitutionally inadequate process as the clearest grounds for dismissing this claim. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 n.2 (6th Cir. 2008) (ruling on the "clearest basis for affirming" because an appellate court "may affirm on any ground supported by the record").

themselves at all. See Swart Br. 26 (quoting *West v. Prince George's Cnty., Md.*, 2022 WL 125936 (D. Md. Jan. 13, 2022)). But they cannot shirk the obligation to "identify the process that is due," and their failure to do so means that they have not stated a valid claim. *Doe by Fein v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996) (per curiam) (reviewing a motion to dismiss); see *Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 120 (D.C. Cir. 2020) (affirming dismissal of procedural due process claim for the "independent reason" that the plaintiff did not allege "what plausible alternative safeguards would be constitutionally adequate").

Further, the claims fail however they are construed. Swart and DaSilva appear to be contending either that the Attorney General's process for issuing the advisory opinion was constitutionally inadequate, or that Director Clarke was constitutionally required to hold hearings before applying the opinion to them. Either claim would lack merit.

To the extent Swart and DaSilva contend that they were denied a "right to basic procedural guardrails for state officials rendering advisory opinions," no such right exists, much less a clearly established right. JA58. Advisory opinions, by their nature, do not deprive anyone of a

liberty or property interest; they simply provide legal advice to government officials. *In re Commonwealth*, 222 Va. at 463. And, at the time they are issued, the set of individuals whose interests could be affected by the advice are usually undetermined and often unknowable. In light of these characteristics of advisory opinions, Swart and DaSilva fail to explain what additional process the Attorney General was allegedly required to provide before issuing the opinion, or even how he could have provided it. See JA58 (holding that there "exists no case law from the Fourth Circuit or Supreme Court suggesting that a state executive's rendition of an advisory opinion in accordance with the processes set forth by a state legislature violates the procedural due process rights of the affected class"). Indeed, Swart and DaSilva laud the Herring Opinion that was generated through identical procedures. Swart Br. 24.

Alternatively, if Swart and DaSilva's claim is interpreted as contending that Director Clarke was required to provide further process before applying the Miyares Opinion to them, the claim fails because they do not allege what such process would have gone to show. The Due Process Clause "does not protect procedure for procedure's sake." *Rector*

*v. City and Cnty. of Denver*, 348 F.3d 935, 943–44 (10th Cir. 2003); see *Fowler v. Benson*, 924 F.3d 247, 259 (6th Cir. 2019); *Pullins v. West*, 33 F.3d 56 at *3 (7th Cir. 1994) (unpublished). Thus, "due process does not entitle [a plaintiff] to a hearing to establish a fact that is not material under the [state] statute." *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003); see 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law—Substance & Procedure § 17.8(b) (5th ed. 2023) (explaining that procedural due process does not require procedures to challenge "the basis for an action which affects an individual where there are no factual issues in dispute.").

Here, Swart and DaSilva point to no relevant disputed facts that a prison disciplinary process could have established. Unlike the cases they cite, Swart Br. 24–25, Director Clarke here was not considering whether Swart and DaSilva had committed some alleged disciplinary offense that would warrant revoking sentence credits that they had previously been awarded. See, *e.g.*, *Kapordelis v. Myers*, 16 F.4th 1195, 1199 (5th Cir. 2021) (addressing revocation of good-time credits after a disciplinary hearing to determine whether inmate in fact had intentionally destroyed property); *Denny v. Schultz*, 708 F.3d 140 (3d Cir. 2013) (determining

whether there was sufficient evidence that the inmate had possessed a weapon). Rather, the question was whether a new state statute, Va. Code § 53.1-202.3, provided enhanced sentence credits to inmates convicted of attempted aggravated murder. See 6–7, *supra*.[5] The only fact relevant to this question was Swart and DaSilva's crime of conviction, and neither contests that they were convicted of attempted aggravated murder. JA8; Swart Br. 2, 12 n.1.

Indeed, their Amended Complaint only alleges that the Attorney General interpreted the statute incorrectly—not that any relevant facts were in dispute. Because Swart and DaSilva fail to allege that their desired process would "prove or disprove a particular fact or set of facts . . . relevant to the inquiry at hand," they have failed to state a procedural

---

[5] Indeed, if Swart and DaSilva's position is that VDOC was constitutionally required to provide individualized hearings before it could apply the new enhanced sentence credit statute to inmates, such hearings would apparently need to have been provided to *every* inmate upon the statute's passage, since VDOC had to determine whether the new statute applied to each inmate. See Earned Sentence Credit Legislation—House Bill 5148 Report, H. Doc. No. 7, 2023, https://tinyurl.com/3ffa798x (calculating the number of affected inmates according to statutory criteria on page eight). Swart and DaSilva cite no case law holding that correctional departments must provide such hearings to all inmates every time state law regarding the calculation of sentence credits changes. See Swart Br. 24–26.

due process claim. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7; see, *e.g.*, *Codd v. Velger*, 429 U.S. 624, 627–28 (1977) (holding that a discharged government employee lacked a due process right to a hearing when he did not challenge the factual basis for the discharge, because "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute").

It does not follow that Swart and DaSilva lacked recourse to challenge the legal interpretation of the new state statute, but rather that such recourse was not a prison disciplinary proceeding. Swart and DaSilva could—and did, JA7—file a petition for a writ of habeas corpus contending that their continued detention was "without lawful authority" because they were entitled to the enhanced sentence credits. Va. Code § 8.01-654(A)(1); see also 28 U.S.C. § 2254. And once the Virginia Supreme Court ultimately agreed with their interpretation of the statute in *Prease*, they were released. JA7, 39. No further process was constitutionally required under the circumstances.

Finally, to the extent that this Court determines that Swart and DaSilva's procedural due process argument is "just the[ir] substantive due process argument recast in procedural due process terms," this Court

should "reject it for the same reasons." *Reno v. Flores*, 507 U.S. 292, 308 (1993).

## B. No alleged procedural due process right was clearly established

This Court also should affirm because no procedural due process right in these circumstances was clearly established. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Garrett*, 74 F.4th at 584 (quotation marks omitted). "While a case directly on point is not necessary for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Ibid.* (quotation marks omitted). To determine whether a right was clearly established, this Court looks to "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose, and ordinarily need look no further." *Ibid.* (quotation marks omitted).

The district court correctly held that any procedural due process violation was not of a clearly established right. See JA57–58. Indeed, Swart and DaSilva on appeal do not challenge that holding, so they have waived any argument that the district court erred in that determination.

The phrase "clearly established" only appears once in the Opening Brief (when describing the district court's holdings, see Swart Br. 5), and none of their arguments address whether Defendants' actions violated clearly established law, even though the district court held that they did not. They therefore have waived argument on the clearly established prong. *Grayson*, 856 F.3d at 316 ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument") (quotation marks omitted).

In addition, Attorney General Miyares and Director Clarke are entitled to qualified immunity because Swart and DaSilva fail to show that either official violated any clearly-established procedural due process rights. They point to no cases that would clearly establish the procedure required for the issuance of a legal advisory opinion, much less showing that the procedures that Attorney General Miyares followed in issuing one here fell short of such a standard. See 37–40, *supra*. Nor do they point to any case that would establish that Director Clarke was required to provide individualized hearings before applying a new state statute providing enhanced sentence credits, particularly where no

material facts were in dispute. See 38–39, *supra*. This claim thus also fails the second prong of qualified immunity.

Longstanding qualified-immunity principles "teach[] that officials performing discretionary functions," like interpreting a new statute, "are not subject to suit when such questions are resolved against them only after they have acted." *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985). Indeed, "[t]he decisive fact is not that [Defendants'] position turned out to be incorrect, but that the question was open at the time [they] acted." *Ibid.*; see *Henderson v. Simms*, 223 F.3d 267, 273 (4th Cir. 2000) ("[W]e decline to impose liability on Appellees based upon their failure successfully to predict the course of the law.").

Virginia's legal system requires public officials to make exactly these types of determinations. When Virginia's General Assembly passes a new law, state officials typically cannot wait for the courts to interpret the statute before it must be enforced. Just as "federal courts do not issue advisory opinions," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), Virginia courts lack "the power to render a judgment that is only advisory," *Martin v. Ziherl*, 269 Va. 35, 40 (2005). Rather, state officials either must apply and interpret statutes themselves, or ask the Attorney

General for an advisory opinion. Va. Code § 2.2-505. This Court should decline Swart and DaSilva's invitation to place Virginia public officials at risk of personal liability if their interpretation of a new Virginia statute is later determined to be incorrect.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

Attorney General Jason S. Miyares and
Director Harold W. Clarke

By: ___*/s/ Erika L. Maley*___
     Erika L. Maley
     *Solicitor General*

JASON S. MIYARES
  *Attorney General*

MARGARET H. O'SHEA
  *Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

June 3, 2024

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

RICK W. EBERSTADT
  *Deputy Solicitor General*

MICHAEL DINGMAN
  *Assistant Solicitor General*

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 9,147 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Erika L. Maley*

Erika L. Maley

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Erika L. Maley*

_____

Erika L. Maley